RECORD NO.

# 21-2115

In The

# United States Court of Appeals

### For The Second Circuit

**DR. CHINWE OFFOR,**

*Plaintiff – Appellant,*

**v.**

**MERCY MEDICAL CENTER, ROCKVILLE CENTRE DIVISION, CATHOLIC HEALTH SERVICES OF LONG ISLAND, DR. SWARNA DEVARAJAN, DR. JOHN P. REILLY,**

*Defendants – Appellees.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK (CENTRAL ISLIP)**

_____

## BRIEF OF APPELLANT

_____

Ike Agwuegbo
IKE AGWUEGBO & CO P.C.
15 Ocean Avenue, Suite 2C
Brooklyn, New York 11225
(646) 328-1960

*Counsel for Appellant*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................ix

I.    JURISDICTIONAL STATEMENT ..............................................................1

II.   STATEMENT OF ISSUES ...........................................................................1

III.  STATEMENT OF THE CASE .....................................................................4

IV.  SUMMARY OF THE ARGUMENT ...........................................................9

V.   ARGUMENT...............................................................................................10

      DECISION..................................................................................................10

1.    THE SEPTEMBER 1ST, 2021 ORDER OF THE
       HONORABLE JUDGE DENIS HURLEY OVERRULING
       OFFOR'S OBJECTIONS TO THE REPORT AND
       RECOMMENDATIONS AND ADOPTING IN FULL THE
       SAID REPORT AND RECOMMENDATIONS AND
       DENYING OFFOR'S MOTIONS TO STRIKE AND FOR
       SUMMARY JUDGMENT..................................................................10

       ISSUE.........................................................................................10

       A.    WHETHER THE DISTRICT COURT CAN IN ITS
           JUDGMENT OR DECISION SET ASIDE AN
           EARLIER DECISION OF THE SECOND CIRCUIT
           COURT OF APPEALS IN THE SAME MATTER.................10

       STANDARD OF REVIEW ...............................................................10

       DISCUSSION ....................................................................................10

           (a)    FMLA LEAVE NOT IN ISSUE ....................................10

(b)   MMC & CO RELITIGATE SECOND CIRCUIT
DECISION......................................................................11

(c)   THE EFFECT OF THE SECOND CIRCUIT
COURT OF APPEALS DECISION .............................12

B.   WHETHER THE DISTRICT COURT ERRED WHEN
IT TOTALLY DISREGARDED AND
DISCOUNTENANCED THE SUMMARY ORDER OF
THE SECOND CIRCUIT COURT STATING THAT
OFFOR HAD ESTABLISHED A PRIMA FACIE CASE
OF FMLA RETALIATION........................................................13

STANDARD OF REVIEW ................................................................13

DISCUSSION ....................................................................................13

C.   WHETHER THE DISTRICT COURT ERRED WHEN
IT FAILED TO APPLY THE MCDONNEL DOUGLAS
BURDEN-SHIFTING ANALYSIS OR CONSIDER
EVIDENCE GOING TO THE MCDONNELL
DOUGLAS ANALYSIS................................................13

STANDARD OF REVIEW ................................................................13

DISCUSSION ....................................................................................14

D.   NOTICE AND EQUITABLE ESTOPPEL .............................15

E.   ANY PROFERRED REASONS FOR THE ADVERSE
EMPLOYMENT ACTIONS ARE PRETEXTUAL ................16

(a)   EVALUATIONS.................................................16

(b)   REAPPOINTMENT...........................................17

(c)   SPURIOUS ALLEGATIONS OF
CLINICAL INCOMPETENCE ..........................18

(i)    VENTILATOR RELATED
COMPLAINT (MMC EXHIBIT HH).......18

(ii)   DR. RAYJADA'S COMPLAINT .............19

F.    OFFOR WAS ALLOWED TO WORK ALONE AND
WITHOUT SUPERVISION.....................................................19

G.   THERE WERE NO MIDAS, SENTINEL OR
ADVERSE EVENT REPORTS AGAINST OFFOR..............20

H.   THERE WAS NO EXPERT REVIEW OF THE THREE
PATIENTS OFFOR ALLEGEDLY MISMANAGED
PRIOR TO HER PLACEMENT ON FOCUSED
REVIEW ...............................................................................20

I.    OFFOR'S FMLA REQUEST WAS THE ONLY
PROXIMATE EVENT ............................................................21

J.    OFFOR'S FPPE WAS CONTINUED FOR TWENTY
MONTHS AGAINST MMC POLICY....................................21

K.   OFFOR EXCEEDED CLINICAL PERFORMANCE
STANDARDS.........................................................................21

L.    DESPITE HER PLACEMENT ON FPPE, OFFOR WAS
ASKED TO REPRESENT CHSLI IN DEPOSITIONS...........22

M.   OFFOR WAS GIVEN A PAY RAISE TWO MONTHS
BEFORE HER PLACEMENT ON FPPE ...............................22

N.   OFFOR'S DAUGHTER WAS INCAPABLE OF SELF
CARE .....................................................................................23

O.   DISTRICT COURT'S CLAIM OF INCONSISTENT
TESTIMONY..........................................................................23

P.    ALLEGED MISSING DOCUMENTS....................................24

DECISION .................................................................................25

2.      THE MAY 11TH, 2021 REPORT AND
      RECOMMENDATIONS OF THE HONORABLE
      MAGISTRATE JUDGE STEVEN LOCKE DENYING
      OFFOR'S MOTION FOR SUMMARY JUDGMENT,
      GRANTING THE MMC & CO'S CROSS MOTION FOR
      SUMMARY JUDGMENT AND DENYING OFFOR'S
      MOTION TO STRIKE ........................................................25

      ISSUE .............................................................................25

             A.    WHETHER THE LEARNED MAGISTRATE JUDGE
                   HAD ANY LEGAL AUTHORITY TO ISSUE A
                   REPORT AND RECOMMENDATIONS IN THIS
                   CASE IN THE ABSENCE OF A DISTRICT JUDGE
                   ASSIGNED TO THE CASE. ...................................25

      STANDARD OF REVIEW .................................................25

      DISCUSSION .................................................................25

      OFFOR'S SANCTION MOTIONS .....................................26

DECISION .................................................................................26

3.      THE DECEMBER 15TH, 2020 ORDER OF THE
      HONORABLE JUDGE SANDRA FEUERSTEIN
      DISMISSING OFFOR'S MOTIONS FOR SANCTIONS
      DATED 12/01/2020 AND 12/06/2020 ..............................26

      ISSUE .............................................................................27

A.     WHETHER THE DISTRICT COURT ERRED IN
FAILING TO INVESTIGATE OFFOR'S SERIOUS
ALLEGATIONS OF FRAUD, AND IF A DEFAULT
SHOULD HAVE BEEN SO ENTERED AGAINST
MMC & CO FOR PRODUCING AND SUBMITTING
FORGED OR FABRICATED DOCUMENTS AND
APPROPRIATE SANCTIONS LEVIED AGAINST
MMC AND THEIR COUNSEL ................................................27

STANDARD OF REVIEW ................................................................27

DISCUSSION ................................................................................27

B.     ANALYSIS OF THE FRAUDULENT DOCUMENTS
SUBMITTED BY MMC IN SUPPORT OF THEIR
SUMMARY JUDGMENT MOTION ......................................29

(i)     EXHIBIT II ........................................................29

(ii)     EXHIBIT PP .......................................................31

(a)     MMCS' DUELING AFFIDAVITS ....................32

(iii)     EXHIBIT AA ......................................................34

(iv)     EXHIBIT SS ......................................................35

(v)     EXHIBIT Z ........................................................36

(a)     RISK MANAGEMENT INVESTIGATION
OF REPORTED MIDAS INCIDENTS
INVOLVING NEONATOLOGIST, DR.
OFFOR DATED 11/14/2012 AND
06/10/2013 ..........................................................36

(b)     MMC POLICY REGARDING MIDAS
INCIDENTS .........................................................40

DECISION ...................................................................................41

4.   THE OCTOBER 4TH 2019 ORDER OF JUDGE ARTHUR
     SPATT DENYING OFFOR'S MOTION FOR SANCTIONS
     DATED JULY 22ND 2019 ....................................................................41

     ISSUE ................................................................................................41

     A.   WHETHER THE DISTRICT COURT ERRED IN
          FAILING TO INVESTIGATE OFFOR'S SERIOUS
          ALLEGATIONS OF FRAUD, AND IF A DEFAULT
          SHOULD HAVE BEEN SO ENTERED AGAINST THE
          MMC & CO FOR PRODUCING AND SUBMITTING
          FORGED OR FABRICATED DOCUMENTS AND
          APPROPRIATE SANCTIONS LEVIED AGAINST
          MMC AND THEIR COUNSEL ................................................41

STANDARD OF REVIEW ...........................................................................41

DISCUSSION ...............................................................................................41

5.   THE AUGUST 19TH, 2020 ORDER OF THE HONORABLE
     JUDGE SANDRA FEUERSTEIN, OVERRULING OFFOR'S
     OBJECTIONS TO THE JUNE 11, 2020 ORDER OF
     MAGISTRATE JUDGE STEVEN LOCKE DENYING
     OFFOR'S MOTION TO COMPEL NON-PARTY NEW
     YORK PRESBYTERIAN HOSPITAL (NYPH) TO
     PRODUCE SUBPOENAED DOCUMENTS. ....................................44

     ISSUE ................................................................................................44

     A.   WHETHER THE DISTRICT COURT ERRED IN
          DENYING OFFOR'S MOTION TO COMPEL THIRD
          PARTY SUBPOENA ................................................................44

STANDARD OF REVIEW ...........................................................................44

DISCUSSION ...............................................................................................44

6.   SEPTEMBER 14TH 2020 ORDER OF THE DISTRICT
     COURT TERMINATING THE FULLY BRIEFED OFFOR'S
     MOTION FOR SANCTIONS DATED 12/05/2019 ..........................45

A.   WHETHER THE DISTRICT COURT ERRED IN ITS
      FINDING THAT OFFOR'S SERIOUS ALLEGATIONS
      OF FRAUD AGAINST MMC & CO WERE TENUOUS
      AND UNSUBSTANTIATED, AND IF A DEFAULT
      SHOULD HAVE BEEN SO ENTERED AGAINST
      MMC & CO FOR PRODUCING AND SUBMITTING
      FORGED OR FABRICATED DOCUMENTS AND
      APPROPRIATE SANCTIONS LEVIED AGAINST
      THEM AND THEIR COUNSEL. .............................................45

STANDARD OF REVIEW ..........................................................45

DISCUSSION ..............................................................................45

     (i)    QUALITY ASSURANCE DOCUMENTS .............................46

     (ii)    THE DECEMBER 19TH LETTER ..........................................49

     (iii)   MERCY MEDICAL CENTER NEONATOLOGY PEER
             REVIEW COMMITTEE MINUTES .......................................50

     (iv)   PERFORMANCE EVALUATIONS ON DR. OFFOR
             BY HER SUPERVISOR............................................................53

DECISION ...................................................................................55

7.   THE OCTOBER 5TH, 2020 ORDER OF THE HONORABLE
      JUDGE SANDRA FEUERSTEIN GRANTING OFFOR'S
      MOTION FOR RECONSIDERATION BUT REFUSING TO
      REVERSE THE ORDER TERMINATING OFFOR'S FULLY
      BRIEFED MOTION FOR SANCTIONS DATED 12/05/2019.........55

8.   THE 12/15/2020 ORDER OF THE HONORABLE JUDGE
      SANDRA FEUERSTEIN DISMISSING OFFOR'S MOTIONS
      TO STRIKE............................................................................55

      ISSUE .................................................................................55

A. WHETHER THE DISTRICT COURT ERRED IN LAW WHEN IT DENIED OFFOR'S MOTIONS TO STRIKE AND ADMITTED FOR THE PURPOSE OF THE SUMMARY JUDGMENT MOTION, THE INADMISSIBLE WRITTEN REPORTS OF MMCS' EXPERTS ................................................................55

STANDARD OF REVIEW ...........................................................55

DISCUSSION .............................................................................56

DECISION ..................................................................................58

9. THE JUNE 25TH, 2016 ORDER OF THE DISTRICT COURT GRANTING MMC'S SANCTIONS MOTION AGAINST OFFOR AND HER COUNSEL, IKE AGWUEGBO, AND THE NOVEMBER 20TH, 2018 ORDER LEVYING SANCTIONS IN THE SUM OF $25,622.50 AGAINST OFFOR'S COUNSEL, IKE AGWUEGBO ........................................58

STANDARD OF REVIEW ...........................................................58

DISCUSSION .............................................................................58

10. OFFOR'S LOSSES ..............................................................59

VI. CONCLUSION...............................................................................59

CERTIFICATE OF COMPLIANCE UNDER RULE 32.1(a)..............................60

CERTIFICATE OF FILING AND SERVICE .........................................................61

SPECIAL APPENDIX

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Aoude v. Mobil Mobil Oil Corp.,
    974 F.2d 1115 (1st Cir. 1989).........................................................28

Arnold v. Cnty. of El Dorado,
    2012 WL 3276979 (E.D. Cal.) .....................................................34

Bernheim v. Litt,
    79 F.3d 318 (2d Cir. 1996) ...........................................................13

Breezevale Ltd v. Dickinson,
    759 A.2d 627 (D.C. 2000) .............................................................28

Crain v. Schlumberger Technology,
    187 F. Supp. 3d 732.......................................................................59

Deangelo v. Yellowbook Inc.,
    105 F. Supp. 3d 166 (2015) ...........................................................14

Esser v. Rainbow Advert. Sales Corp.,
    448 F. Supp. 2d 574 (SDNY 2006) ..............................................12

Fair Hous. of Marin v. Combs,
    285 F.3d 899 (9th Cir. 2002) .........................................................27

Hazel-Atlas Glass Co. v. Hartford-Empire Co.,
    322 U.S. 238 (1944).......................................................................28

Hicks v. Baines,
    593 F.3d 159 (2d Cir. 2010) ..........................................................11

Kosakow v. New Rochelle Radiology Assocs., P.C.,
    274 F.3d 706 (2d Cir. 2001) ..........................................................16

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973)................................................................12, 14

Oliver v. Gramley,
    200 F.3d 465 (7th Cir. 1999) ...........................................28

O'Reilly v. Consolidated Edison Co. of New York, Inc.,
    173 F.App'x 20 (2d Cir. 2006) .........................................12

Pope v. Fed. Express Corp.,
    974 F.2d 982 (8th Cir. 1992) ...........................................28

Potenza v. City of New York,
    365 F.3d 165 (2d Cir. 2004) .......................................12, 14

Quaratino v. Tiffany & Co.,
    71 F.3d (2d Cir. 1995) .....................................................12

Roberts v. Health Ass'n,
    308 Fed. Appx. 568 (2d Cir. 2009)..................................14

Trammel v. Bass,
    672 So. 2d 78 (Fla. Dist. Ct. App 1996)..........................28

United States v. Weingarten,
    632 F.3d 60 (2d Cir. 2011) ...............................10, 25, 55

Valley Engineers Inc. v. Elec. Eng'g Co.,
    158 F.3d 1051 (1998) .......................................................28

## STATUTES

28 U.S.C. § 1291 ...............................................................1

28 U.S.C. § 636(b)(1)........................................................26

18 U.S.C. § 1621 .............................................................34

## **RULES**

Fed. R. App. P. 4(a)(1) ................................................................1

Fed. R. App. P. 26(a)(2)(B) ......................................................57

Fed. R. Evid. 702 ......................................................................57

## **REGULATIONS**

C.F.R. § 825.300 ......................................................................15

FMLA § 2619(a) ......................................................................15

## **OTHER AUTHORITY**

WIGMORE, EVIDENCES § 278 (Chadbourn ed. 1979) .......................................27

## I.  JURISDICTIONAL STATEMENT

On September 1st, 2021, Hon. Judge Denis Hurley issued a memorandum Opinion, affirming the Report and Recommendations of Magistrate Judge Locke, granting the MMC & CO Motion for Summary Judgment and denying Offor's Motion for Summary Judgment. (SPA- 74) On September 1st, 2021, Offor filed a Notice of Appeal of the District Court's September 1st, 2021, decision. The appeal is timely pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure because the Notice of Appeal in this civil case was filed within 30 days of the District Court's decision. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because the September 1st, 2021, decision is a final order or judgment that disposes of all parties' claims in Suit No. 15-cv-02219. Offor also appeals from several Interlocutory Orders of the District Court, including the denial of four Motions for Sanctions, A Motion to Compel and the grant of Motion for Sanctions against Offor and her Attorney (SPA – SPA1-46).

## II.  STATEMENT OF ISSUES

1. Whether the District Court can in its judgment set aside an earlier decision of the Second Circuit Court of Appeals in the matter.

2. Whether the District Court erred when it totally disregarded and discountenanced the Summary Order of the Second Circuit Court stating that Offor had established a prima facie case of FMLA Retaliation.

3.      Whether the learned Magistrate Judge erred when it failed to apply the McDonnel Douglas burden-shifting analysis or consider evidence going to the McDonnell Douglas Analysis.

4.      Whether the District Court erred in failing to investigate Offor's serious allegations of fraud, and if a Default should have been so entered against the MMC & CO for producing and submitting forged or fabricated documents and appropriate sanctions levied against the MMC and their Counsel.

5.      Whether the learned Magistrate Judge erred when he referred to, relied on, and copiously quoted from fabricated and forged documents without investigating the allegations of fabrication.

6.      Whether the District Court erred in dismissing or terminating Offor's Motions for Sanctions dated 07/22/2019,12/05/2019, 12/01/2020, and 12/06/2020.

7.      Whether the District Court erred in failing to Sanction the conduct of MMC's Attorneys, Nixon Peabody LLP, when they twice denied that MMC & CO had any Midas or Incident Reports regarding any patient treated by Offor, only to produce and submit a forged Midas report with their Summary Judgment papers.

8.  Whether the District Court erred in relying on MMC's Counsel's false statements in support of their Motion for Sanctions dated 09/03/2015 and levying Sanctions against Offor's Counsel.

9.  Whether the District Court erred in denying Offor's Motion to Compel third Party Subpoena.

10. Whether the District Court erred in law when it denied Offor's Motions to Strike and admitted for the purpose of the Summary Judgment Motion, the inadmissible written reports of MMC's experts.

11. Whether the District Court erred when it found that MMC & CO had met the Summary Judgment Standard.

12. Whether Offor provided sufficient information for MMC & CO to reasonably determine whether FMLA may apply to the Leave Request.

13. Whether the District Court erred when it failed to consider evidence produced by Offor disproving MMC's Claims as to why her employment was terminated.

14. Whether MMC & CO complied with the eligibility Notice Requirement.

15. Whether the learned Magistrate Judge had any legal authority to issue a Report and Recommendations in this case in the absence of a District Judge assigned to this case.

16. Whether Offor is entitled to Summary Judgment.

### III.   STATEMENT OF THE CASE

On September 1st, 2021, Hon. Judge Denis Hurley issued a memorandum opinion, dismissing Offor's Objections to the ruling of Magistrate Judge Steven Locke, granting MMC & CO Cross Motion for Summary Judgment, affirming same and denying her Motion for Summary Judgment and her Motion to Strike. Offor was employed by Mercy Medical Center and Catholic Health Services of Long Island as a Neonatologist in 2000. Dr. Offor worked for 12 years without any issues and was in that time promoted to Assistant Director of Neonatology in 2004. In December 2012, Dr. Offor was placed on focused Review just barely three weeks after she hired an Attorney to assist her in getting MMC & CO to approve an FMLA type leave as she sought to be with her daughter who was sick and pregnant at the time. On December 27th, 2012, Offor's FMLA Leave was approved and two minutes later, she was placed on FPPE. (A3168-3170, vol. 14) Dr. Offor remained on the said Focused Review for twenty months (contrary to MMC rules which provide for an eight-month period, followed by a review.), (A3183 para 3, vol. 14) until her employment was terminated as the Hospital sought to force her to resign and leave her employment. In those twenty months of Focused Review, Dr. Offor worked alone, independently, and was asked many times to take charge of the Neonatal Unit during extended periods when her supervisor, the third Appellee, Dr. Devarajan was away from the Hospital. (A3241

4

to 3270, vol. 14)  Offor was reappointed without conditions, (A3236-3240, vol. 14)
her work performance was never reviewed nor evaluated as required by MMC
Rules, (A3183 para 3, A3198, -3199, vol. 14). She managed the highest acuity
Neonates and performed the most intricate procedures. (A3200-3211, vol. 14)
Upon the termination of her employment in August 2014, (A 2751, vol. 12) Dr.
Offor filed a Complaint at the Eastern District of New York containing claims for
Race and National Origin Discrimination, HCQIA Due Process Violation, FMLA
Violation for Retaliation, Libel, Slander, Negligent and Intentional Infliction of
Emotional Distress, Hostile Work Environment amongst other claims (15-cv-
02219). Judge Arthur Spatt dismissed all these claims with Prejudice and upon
appeal to the Second Circuit Court, the Appellate Court in reaffirming the
Dismissal of the Race and National Origin Discrimination Claims, the HCQIA Due
Process and Hostile Work Environment Claim, however ruled that Dr. Offor had
established a prima facie case of FMLA Retaliation as MMC & CO had placed Dr.
Offor on Focused Review in December 2012, (A3168, vol. 14) less than three
weeks after she had hired an Attorney to assist her in securing an FMLA Leave
based on alleged incidents that occurred in 2009, 2011 and 2012. These allegations
were merely a pretext to place Dr. Offor on focused review and ultimately
terminate her employment. Following a Petition for Rehearing filed by MMC &
CO, the Second Circuit Court stated inter- alia that the actions of MMC & CO

"was a textbook definition of FMLA Retaliation" and remanded the case back to the District Court for Trial. (Suit No. 16-839 <u>Offor v. Mercy Medical Center & Ors</u>, at A3149, A3161, vol. 13). Following the remand of the Suit, and over one year after the termination of her employment, MMC & CO filed a Complaint against Offor with the New York Office of Professional Medical Conduct (OPMC) citing five patients Offor was alleged to have mismanaged. MMC & CO took the action alluding to the McDonnell Douglas burden shifting framework, in order to articulate a legitimate, non-discriminatory reason for the adverse employment actions against Offor, and After Acquired Evidence Doctrine.

The New York OPMC (being heavily leaned on by the Billionaire Corporation) revoked Offor's Medical License in 2018 after refusing to allow her Counsel to submit her Defense two days after the Panel's deadline, (A4774, vol. 21) the ARB affirmed the decision. Following Offor's Appeal to the New York Court of Appeals, Third Appellate Division, in July 2020, Offor's Medical License Revocation was annulled. The Court stated that the ARB'S decision of Revocation was "Arbitrary and Capricious." <u>Offor v. New York OPMC</u> at A4767, vol. 21. Regardless, Though the revocation of Offor's Medical License was annulled in July 2020, the New York OPMC has indicated it intends to conduct a new trial and has not done so, Offor remains unemployed for over seven years and counting. (MMC & CO have frustrated all her attempts at employment, MMC & CO

6

interfered with her Contract with North Shore LIJ, A4863, vol. 22, other attempts at employment, A4943-4944 vol. 22, precipitated the revocation of her New Jersey State Medical License, A4802, vol. 21, revocation of Offor's American Board of Pediatrics Certificate A4781, vol. 21, Suspension of her Pennsylvania State Medical License, A4783, vol. 21).

Having failed in that bid to articulate a legitimate, non-discriminatory reason for the adverse employment actions taken by them, MMC & CO sought to relitigate the decision of the Second Circuit Court of Appeals by claiming absurdly, that Offor did not qualify for FMLA. MMC & CO had argued in their Answer to Offor's Complaint that the retaliatory actions they took was as a result of Offor's clinical incompetence. A383 para 41, A385 para 58, vol.2, The District re-echoed these views in its decision stating:

> "Plaintiff overlooks the extensive investigatory and disciplinary actions Defendants took before she retained her attorney in November 2012. Offor Dep. Tr.at 151:24–152:9. In August 14, 2021, Dr. Koppel—a doctor unaffiliated with MMC and CHSLI—raised concerns about Plaintiff's clinical management. Devarajan SJ Decl. ¶¶ 34–35; Exs. X, Y to Guilfoyle Decl.* The very next day, August 15, 2012, Dr.Devarajan met with Plaintiff to discuss these issues; the Defendants began an internal review shortly thereafter. Devarajan SJ Decl. ¶¶ 36–27; Ex. X to Guilfoyle Decl. Five days later, on August 20, 2012, the internal review generated the MIDAS report, which noted "multiple issues in the NICU of . . . mismanagement by [Plaintiff] with many different staff members on both shifts." Devarajan SJ Decl. ¶¶ 38-39; Ex. Z to Guilfoyle Decl. Four days after that, on August 24, 2012, Dr. John Reilly met with Plaintiff to "discuss the significant issues set forth in the MIDAS report."

7

Interestingly, the District Court bases its conclusions on the same Exhibits which Offor has raised serious legitimate concerns about their fraudulent nature and inadmissibility in her Motion for Sanctions dated 12/01/2020 and 12/06/2020, and her Motion to Strike. Exhibit X is Dr. Devarajan's alleged memorialization of an alleged telephone conversation with Dr. Koppel. Dr. Devarajan also claimed to have met and counselled Offor afterwards. There is no written document from Dr. Koppel in support of the alleged conversation and the document is inadmissible as hearsay upon hearsay. Dr. Devarajan had no signed counselling form by Dr. Offor and Exhibit X remains a figment of her imagination. Exhibit Y is another alleged memorialization by Dr. Reilly of alleged telephone Conversations. Asides from being hearsay upon hearsay and therefore inadmissible, MMC & CO requested written reports from Dr. Lorenz and sent him Patient Charts, promising to provide renumeration for his time. MMC &CO could not produce any written report from Dr. Lorenz, it would appear Dr. Lorenz wrote positive reports about Offor's clinical management, forcing MMC & CO to withhold his Report. A4079-4082, vol. 18. A4334, line 16 to A4335 line 17, vol. 19. Dr. Sridhar's alleged Review was on an unidentified patient A1868, vol. 8. Exhibit Z is the fraudulent Midas Report discussed in Offor's Motion for Sanctions below.

## IV.   SUMMARY OF THE ARGUMENT

The District Court improperly granted MMC & CO Cross Motion for Summary Judgment, whilst denying Offor's Motion for Summary Judgment, incorrectly stating that Offor did not qualify for FMLA, when the facts show that Offor in fact took the FMLA vacation and that the issue before the Court was the retaliatory actions of MMC. The District Court failed to take cognizance of the Summary Order of the Second Circuit Court of Appeals in <u>Offor v Mercy 16-839</u>, when it ruled that Offor had established a prima facie case of FMLA Retaliation and failed to apply the McDonnell Douglas burden shifting framework. The District Court also admitted for the purposes of MMC & co Summary Judgment Motion, inadmissible hearsay reports of experts and clearly forged documents. The Court refused to sanction MMC & co for submitting clearly forged documents in support of their Summary Judgment Motion, including documents which in January 2020 they had admitted in opposition to a prior motion for sanctions were "wrong" were also resubmitted twice in Support of their Summary Judgment Motion and in opposition to Offor's Summary Judgment Motion. The District Court instead ventures out suo motu with pained postulations, factual claims and arguments not proffered by MMC & co, sometimes distorting the facts before the Court and ignoring pertinent facts. Offor is also appealing against the Court's ruling denying her four Motions for Sanctions and to Compel.

9

## V.    ARGUMENT:

DECISION:

1.    THE SEPTEMBER 1ST, 2021 ORDER OF THE HONORABLE
      JUDGE DENIS HURLEY OVERRULING OFFOR'S OBJECTIONS
      TO THE REPORT AND RECOMMENDATIONS AND ADOPTING
      IN FULL THE SAID REPORT AND RECOMMENDATIONS AND
      DENYING OFFOR'S MOTIONS TO STRIKE AND FOR
      SUMMARY JUDGMENT. (SPA 74)

ISSUES:

A.    WHETHER THE DISTRICT COURT CAN IN ITS JUDGMENT OR
      DECISION SET ASIDE AN EARLIER DECISION OF THE
      SECOND CIRCUIT COURT OF APPEALS IN THE SAME
      MATTER.

## STANDARD OF REVIEW

The Second Circuit reviews de novo legal conclusions, including its

interpretation of Federal Statutes and determinations regarding their

constitutionality. United States v. Weingarten, 632 F.3d 60, 63 (2d Cir. 2011)

## DISCUSSION

### (a)    FMLA LEAVE NOT IN ISSUE:

Contrary to the District Court's assertions, Offor's FMLA request was

granted, and less than three minutes later, Offor was placed on FPPE Probation.

(3168 -A3170, vol. 14) Offor did in fact take her FMLA vacation which was

granted by the third Defendant Supervisor **"So she could be with her daughter"**

(confirming she had adequate Notice of Offor's FMLA Leave Request, A3170

para.1, vol. 14).

### (b)   MMC RELITIGATES SECOND CIRCUIT DECISION

At the District Court, MMC & CO relitigated this decision of the Second

Circuit Court asserting at various times, that Offor did not qualify for FMLA,

forcing the Hon. Judge Spatt as he then was, to issue a decision restating the

Circuit Court's decision and affirming that Offor's Placement on Focused Review

(FPPE) was the first Causal chain in the events that finally led to the termination of

her employment, and that the MMC's Retaliatory Actions extended to the

termination of Offor's employment and past. (See Order and Decision of Judge

Spatt affirming the ruling of Magistrate Judge Locke at A4321, vol. 19) MMC &

CO. did not appeal this decision. According to the Second Circuit Court of Appeals

in reinstating Offor's FMLA Retaliation Claim:

"….She has plausibly alleged that she attempted to exercise FMLA rights,

that she was qualified for her position, and that she suffered an adverse

employment action when she was put on FPPR probation. Mercy Medical put her

on the FPPR probation only one month after she retained an attorney, and that

temporal proximity is enough at this stage to give rise to an inference of retaliatory

intent. See Hicks v. Baines, 593 F.3d 159, 170 (2d Cir. 2010). We therefore vacate

the district court's dismissal of Offor's FMLA retaliation claim." (A3149, A3161, vol. 13, Summary Order in Suit No. 16-839 Offor v. Mercy Medical Center)

The District Court cannot set aside a prior decision of the Court of Appeals, this is what the District Court has now done by ignoring the Summary Order of the Court of Appeals which had earlier ruled that Offor had established a Prima Facie case of FMLA Retaliation.

### (c) THE EFFECT OF THE SECOND CIRCUIT COURT OF APPEALS DECISION

On January 20th, 2017, the Second Circuit Court ruled that Offor had established a Prima Facie case of FMLA Retaliation. (Offor v. Mercy, 16-839 at pgs. A3149, A3161, vol. 13) With Offor satisfying her initial burden of establishing a prima facie case, the burden of production then shifts to the employer to "articulate a legitimate, clear, specific and non-discriminatory reason for its actions" Esser v. Rainbow Advert. Sales Corp., 448 F. Supp. 2d 574, 581 (SDNY 2006) (quoting Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995) The Second Circuit applies the retaliation analysis from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See also Potenza, 365 F.3d at 168. had the burden to articulate a legitimate nondiscriminatory reason for the adverse employment action O'Reilly v. Consolidated Edison Co. of New York, Inc., 173 F.App'x 20, 22 (2d Cir. 2006). MMC & CO could not come up with any "legitimate nondiscriminatory reason and having failed in their attempt to establish a non-

Retaliatory reason for Offor's placement on FPPE and subsequent termination of her employment, MMC absurdly shift their argument claiming this time that Offor did not qualify for FMLA (totally discountenancing the earlier decision of the Second Circuit Court and the fact that she indeed took the FMLA vacation).

B. WHETHER THE DISTRICT COURT ERRED WHEN IT TOTALLY DISREGARDED AND DISCOUNTENANCED THE SUMMARY ORDER OF THE SECOND CIRCUIT COURT STATING THAT OFFOR HAD ESTABLISHED A PRIMA FACIE CASE OF FMLA RETALIATION

**STANDARD OF REVIEW**

Abuse of discretion.

**DISCUSSION**

Summary Judgment is not granted unless it appears beyond doubt that the Plaintiff can prove no set of facts, which would entitle relief. Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). Offor proved facts which would have entitled her to relief.

C. WHETHER THE DISTRICT COURT ERRED WHEN IT FAILED TO APPLY THE MCDONNEL DOUGLAS BURDEN-SHIFTING ANALYSIS OR CONSIDER EVIDENCE GOING TO THE MCDONNELL DOUGLAS ANALYSIS

**STANDARD OF REVIEW**

Abuse of Discretion

## **DISCUSSION**

The Second Circuit Court analyzes Retaliation Claims under the McDonnell Douglas burden shifting analysis <u>Potenza v. City of New York</u>, 365 F.3d 165, 168 (2d Cir. 2004) Upon a successful prima facie case, the burden shifts to MMC to proffer a legitimate, non-retaliatory reason for the adverse employment action, if MMC meets this burden, then Offor must demonstrate that MMC's purported reason was a pretext for retaliation for filing for FMLA Leave. <u>Deangelo v. Yellowbook Inc.</u>, 105 F.Supp. 3d 166,182. <u>Roberts v. Health Ass'n</u>, 308 Fed. Appx. 568, 570 (2d Cir. 2009) citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792. 93 S. Ct. 1817 (1973).

MMC had predicated their Defense of this case on "the after acquired evidence" theory and on the contrived clinical incompetence of Offor. Upon the Summary Order of the Second Circuit Court, (A3149, A3161, vol. 13), MMC & CO had the burden to articulate a non-retaliatory reason for their actions. After referring Offor to the New York OPMC for prosecution, MMC & CO began to fabricate documents to corroborate their narrative that Offor was clinically incompetent. Having failed at that with the New York Appeals Court Decision setting aside the revocation of Offor's License, (A4767, vol. 21) MMC & CO now argue that Offor did not qualify for FMLA (Even though she indeed took the FMLA vacation).

14

## D.     NOTICE AND EQUITABLE ESTOPPEL:

**This issue is Moot, because Offor took the FMLA vacation**. However, the

District Court attempted to address the Notice requirement, focusing only on the

false notion created by the MMC & CO that Offor failed to give Notice. To be

clear Offor repeatedly provided Notice to her Employers several months prior to

her proposed FMLA Leave. (A3164, A3005 paras 13-15, vol. 13, A4231 page 117

line 12-13, A4238 page 145 line 20 - page 147 line 22, vol. 19). However, the

FMLA requires employers first to provide employees with both general and

individual notice of FMLA. To meet the general notice requirements an employer

must post a notice of FMLA rights on its premises (See § 2619(a). Employers must

also include information regarding the employer's FMLA policies in a handbook

or similar publication. See C.F.R. § 825.300. MMC & CO had no posted notice of

FMLA rights and had no written FMLA Policy in 2012 through 2013 and a Policy

was only created in June 2014, effective 06/01/2014 (a month prior to the

termination of Offor's employment and two years after the FMLA Leave was

taken by Offor, there was no prior FMLA publication (A5015, vol. 22). MMC &

CO are Equitably Estopped from asserting now that Offor was not covered under

the FMLA. The Second Circuit has applied this Doctrine of Equitable Estoppel to

prevent Employers from claiming Employee ineligibility after claiming eligibility

or as in this case, failing to provide Notice. <u>Kosakow v. New Rochelle Radiology Assocs., P.C.</u>, 274 F.3d 706, 724-25 (2d Cir. 2001)

## E. ANY PROFERRED REASONS FOR THE ADVERSE EMPLOYMENT ACTIONS ARE PRETEXTUAL

Assuming arguendo, that MMC were to articulate any legitimate nondiscriminatory reason for the adverse employment actions (from placement on Focused Practitioner Review, Demotion to Termination of employment), this Court would find that the proffered reason was pretextual.

### (a) EVALUATIONS:

Offor Was Not Evaluated During The Period Of Her Placement On FPPE till her employment was terminated notwithstanding MMC & CO allegations of clinical incompetence, and contrary to MMC policy, MMC & CO only evaluated Offor's performance seven times in her 14 years of employment and none whatsoever during the <u>twenty months of Focused Practitioner Performance Evaluation (FPPE)</u> December 2012- August 2014. <u>A3522, 3526, 3532, 3545, 3555, vol. 16</u>. By its definition, there cannot be a Focused Practitioner Performance Evaluation without regular Performance Evaluations or at all. MMC & CO FPPE POLICY at A3183 para3, A3198, A3199, vol. 14. MMC & CO Policies and Procedures regarding FPPE dictates that evaluation of the practitioner whose performance is in question are documented and maintained in the practitioner's quality assurance file. (FPPE Sample Form, A4000-A4001 at vol. 18) Further all

16

actions to improve performance are implemented and documented in the

practitioner's file. MMC & CO in their Answer to Offor's Complaint, admitted

that Offor was supposed to be "Evaluated Regularly".

**"Admit that, during the course of a FPPE (Focused Practitioner Performance**

**Evaluation), a practitioner is subject to regular evaluation but, except as so**

**admitted deny the allegations set forth in <u>paragraph 59 of the Complaint"</u>**

<u>A385, vol. 2.</u>

Since Offor was NEVER EVALUATED during FPPE, it follows that there

was NEVER a plan to end the FPPE period By its definition, there cannot be a

Focused Practitioner Performance Evaluation without regular Performance

Evaluations or at all. MMC Sample FPPE Evaluation Form at A4000-4001, vol.

18.

### <u>(b)</u>     <u>REAPPOINTMENT</u>:

One year into the FPPE, Offor was reappointed and her privileges renewed

without any restrictions or conditions. (A3236-3240, vol. 14) No evaluations took

place at reappointment or at all during the entire period of FPPE. MMC & CO

failed to comply with its own Policies regarding Evaluation during FPPE Mercy

failed to comply with New York State Department of Health Regulations and their

own policies, which require that adequate, documented evidence of current clinical

competence be made part of the reappointment process. A3183 para 3, A3198-3199, vol. 14, Mercy FPPE Policy and Procedure.

### (c)    SPURIOUS ALLEGATIONS OF CLINICAL INCOMPETENCE:

The District Court had discussed extensively, Offor's alleged clinical incompetence having accorded credence to the fraudulent documents produced by MMC and the perjured testimony of its officers. However, in truth, in order to justify Offor's placement on FPPE and the subsequent termination of her employment, MMC resorted to encouraging certain medical staff to file spurious complaints against Offor. Below are some of the cited instances in proof of Offor's incompetence relied on by the District Court.

### (i)    VENTILATOR RELATED COMPLAINT (MMC EXHIBIT HH A2574, vol. 11)

Following Offor's advocacy for a critically ill Neonate with severe infection (Sepsis), requesting that the Respiratory Therapists change the Patient's Ventilator. According to Offor, the Ventilator Circuit had purulent secretions which caused re-infection to the Patient. Even though changing the Ventilator would have cost the hospital nothing, Dr. Devarajan bluntly refused and instead turned Offor's passionate advocacy for the Patient into a disciplinary issue, nudging the Indian Respiratory Therapist, Sajan Paul to file a spurious Complaint against Offor (A4984-4986, vol. 22, A2574, vol. 11). Dr. Devarajan was more interested in

18

humiliating Offor by siding with the Respiratory Therapist than the grave condition of a fragile Neonate with high Morbidity. Thus, her uninformed and stubborn refusal to accede to Offor's simple request eventually directly led to the very preventable death of the Patient. A 4253, vol. 19 (page 206 line 20 to 208 line 17).

### (ii) DR. RAYJADA'S COMPLAINT (MMC EXHIBIT HH)

MMC's Exhibit HH (A2574, vol. 11) refers to the alleged refusal of Dr. Offor to allow Dr. Rayjada accompany her (Offor) on rounds. However, prior to the request, Dr. Devarajan had written three letters at different times informing all the NICU Physicians NOT to attend each other's rounds. (A4982abcd, vol. 22) Thus, Offor was written up for complying with Dr. Devarajan's written departmental policy following a Complaint by Dr. Rayjada (Indian). Offor was to be written up anyway. If she had agreed to the request, she would have been written up for failing to comply with the said departmental policy

## F.   OFFOR WAS ALLOWED TO WORK ALONE AND WITHOUT SUPERVISION

During the Period of FPPE. Offor was allowed to work alone, independently, and frequently to head the Neonatal unit (during the frequent absences of her Supervisor, third Defendant/Appellee and during the twenty month period of the FPPE) and asked to help other Neonatologists with Clinical Procedures contrary to MMC policy, A3241 to 3270, A3200, vol. 14, Mercy Policy

requires that any Physician on FPPE be monitored, supervised and evaluated.

A3183, 3198-3199 at vol. 14.

## G. THERE WERE NO MIDAS, SENTINEL OR ADVERSE EVENTS REPORTS AGAINST OFFOR

Despite the serious allegations of clinical incompetence, against Offor, and

the production of two documents several times, (Risk Management Investigation of

reported Midas Incidents involving Neonatologist, Dr. Offor, dated 11/14/2012 and

June 10th, 2013 at A1778 – 1788, vol. 8). Asides from the forged Midas Report

(MMC & CO's Exhibit Z submitted in support of their Summary Judgment Motion

(A2766, vol. 12). MMC neither had any Sentinel or Adverse Event Reports at the

time of the alleged incidents documenting the said events or at all. (A4332 line 22-

4334 line 12, vol. 19).

## H. THERE WAS NO EXPERT REVIEW OF THE THREE PATIENTS OFFOR ALLEGEDLY MISMANAGED PRIOR TO HER PLACEMENT ON FOCUSED REVIEW

When all Three Patients were reviewed almost two years later, Offor was

absolved of any wrongdoing. In December 2012, prior to Offor's placement on

FPPE, MMC had asked Dr. Marjorie Schulman to review the Charts of the Patients

that Offor was alleged to have clinically mismanaged. Dr. Schulman shredded the

Charts and advised MMC that after a review of the Medical Charts provided, she

could not write any report that would "help" them. Accordingly, she did not

provide a report. (A4085, vol. 18). Thus, it was revealed that Mercy was "shopping" for Doctors who will write negative reviews of Offor's clinical management of selected very sick Neonates. (A4079-4082, vol. 18, A4334 line 16 - A4335 lines 17, vol. 19). As a result, there was no Expert review of Offor's clinical management of all the three Patients in the alleged incidents of 2009, 2011 and 2012 prior to her placement on FPPE in December 2012. Furthermore, the purported Expert Review done by the third Defendant's Indian friend and former colleague at Stony Brook Hospital, Dr. Shanty Sridhan in October 2012 was on an unidentified patient. (A1867 vol. 8 -MMC Exhibit BB).

## I. OFFOR'S FMLA VACATION REQUEST WAS THE ONLY PROXIMATE EVENT

Offor's FMLA request was the only proximate event between the last alleged Incident of clinical mismanagement and her placement on FPPE.

## J. OFFOR'S FPPE WAS CONTINUED FOR TWENTY MONTHS AGAINST MMC POLICY

Without any monitoring, evaluation, or recommendations. (A3183, 3198, 3199, vol. 14.

## K. OFFOR EXCEEDED CLINICAL PERFORMANCE STANDARDS

In MMC's only seven performance evaluations through her 14 years employment. A3522, 3526, 3532, 3545, 3555, vol. 16.

**L.    DESPITE HER PLACEMENT ON FPPE OFFOR WAS ASKED TO REPRESENT CHSLI**

During her placement on FPPE, Offor was asked to represent CHSLI

(Second Defendant/Appellee) in a medical malpractice suit deposition in which she

was neither sued nor subpoenaed Offor was asked by MMC to attend a deposition

on behalf of CHSLI in a Medical Malpractice Suit where she was neither sued nor

subpoenaed. A4127, vol. 18. One of these depositions was for Patient H, (F

Hollingsworth v. Mercy Medical Center INDEX NO. **002481/2012**), this was a

preterm baby that Dr. Devarajan had gravely mismanaged and which ensuing

Malpractice Lawsuit as a result of Dr. Devarajan's Clinical incompetence cost

MMC $5million.

**M.    OFFOR WAS GIVEN A PAY RAISE ABOUT TWO MONTHS BEFORE SHE WAS PLACED ON FPPE**

Despite the best efforts of MMC to cast Offor as a Physician with poor

clinical skills, MMC & CO in fact gave her a pay increase in October, 2012, about

two months before she was placed on FPPE. (A4980, vol. 22). MMC & CO  have

repeatedly asserted that pay increases are not given to Physicians who were

deficient in any aspect of her employment. Offor is generally regarded as a great

Physician. A4731-4734, A4753, A4755, A4758, A4761, A4762, A4766, vol. 21,

See sworn testimony of MMC Nurse, Kathy Elmer at New Jersey Medical Board

Hearing at page A4733 (p 74 line 6-17) vol. 21.

**"Well, the nurses that came with me today are retired. We just recently retired. But all the nurses, I'm telling you, I don't think there was one, and there must have been full-timers, part-timers, per diems that were there for, you know - none of them would not have signed or been here today if they weren't in fear of losing their jobs. But they all thought she was a phenomenal doctor with the highest level of skills." Kathy Elmer RN.**

## N.    OFFOR'S DAUGHTER WAS INCAPABLE OF SELF CARE

Offor's daughter was physically incapacitated and incapable of self-care for several weeks following the delivery of her baby. A4928, vol. 22, A4248 page 188 lines 11-13, vol. 19.

## O.    DISTRICT COURT'S CLAIM OF INCONSISTENT TESTIMONY

As elaborated earlier, Offor's daughter was pregnant and had a serious health condition at the time because she was pregnant and suffered from Anemia, enlarged lymph nodes, was referred to a Hematologist Oncologist for Hodgkins Lymphoma, (A4209, pg 30 lines 10-16, vol. 19) and she was diagnosed with Nodular Lymphocyte Predominant Hodgkins Lymphoma. Offor exhibited the Medical records of her daughter (produced by MMC & CO) (A4899, vol. 22). Which confirms that she was indeed diagnosed with Nodular Lymphocyte Predominant Hodgkins Lymphoma and was also referred to a Cardiologist because she was having excessive and recurring palpitations and heart murmur, A4892, vol. 22.

## P.    ALLEGED MISSING DOCUMENTS (SPA -93)

The District Court claimed in its decision (SPA-93) that Offor failed to

include documents cited by her in the record. This cannot be further from the truth.

The documents specifically flagged by the Court as not included in the record

were: (1). **Covered Employers** The Court claimed Offor failed to include in the

record facts supporting her assertion that MMC & CO were covered employers.

Asides from the fact that this issue is not in dispute and is a fact the Court could

take Judicial Notice of, Offor did include at A376, vol.2 para3. (3). **Well Qualified**

**for the Position** Offor provided her Certifications AND Licenses, A3045-3053

(4)**. Only Board-Certified Neonatologist**. Offor was at some point the Only

Board-Certified Neonatologist at MMC and her name was used for the billing

A4133 6**. Covered Employee**, Offor was a covered employee, A475, vol. 2,

(9). **Offor Worked in the Neonatology Unit of the Hospital** clinically managing

Neonates, the most fragile patients in the hospital. A3200, A3211, vol. 14.

(11). Offor was denied Leave in November 2012 under the FMLA and sought the

Assistance of a Lawyer, A3167, vol. 14

## DECISION

**2.    THE MAY 11TH, 2021 REPORT AND RECOMMENDATIONS OF THE HONORABLE MAGISTRATE JUDGE STEVEN LOCKE DENYING OFFOR'S MOTION FOR SUMMARY JUDGMENT, GRANTING THE MMCS' CROSS MOTION FOR SUMMARY JUDGMENT AND DENYING OFFOR'S MOTIONS TO STRIKE (258, 263). (SPA- 46)**

## ISSUE

**A.    WHETHER THE LEARNED MAGISTRATE JUDGE HAD ANY LEGAL AUTHORITY TO ISSUE A REPORT AND RECOMMENDATIONS IN THIS CASE IN THE ABSENCE OF A DISTRICT JUDGE ASSIGNED TO THE CASE.**

## STANDARD OF REVIEW

The Second Circuit reviews de novo legal conclusions, including its interpretation of Federal Statutes and determinations regarding their constitutionality. United States v. Weingarten, 632 F.3d 60, 63 (2d Cir. 2011)

## DISCUSSION

The Summary Judgment Motions were referred to Hon. Magistrate Judge Locke by Hon. Judge Sandra Feuerstein, and the Motions were fully briefed on 01/21/2021.

However, unfortunately, on April 9th, 2021, the Hon. Judge Sandra Feuerstein was killed in a tragic accident. Offor thereafter wrote several letters to the Chief Judge of the EDNY and the Clerk of Court, Eastern District of New York (on 04/26/2021, 04/30/2021, 05/05/2021, A538-541, vol. 3), requesting that the case be assigned to another District Judge. About four weeks later, on May 11th,

25

2021 at 2.03am, the Hon. Magistrate Judge Locke delivered his Report denying

Offor's Motion for Summary Judgment and granting the MMC's Cross Motion for

Summary Judgment. It would appear from a reading of the 28 U.S.C. § 636(b)(1),

that the learned Magistrate Judge upon the death of Hon. Judge Feuerstein and

without a District Court Judge assigned to the case lacked the authority to issue a

Report and Recommendations.

The wording of the Statute provides that the Report and Recommendations

be submitted to the District Judge and any Opposition papers be filed addressed to

the District Judge. The wording of the Statute then presupposes that there **MUST**

be a District Judge assigned to the case before the Magistrate Judge so assigned

can issue a Report and Recommendation. In the **ABSENCE OF A DISTRICT**

**COURT JUDGE, THE MAGISTRATE JUDGE CANNOT ISSUE A**

**REPORT AND RECOMMENDATION.** Any such report and recommendation

issued is null and void, lacking in authority or force.

**OFFOR'S SANCTION MOTIONS**

**DECISION:**

**3.     THE DECEMBER 15TH, 2020 ORDER OF THE HONORABLE
JUDGE SANDRA FEUERSTEIN DISMISSING OFFOR'S
MOTIONS FOR SANCTIONS DATED 12/01/2020 AND
12/06/2020. (SPA -40) (A5217-5382 VOL.24)**

ISSUE:

A.  WHETHER THE DISTRICTCOURT ERRED IN ITS FINDING
    THAT OFFOR'S SERIOUS ALLEGATIONS OF FRAUD
    AGAINST MMC & CO WERE TENUOUS AND
    UNSUBSTANTIATED, AND IF A DEFAULT SHOULD HAVE
    BEEN SO ENTERED AGAINST THE MMC & CO FOR
    PRODUCING AND SUBMITTING FORGED OR FABRICATED
    DOCUMENTSAND APPROPRIATE SANCTIONS LEVIED
    AGAINSTTHE MMC AND THEIR COUNSEL.

## **STANDARD OF REVIEW**

Abuse of Discretion

## **DISCUSSION**

Never in the history of American Jurisprudence has any litigant produced so

many false and fabricated documents, fraudulently seeking an advantage in a

lawsuit. Over 99% of the documents produced in this case were produced by MMC

& CO. Offor in response to this deluge of fraudulent documents, filed four separate

Motions for Sanctions and two Motions to Compel. The District Court's Orders

denying or terminating these Motions are now before this Court on Appeal.

> *"It has always been understood- the inference, indeed is one of the
> simplest in human experience – that a party's falsehood or other
> fraud in the preparation and presentation of his cause, his fabrication
> or suppression of evidence by bribery or spoliation, and all similar
> conduct is receivable against him as an indication of his
> consciousness that his case is weak or unfounded one; and from that
> consciousness may be inferred the fact itself of the cause's lack of
> truth and merit." 2 J.* **WIGMORE, EVIDENCES § 278, at 133
> (Chadbourn ed. 1979). also, <u>Fair Hous. of Marin v. Combs</u>, 285
> F.3d 899, 905 (9th Cir. 2002)** *(upholding default sanction against*

27

*party who, although ultimately producing relevant documents, "not only failed to produce documents as ordered, but also misrepresented to both counsel and to the district court that the documents did not exist.");* **Valley Engineers Inc. v. Elec. Eng'g Co., 158 F.3d 1051, 1058,** **Breezevale Ltd v. Dickinson, 759 A.2d 627, 641 (D.C. 2000)**

The Supreme Court reiterated this view in **Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246 (1944). 2d 28, 43 (D.C. 1986)**

**Aoude v. Mobil Oil Corp., 892 F 2d 1115 (1st Cir. 1989)** affirming dismissal where Plaintiff concocted a single document) **Trammel v. Bass, 672 So. 2d 78, 82 (Fla. Dist. Ct. App 1996)** affirming Default Judgment against Defendant who excised damaging six second portion of videotape before producing it during discovery. **Pope v. Fed. Express Corp., 974 F.2d 982.984 (8th Cir. 1992)** affirming sanction of dismissal for Plaintiff's forgery of, and reliance on, a single document. **Breezevale Ltd v. Dickinson, 759 A 2.D 627, 641 (D.C. 2000)** affirming sanction of dismissal where top executives of Plaintiff company engaged in scheme to forge documents and subsequently denied the forgery in pleadings and sworn testimony. A Default should have been entered against MMC & CO for fraudulently fabricating documents. Oliver v. Gramley, 200 F.3d 465,466 (7th Cir. 1999).

B.     ANALYSIS OF THE FRAUDULENT DOCUMENTS SUBMITTED
       BY THE MMC & CO IN SUPPORT OF THEIR SUMMARY
       JUDGMENT MOTION

### (i)     EXHIBIT II (A2604, vol. 11)

This was a note written by Dr. Devarajan purportedly memorializing events

which allegedly occurred at the Mercy Medical Center NICU involving Offor. This

note purports to have been written on Monday October 28, 2013 shockingly details

events that occurred over a month later. The unredacted name of the alleged

Patient was never provided. Offor asserts that there was no such Patient, and the

entire alleged incident was made up. The pertinent part of the note reads as

follows:

> "Dr. Offor Incident with Parents October 28,2013
> _____and was being treated for apnea, bradycardia and desaturations
> with GERD. She was diagnosed with GERD on 11/25/13 and
> Omeprazole started on 10/25 in the evening. I explained to the parents
> that she will be observed for at least 72 hours to ascertain that she will
> symptom free and that I as the neonatal attending on service will
> discuss the discharge date and plan with them on Monday11/28 with
> the. I communicated this plan clearly to Dr. Offor during sign out on
> 11/25.  On 11/28/13, ___   was very upset and stated to the nurse that
> she wanted to take her baby home that day as promised by Dr. Offor. I
> met with ___ along with the nurse Maria Cichlolla and explained that
> we were going to discuss the discharge plan today and that once the
> medication was available as an outpatient and baby remained
> symptomatic the baby could go home as early as the next morning.
> She continued to insist that Dr. Offor told her that the baby was fine
> and can go home on Monday 11/28……." A2605, vol. 11.

Dr. Rayjada was on call, and not Dr. Devarajan (MMC Call schedule at (A3225-3226, vol. 14) Surprisingly, the District Court ventures out with a possible explanation for the inconsistencies and discrepancies in the document manifesting fraud (an explanation not offered at any point by MMC & CO in all their submissions) According to the Court "If the events occurred in October 2013, and Dr. Devarajan confused October for the eleventh month, everything lines up" (District Court's Judgment SPA 74 at 84)

Unfortunately, this assertion cannot be further away from the facts as supported by the evidence.

The facts don't line up where Dr. Devarajan was neither on call on October 28, 2013 (A3226, vol. 14) nor on November 28th, 2013. (A3227, vol. 14) According to the District Court, "whether the events occurred in October or November 2013 does not materially impact the issues at bar" the position taken by the District Court is startling. MMC fabricated this document for the purposes of the gaining an advantage in the present litigation. Additionally, November 28th, 2013 was a Thursday and NOT a Monday as claimed by Dr. Devarajan. (Monday 11/28 was repeated twice by Dr. Devarajan in the fabricated note). Further, Dr. Devarajan was not on Call in the Hospital even on November 28th. If Dr. Devarajan was not on call on the date she alleged an incident occurred in the hospital, then the document is surely fabricated. The mistakes regarding dates the

30

alleged incidents occurred points to the fact that the documents were created after the fact and for the purposes of this litigation. To be clear, this document is not Dr. Devarajan's personal diary, where perhaps perfidious errors are expected, the purported note constitutes hospital medical records and are records purportedly kept in the ordinary course of business. This document was purportedly created contemporaneously with the alleged events. The errors within the document clearly reveals that this document was part of a large tranche of documents forged and fabricated by MMC & CO in their failed bid to provide a non-retaliatory motive for their negative employment actions against Offor. Most consequential is the fact that after Offor had filed her Motion for Sanctions regarding this Document on 12/01/2020 AND 12/06/2020, MMC & CO feeling "untouchable", arrogantly resubmitted this document as part of their Opposition papers on January 22, 2021 and MMC Counsel, Justin Guilfoyle Esq deposed to an Affidavit re-affirming and re-authenticating this document. (A2500, vol. 11, at para. 53 and A2831, vol. 12 at para 53).

### (ii)    EXHIBIT PP (A2702, vol. 12)

As Offor had argued exhaustively, this document was one of the documents initially cited in her Motion for Sanctions dated 12/05/2019. It was one of two identical documents, dated differently. One was dated December 19, 2013 and the other was dated December 20th, 2013. (A3989 to 3992, vol. 18)In the said letter,

Dr. Devarajan falsely claimed (amongst other falsehood) that she gave a letter to Dr. Offor on June 15th, 2013 regarding Dr. Offor's alleged "unacceptable behavior" June 15th, 2013 was a Saturday and Dr. Devarajan and Dr. Offor are NEVER in the hospital on Saturdays EXCEPT when they are on Call and Dr. Offor and Dr. Devarajan are NEVER on Call at the same time/day. Upon the realization that her fraud has been brutally exposed, Dr. Devarajan on Oath averred as follows:

"Upon review of the circumstances and the various documents relating to the December 19th letter, the December 19th letter is incorrect because I did not present Dr. Offor with a letter on June 15th, 2013". Affidavit of Dr. Devarajan at A1422, vol. 7 at para 20.

### (a)     <u>MMCS' DUELING AFFIDAVITS</u>

On October 28, 2020, MMC & CO having suffered no prior consequence for the submission of this fraudulent document, resubmitted this same document in support of their Motion for Summary Judgment. The District Court in its judgment stated inter-alia "Dr. Devarajan "unintentionally and mistakenly" referenced the date of the first draft….likewise, the differences between the December 19 and 20 are too minor to suggest fraud". SPA 74 at 85.

Assuming that Dr. Devarajan created this document in error and upon Offor's Sanction Motion dated 12/05/2019, admitted her error, A1422, vol. 7 at

32

para 20, the District Court failed to take any action, so on the 28th day of October, MMC resubmitted this document in support of their Motion for Summary Judgment. A2702, vol. 12. Offor raised objections to this document filing a Motion to Strike and two Motions for Sanctions. On 22nd. day of January 2021, MMC again resubmitted this document feeling assured that no consequence will befall the billionaire corporation. (A2702, vol. 12). The District Court had eagerly sanctioned Offor's Counsel on the strength of a lie, (MMC & CO falsely claiming Offor's Counsel filed documents with hundreds of HIPAA protected material without redaction-in Offor's Complaint (A3078 to 3090, vol.13) Since MMC & CO had admitted that the document was "a mistake", on January 22,2020 ( A1422, vol. 7 at para 20) how then does the District Court justify the resubmission twice of this admitted "mistake" by MMC & CO on October 28, 2020. in support of the MMCs' Motion for Summary Judgment and on January 22, 2021? How did the District Court resolve the dueling affidavits deposed to by Dr. Devarajan on January 22, 2020 admitting that the document was "a mistake" A1422, vol. 7 at para 20, and Mr. Guilfoyle's affidavits on October 28 and November 30, 2020, A2501 at para 60, vol. 11 and A2832 at para 60, vol. 12, twice affirming the authenticity of this "mistake." These Affidavits cannot stand in such apparent contradiction, one or more of them MUST be false. A false Affidavit is Perjury. Perjury on any material fact strikes at the core of the judicial function and warrants

a dismissal of one's right to participate at all in the truth-seeking process. If one can be punished for perjury with up to five years imprisonment, (See U.S.C. § 1621), it should not seem out of place that a civil action might be dismissed for the same conduct. <u>Arnold v. Cnty. of El Dorado</u>, 2012 WL 3276979, at *4 (E.D. Cal.)

### (iii)  EXHIBIT AA (A1840, vol. 8)

Exhibit AA is an alleged written review by Dr. Schanler regarding Patient #1 and apparently Dr. Schanler did not write or send the said report. The email was sent from rschanle@nshs.edu. The signature block of the email however had the correct email address for Dr. Schanler which is schanler@nshs.edu. Asides from communicating numerous times with Dr. Schanler at schanler@nshs.edu address, He was a member of AAP (A4994 – A5014, vol. 22). Dr. Schanler offered Offor a job immediately following the termination of her appointment (the opportunity was scuttled by MMC when it leaned on the hospital not to hire Offor even after she had signed an employment contract, A4863, vol. 22).

It would follow therefore that if Dr. Schanler had indeed written the scathing report against the clinical performance of Dr. Offor in 2012, would he offer her a job in 2014? The District Court in dismissing Offor's allegation of fraud regarding this document cites *Sua Sponte* a September 1, 2021 internet post, months after the allegation of fraud and Motion for Sanctions filed against MMC, regarding this

34

document. MMC neither offered this information nor made any such argument. It is definitely unlikely that an employee will have two different active email addresses on the same Corporate server. Additionally, the Court never addressed the fact that there were multiple document fonts on the poorly forged email. Again, after Offor had filed her Motion for Sanctions regarding this Document on 12/01/20 and 12/06/2020 MMC & CO. feeling untouchable and above all recriminations, refiled this document as part of their Opposition papers on 01/22/2021, with MMC & CO. Counsel deposing to an Affidavit re-affirming the correctness and authenticity of this document. (A2499, vol. 11 at para 45 and A2830, vol. 12 at para 45).

(iv)    EXHIBIT SS (A2718, vol. 12)

This document was produced by MMC purportedly memorializing a meeting with Dr. Offor, called by Dr. Aaron Glatt. In the said note, Dr. Devarajan memorialized the following:

> **"Dr. Glatt stated that the meeting was not a dialogue and only he will speak. He stated the expectation that emails discussing patient information that are damaging must stop. He stated that any more such emails and he will take further action including suspension. He supports the Chair of the department. All quality concerns must be brought forth through the Peer Review and PI process within the department.**
> **He asked if Dr. Offor had any questions and she stated that she understands. This is being documented for her file."** A2719, vol. 12.

This however was definitely not what transpired at the meeting, unknown to Dr. Devarajan, Dr. Glatt memorialized the meeting and sent an email immediately after the meeting to Mercy Medical Center HR and copied Dr. Offor stating

> **"I met with Drs Reilly, Devarajan and Offor this morning and I laid down what I expected from that Department regarding communication and quality. My comments were directed at all three of them, and were not specific but general in nature."**

A5023, vol. 22.

This was a fraudulent mischaracterization of the meeting intended to further depict Dr. Offor as an incompetent and disruptive employee. Again, after Offor had filed her Motions for Sanctions regarding this Document on 12/01/2020 and 12/06/2020, MMC feeling untouchable and above reproach, refiled this document as part of their Opposition papers on 01/22/2021 with MMC & CO Counsel, Justin Guilfoyle Esq deposing to an Affidavit re-affirming and re-authenticating this document. (A2501, vol. 11 at para 63 and 2832, vol. 12 at para 63).

(v)    EXHIBIT Z (A2766, vol. 12)

MMC & CO had produced two documents reproduced multiple times titled

**"(a) RISK MANAGEMENT INVESTIGATION OF REPORTED MIDAS INCIDENTS INVOLVING NEONATOLOGIST, DR. OFFOR, DATED 11/14/2012 AND JUNE 10TH, 2013"** A1778 – 1788, vol. 8.

These were written by Rosemarie Povinelli, Director of Risk Management at Mercy Medical Center. In these documents, MMC presented a long list of numerous Midas Incidents and other adverse events arising from Offor's treatment

of Patients' 1,2,3,4, 8,9. A1780-1793, vol. 8. However, when Offor demanded the

Midas Reports or other Adverse Event Reports, MMC through their Attorneys

(Nixon Peabody & Co) claimed there were none. A4332, line 22 to A4334 line 12,

vol. 19. In response to Offor's Motion to Compel (A4052), MMC Counsel, Mr.

Gegwich responded:

> **"It should also be noted that the first time Plaintiffs counsel requested Midas Incident Reports regarding her management of patients 1, 2, 3, 5, 11, 12 and 13 and the minutes of a meeting held on September 6, 2012 relating to a respiratory therapist at MMC was as part of her motion to compel. Notwithstanding this wholly improper method for requesting documents, Defendants responded by informing Plaintiff that they conducted a diligent search and are not in possession, custody or control of any of the documents requested in items 6, 7, 8, 9, 10, 11, 12,13 and 14. (Exhibit "B"). Based on the foregoing, Defendants respectfully submit that Your Honor deny Plaintiff's motion to compel in its entirety. Should Your Honor have any questions or require additional information, we are available at the Court's convenience."**

A4062, vol. 18.

Despite this clear statement from MMC & CO Lead Counsel at the time, Mr.

Christopher Gegwich, Offor's Counsel had during the Court's Conference hearing

of the Motion to Compel sought more clarity from the MMC & CO regarding any

Midas Reports, Adverse Event Reports, Sentinel Event Reports and other Incident

Reports filed on any of the Patients treated by Offor whose treatment allegedly

formed the basis of her placement of Focus Practitioner Review and Termination

of her employment.

37

**"that we've searched for these documents and they're not in the possession, custody or control of the defendants. We're not aware of any documents, and we put that in writing in a letter, which we attached as an exhibit to our opposition to the motion. The documents do not exist, and plaintiff now understands that. We've made that representation…. they never existed"**

(A4333 line 21 to A4334 line 12, vol. 19).

MMC & CO after twice denying the existence of any "Midas Report", regarding Patient # 1, on November 30th submitted this document (Exhibit Z), in their papers in Support of their Motion for Summary Judgment and in spite of a Motion for Sanctions filed by Offor protesting the inclusion of this fraudulent document (which MMC had earlier claimed not to be in possession of), On January 22, 2021,MMC, upon the sworn affirmation of their Counsel, Justin Guilfoyle Esq, resubmitted this document in support of their Opposition papers to Offor's Motion for Summary Judgment. (A2499, vol. 11 para 44, A2830, vol. 12 para 44).

Regardless, when they filed their Summary Judgment Motion, MMC & CO produced Exhibit Z, a purported Midas Report which MMC & CO claimed was generated on Patient #1 See MMC's Rule 56 Statement at A2413, vol. 11 at paras 61-65.

(MMC Attorneys had repeatedly indicated that they had no Midas, Adverse Event or other Incident Report on this Patient #1. This was the only Patient transferred to LIJ Cohen Children's Hospital on 08/12/2012 and was born on 08/11/2012, A5094 to 5095, vol. 23) In its decision, the District Court noted

regarding Exhibit X that "Moreover Dr. Devarajan states the incident did result in a Midas Report….one dated August 20, 2012 i.e Exhibit Z"( SPA -91) Exhibit X was an alleged memorialization of a Counselling Session regarding Offor's treatment of Patient # 1. Offor was not listed even on the fraudulent document as the treating Physician (whose Physician ID number was 124139- not Offor's number which was 502032, A5093, vol. 23). The Nurse cited in Midas Report (Patty, RN) never cared for Patient # 1 throughout the Patient's stay.

Exhibit Z was allegedly originated on 07/26/2012 (Start date of Midas Report, Patient # 1 had not been born on that date). The dates of the incidents on the Midas report were 07/26/2012 and 08/ 20/2012, thus the fabrication was off in all ramifications. (A5152 to A5163, vol. 23). Patient #1 never required antibiotics via Nebulizer (Exhibit Z, item # 5). The records thus show that contrary to the falsehood being peddled by MMC & CO, Offor did not perform any intubations (Procedures) on this Baby on 08/20/2012- (Patient #1 had been transferred to LIJ as of that date). The day of the alleged Midas Report Incident. Also, Offor did not manage the baby on 07/26/2012, the Patient #1 had not been born. The District Court in its decision stated that the Midas Report was raised on Offor's treatment of Patient # 4 (SPA -90), attempting to obfuscate Offor's argument. Clearly MMC & CO claimed that the Midas Report was raised on Patient #1. MMC & CO's Patient #1 was one of the three Patients that MMC & CO. claimed Offor had

clinically mismanaged and whose clinical mismanagement was allegedly flagged by Dr. Koppel of Cohen Children's Hospital. See Exhibit Y attached to MMC & CO Summary Judgment Motion at A2760 (last paragraph, Chart #3 refers to Patient #1- August 2012 vol.12).

Exhibit Z of the Declaration of Dr. Devarajan is a fraudulent document and Offor pointed the District Court to all the needed proof on the record.

**(b)** **MMC POLICY REGARDING MIDAS INCIDENTS**

Midas events are considered "Sentinel" because they signal a need for immediate investigation and response. All Sentinel events must be reviewed by the hospital and are subject to review by the Joint Commission. A3192, vol. 14.

1.    Regardless, MMC & CO had in their **QUALITY ASSURANCE DOCUMENTS** purportedly prepared by Rosemarie Povinelli on November 14th, 2012 and June 10th, 2013 respectively and titled **"RISK MANAGEMENT INVESTIGATION/TIMELINE OF REPORTED MIDAS INCIDENTS/COMPLAINTS INVOLVING NEONATOLOGIST, DR. OFFOR" (A1778 to A1788, vol. 8)** document lists alleged MIDAS Incidents involving Offor's treatment of Patient Nos. **1, 2, 3, 4,8,9 (**A1778-1788,  vol. 8), but MMC has repeatedly stated that there were no MIDAS reports on these same Patients. A4334, line 16 – A4335 line 17, vol. 19).

40

## DECISION

4. **THE OCTOBER 4TH, 2019 ORDER OF JUDGE ARTHUR SPATT DENYING OFFOR'S MOTION FOR SANCTIONS DATED JULY 22ND 2019 (SPA-14, A294-427 VOL.2, A3282-3343VOL. 14, A3347-3480 VOL.15)**

ISSUE:

A. WHETHER THE DISTRICTCOURT ERRED IN ITS FINDING THAT OFFOR'S SERIOUS ALLEGATIONS OF FRAUD AGAINST THE MMC & CO WERE TENUOUS AND UNSUBSTANTIATED, AND IF A DEFAULT SHOULD HAVE BEEN SO ENTERED AGAINST THE MMC & CO FOR PRODUCING AND SUBMITTING FORGED OR FABRICATED DOCUMENTS AND APPROPRIATE SANCTIONS LEVIED AGAINST MMC & CO AND THEIR COUNSEL.

## STANDARD OF REVIEW

Abuse of Discretion

## DISCUSSION

Offor filed a Motion for Sanctions dated July 22, 2019, against MMC well over a year after the termination of her employment, MMC referred Offor to the New York Office of Professional Medical Conduct (OPMC) claiming that she had clinically mismanaged a different set of patients. In furtherance of these claims, MMC submitted Patient Medical Records including Patient # 5's Medical Records to support their allegations of Clinical mismanagement. Patient #5 was treated by Offor and other Physicians at MMC. Based upon the Medical Records provided,

41

the New York Board Expert found that there was a severe deviation in accepted

medical standards because the baby was not administered Insulin and Offor failed

to obtain an endocrinology consult during the initial treatment. A4136, vol. 18.

However, Offor's notes and the Nurses' notes which would have established that

she did obtain an endocrinology consult from Dr. Yolanda Saint Louis, and

documented the consult in line with her recommendation that Insulin not be

administered. Further, MMC & CO had contaminated the Patient's IV bag and the

same contained more than ten times the sugar level, also the Nurses noticed that

the IV bag appeared cloudy. an Investigation was ordered. (A4136, vol. 18) Even

though Offor's notes were deleted from the Patient's chart, certain notes about Dr.

Offor's consultation with the Endocrinologist as well as her Supervisor's note

concerning the IV bag remained in the Patient's records. Dr. Devarajan forgot to

delete a note which confirms the investigations into the adulterated IV bag

**"the investigations of the IV bag, medications in the pump are ongoing,**

**however, the results so far are negative and it does not appear to be**

**iatrogenic"** A4136, vol. 18.

MMC would refuse to produce the Investigation Report alluded to by the Dr.

Devarajan despite a Motion to Compel and the District Court refused to Compel its

production A485 to 491, vol. 2). In response to the Motion for Sanctions, MMC &

CO produced yet another fabricated document, - a log attached to the Affidavit of

42

Mohsen Quraishi-( A929-932, vol.4) the log entries on September 16, 2013 shows an entry at 9.40am- Plan of care was purportedly signed by Kim Jayna NP, Registered Nurse. Jayna Kim, previously known as Jayna Phillips only became Jayna Kim in 2018 after she got married. See email written by Jayna Phillips to Offor at A3345, vol. 14. Therefore, the entry purportedly made in 2013 should have been electronically signed by Jayna Phillips. Also, Jayna Kim was not an NP (Nurse Practitioner) in 2013. A3345, vol. 14. The log was supposed to mirror the Patient Chart but the log missed many entries on the Chart. (A3465 to 3466, vol. 15). Additionally, MMC runs two Nurses' shifts in the NICU, 7am to 7pm (Day Shift) and 7pm to 7am (Night Shift), On September 16, 2013, Jayna Phillips (later known as Jayna Kim) worked the day shift, and Wofford, Gwendolyn RN worked the night shift, but Wofford's name was completely missing from the fraudulently manufactured log for that shift (7pm -7am overnight shift on September 16, 2013 to September 17, 2013). Wofford's name can be found on the Patient's Chart as the Patient's Nurse for that shift though it was missing from the manufactured log. As reiterated, the log was supposed to mirror the Patient Chart. A929-932 and A809, A825, vol. 4.

**5.     THE AUGUST 19TH, 2020 ORDER OF THE HONORABLE JUDGE
SANDRA FEUERSTEIN, OVERRULING OFFOR'S OBJECTIONS
TO THE JUNE 11, 2020 ORDER OF MAGISTRATE JUDGE
STEVEN LOCKE DENYING OFFOR'S MOTION TO COMPEL
NON-PARTY NEW YORK PRESBYTERIAN HOSPITAL (NYPH) TO
PRODUCE SUBPOENAED DOCUMENTS. (SPA -26) (A4052-4067).**

**ISSUE:**

**A.     WHETHER THE DISTRICT COURT ERRED IN DENYING
OFFOR'S MOTION TO COMPEL THIRD PARTY
SUBPOENA.**

**<u>STANDARD OF REVIEW</u>**

Abuse of Discretion

**<u>DISCUSSION</u>**

This same Patient (Patient # 5) was later transferred to Columbia

Presbyterian Hospital and all of the Patient's Chart and Records were also

transferred. Thus, because these same records will further prove the deletion of the

Patient's Charts, Offor issued a Subpoena and then filed a Motion to Compel this

third-Party Subpoena. This Motion was opposed by MMC & CO (without

Standing), The third Party Hospital despite being repeatedly served, neither entered

an appearance in the case nor filed any Opposition (rather sending an unfiled letter)

with the District Court absurdly ruling that the records were excessive to the needs

of the case, (District Court decision denying Offor's Motion to Compel SPA-19,

26).

6.   **SEPTEMBER 14TH 2020 ORDER OF THE DISTRICT COURT TERMINATING THE FULLY BRIEFED OFFOR'S MOTION FOR SANCTIONS DATED 12/05/2019 (SPA-33) (A3481-3491VOL.15, A3492-3679 VOL.16, A3680-3948 VOL.17, A3949-4051 VOL.18)**

ISSUE:

A.   WHETHER THE DISTRICT COURT ERRED IN ITS FINDING THAT OFFOR'S SERIOUS ALLEGATIONS OF FRAUD AGAINST MMC & CO WERE TENUOUS AND UNSUBSTANTIATED, AND IF A DEFAULT SHOULD HAVE BEEN SO ENTERED AGAINST MMC & CO FOR PRODUCING AND SUBMITTING FORGED OR FABRICATED DOCUMENTS AND APPROPRIATE SANCTIONS LEVIED AGAINST THEM AND THEIR COUNSEL.

**STANDARD OF REVIEW**

Abuse of Discretion

**DISCUSSION**

On September 14, 2020, the District Court Suo Motu, terminated Offor's Motion for Sanctions dated 12/05/2019. The only reason for the termination of the Motion given by the District Judge was that it had been pending for too long. (SPA-33).

By that Motion, Offor had sought Sanctions against MMC and their Counsel who were clearly complicit in the fraud perpetrated on the Court by the submission of numerous forged and fabricated documents.

45

These documents which formed the subject matter of these Sanctions Motions were produced several times by MMC & CO with different bate numbers, they are now listed below and discussed as follows:

(i)     **QUALITY ASSURANCE DOCUMENTS** purportedly prepared by Rosemarie Povinelli on November 14th, 2012 and June 10th, 2013 respectively and titled **"RISK MANAGEMENT INVESTIGATION/TIMELINE OF REPORTED MIDAS INCIDENTS/COMPLAINTS INVOLVING NEONATOLOGIST, DR. OFFOR".** (MMC despite this document, later claimed not to be in Possession of any Midas/Adverse Event Reports concerning any Patient managed by Offor. A4062, vol. 18, A4332 line 22 to A4334 line 12, vol. 19). This document lists alleged MIDAS Incidents involving Offor's treatment of Patient Nos. **1, 2, 3, 4, 8 and 9,** A1778 to 1788, vol. 8. (**Offor unsuccessfully sought to Compel production of these documents A4052 VOL.18)**

Ms. Povinelli then sets out to detail alleged Counseling/Evaluation sessions with Dr. Offor. These events were either cooked up fabrications or the details so brazenly altered to harm Offor and defraud the Court. For example, on **2/10/2007, Ms. Povinelli falsely claimed that "ventilator management guidelines were established for the NICU department. All clinical staff educated on the ventilator guidelines."** (A1779, A1783, vol. 8) Unfortunately for Ms. Povinelli,

46

February 10, 2007 was a Saturday and the only clinical staff in the NICU were the

nurses on duty and one doctor on weekend call. A3554, vol. 16.

In the same document, Ms. Povinelli also falsely claimed that Dr. Devarajan

and the Director of HR, met with Dr. Offor on January 20, 2008 to discuss Dr.

Offor's work performance. A1779, A1783, vol. 8, and A3538, vol. 16.

However, January 20, 2008 was a Sunday. Neither Dr. Devarajan, nor the

Director of HR comes into the hospital on Sundays. A3525, vol. 16.

Ms. Povinelli also falsely claimed that Dr. Offor was counseled on 04/06/2009 for

Frequent ventilator changes, repeated infusions of NS Bolus, repeated NAHCO

boluses in a short period of time. A1779, A1783, vol. 8 and A3553, vol. 16. In

truth however, Dr. Offor was not in the Hospital or NICU on the said date. Dr.

Offor had been on call in the hospital that weekend and left the hospital at 2am on

Monday the 6th of April, 2009. Dr. Offor wrote an email at 12.42am that morning

to Dr. Devarajan regarding a very sick baby in her care and an incident involving a

Respiratory Therapist. (A3551, vol. 16). Offor did not return to the hospital that

week but proceeded on a five-day vacation. (A473, vol.2- Dr. Offor's paystub for

that pay period showing that she had used 22.50 hours of her holiday time and

15.00 hours of her personal time during the said pay period). Dr. Devarajan's

response in her sworn declaration was a clumsy attempt at denial and obfuscation

of the facts. (Dr. Devarajan acknowledged under Oath that Offor was not in the

hospital on that day and for the entire week- see paragraph 14 of Dr. Devarajan's Declaration in Opposition.) However, she stated:

"I did not meet with Dr. Offor on April 6 2009, nor does my handwritten note indicate or state that I spoke with her on April 6 2009." A3575, vol. 16, para 14-18.

To the contrary however, this document clearly states:

**"APRIL 6, 2009**

**PATIENT REDACTED**

**After complete review of the medical record of the patient, I met with Infant's nurse REDACTED and asked for her input on patient status and physician management. Subsequently, I met with Dr. Offor to discuss her management. Points covered in discussion and counselling were......."** A3553, vol. 16.

Ms. Povinelli also memorialized this alleged event in her document titled:

RISK MANAGEMENT INVESTIGATION OF REPORTED MIDAS INCIDENTS INVOLVING NEONATOLOGIST, DR. OFFOR, DATED 11/14/2012 AND JUNE 10TH, 2013 A1779, A1783, vol. 8.

"4/6/2009: Counselling session MRN REDACTED, medical record reviewed, Dr. Offor Counselled for REDACTED addressed that Dr. Offor's management......."

Exhibit 14 is a note written by Dr. Devarajan claiming to have met with and counseled Dr. Offor on 04/06/2009, (A3553, **vol. 16)** which date as has been

48

explained above, Dr. Offor was away from the hospital. See Calendars for 2007 and 2008, A3554, A3525, vol. 16. Exhibit 3 is a letter dated February 29, 2008 (A3538, vol. 16) purportedly written by Dr. Devarajan to Dr. Offor in which the former and Denise Baston, Director of Human Resources claimed to have met with Dr. Offor on January 20th, 2008 to discuss her work performance, January 20th, 2008 was a Sunday. Human Resources Personnel never come to work on Sundays. Moreover, Dr. Offor and Dr. Devarajan do not come to the Hospital on Sundays except on call and both can never be on call on the same day. In her Opposition Affidavit, Dr. Devarajan under Oath claimed the document was a "mistake" A3573, vol. 16, paras 7-9.

   **(ii)**     **THE DECEMBER 19TH LETTER** Exhibit 4 (A3598 to 3599, vol. 16) is a letter purportedly written by Dr. Devarajan on December 19th, 2013. In the said letter, Dr. Devarajan falsely claimed (amongst other falsehoods) that she gave a letter to Dr. Offor on June 15th, 2013, regarding Dr. Offor's alleged "unacceptable behavior". June 15th 2013 was a Saturday and Dr. Offor and Dr.Devarajan are NEVER in the hospital on Saturdays EXCEPT they are on call and Dr. Offor and Dr. Devarajan are NEVER on call at the same time.

   (Exhibit E to the Declaration of Dr. Devarajan). Dr. Devarajan in her Declaration in Opposition concedes:

"Upon review of the circumstances and the various documents relating to the December 19, 2013, letter, the December 19, 2013 letter is incorrect because I did not present Dr. Offor with a letter on June 15th, 2013." paragraph 20 of the Declaration of Dr. Devarajan. (A3577, vol. 16).

Rather interestingly, this document was submitted twice by MMC & CO in support of their Motion for Summary Judgment, and in their Opposition papers. A3576 to 3577, vol. 16, paras 19 and 20.

> **(iii)** **MERCY MEDICAL CENTER NEONATOLOGY PEER REVIEW COMMITTEE MINUTES** (A3607-A3614, vol. 16).

This Document is another forged document detailing events on dates that NEVER happened. This document's header states in part "The Neonatology Peer Review Committee Meeting was held in the Congregation of Infant Jesus Conference Room on Wednesday, June 17th, 2014. Again, MMC in fabricating the document after the fact, failed to check the 2014 Calendar. Had they done so, they would have found out that June 17th, 2014 was a Tuesday (NOT A WEDNESDAY) A3607, vol. 16.

The alleged peer review examined Offor's clinical management of Patient Nos. 12 & 13. To be clear, the background to this false inquest was that Dr. Devarajan was on call on May 27, 2014 and she was repeatedly paged and called to come into the hospital to treat a Neonate (Patient #13) who was in deadly

distress having suffered a Pneumothorax. She needed to come into the hospital to evacuate the air in the mediastinum by inserting a chest tube.

Dr. Devarajan refused to come in and by the time Offor came to work the following morning, the Patient was near death. Offor wrote an email to Devarajan copied to MMC's CMO, Dr. Reilly, A3272, vol. 14. This made Dr. Devarajan so angry that she decided to fabricate a false Peer Review Committee Meeting. Dr. Devarajan and Dr. Rayjada were allegedly the only Physicians in the said Peer Review Meeting. Dr. Devarajan had stated in her fraudulent Peer Review Minutes regarding Patient # 13 as follows:

"Chest X-ray was obtained at 23.35 (11.35pm) the Pediatric hospitalist noted a right sided pneumothorax with NO mediastinal shift" A1411, vol. 6. In contrast, the Patient Chart shows that an X-ray obtained on the patient on 05/27/2014 at 23.35 (11.35pm) indicated as follows:

> "Small right pneumothorax present. Abnormal lucency projects over the left upper mediastinum. This could be related to mediastinal shift from the right pneumothorax....
>
> **IMPRESSION** 1 Right pneumothorax, question mediastinal shift to the left."

A3971, vol. 18.

TENSION PNEUMOTHORAX is a life-threatening condition that occurs when the air that is trapped between the lungs and the chest wall is large enough to displace the structures in the mediastinum especially the heart (mediastiastinal

shift) hence compromising heart function. The only treatment is the immediate and mandatory evacuation of air by the insertion of a chest tube (or needle until doctor is ready to place the chest tube). If this is not emergently done, the patient's heart fails, leading to death. Therefore, Dr. Devarajan altered the record when she claimed that at 7.30am that morning, the patient's condition had improved significantly and that the chest tube was not warranted. To be clear, both documents (The Peer Review Committee Minutes and the Patient Chart) ought not provide contradictory information. One of them is clearly wrong, and it is the Peer Review Committee Minutes which is contrary to the Chart and Reviews carried out by the MMC's other appointed Experts.

Furthermore, Dr. Jaile Marti (OPMC Clinical Reviewer and clearly a proxy witness for the MMC) upon the review of this patient's Medical Chart, stated pertinently as follows:

> **"In most of these decisions it does not appear Dr. Offor was involved. Dr. Offor did appropriately respond when informed that child had a tension pneumothorax by placing a chest tube and evacuating chest."**

A4364, vol. 19.

Furthermore, Dr. Devarajan had falsely claimed in the contrived Peer Review Committee Minutes that the "chest tube was not warranted in this infant and standard of care was not met" (A1412, vol. 6) in her treatment of Patient No. 13.

Regarding Patient No. 12, according to Dr. Martii (OPMC Reviewer): "Dr. Offor was one of many physicians caring for this infant. In focusing on Dr. Offor's specific encounters except for minor issues there were no severe deviations from accepted minimal standards of medical care. Overall Dr. Offor responded appropriately to changes in clinical status and requested appropriate consults." A4369, vol. 19.

In contrast, the fraudulent Peer Review Committee determined that the standard of care was "NOT MET in this case" A1407, vol. 6.

To further buttress the fraudulent nature of this document, this alleged meeting minutes are contradictory to the patient's charts, other outside reviews (A3956 to A3958, vol. 18 paras 28-32).

(iv)    **PERFORMANCE EVALUATIONS ON DR. OFFOR BY HER SUPERVISOR**, which Evaluations showed Dr. Offor's Performance Standard exceeding in all areas of clinical and patient care. However, Dr. Devarajan for purposes of this litigation altered these Evaluations by in some cases changing the scale of Dr. Offor's Performance Standard and in other cases inscribing negative remarks on an otherwise glowing Performance Evaluation. (A1494, 1502 and A1516, vol. 7).

The response of MMC & CO to these allegations was at first an arrogant dismissal by their Counsel, **Tony Dulgerian Esq, who retorted that "even if the**

**Defendants had forged or altered documents, what is the Plaintiff going to do about it?"** Implying that with Offor's lowly status vis a vis MMC & CO, there was nothing she could do about the forgery of the Documents by MMC &CO and with the District Court mute, the forgery continued unabated. A3460, vol. 15.

In their formal response to this Motion for Sanctions however, Dr. Devarajan and Ms. Povinelli both admitted under the penalty of perjury that the dates on Exhibits were wrong and incorrect and should not have been so produced but that the errors were "mistakes" and not "fraud" See Declarations of Ms. Povinelli and Dr. Devarajan in opposition to Offor's Motion for Sanctions **"I agree with Dr. Offor that we would not have held a meeting with a human resources representative on a Sunday, as a result, the reference to the January 20, 2008 date in the Memorandum is an unintentional mistake that I made at the time when drafting the Memorandum."** (A1418, para 8, A1420 para 14, A1422 para 20, vol. 7).

Povinelli avers **"I do not have any personal knowledge of whether a meeting between Dr. Devarajan and Dr. Offor occurred on January 20, 2008 and my entry in the timeline is based entirely upon Dr. Devarajan's Memorandum"** (A1775 at para 14, A1776, paras 16-17, vol. 8).

## DECISION

**7. THE OCTOBER 5TH, 2020 ORDER OF THE HONORABLE JUDGE SANDRA FEUERSTEIN GRANTING OFFOR'S MOTION FOR RECONSIDERATION BUT REFUSING TO REVERSE THE ORDER TERMINATING OFFOR'S FULLY BRIEFED MOTION FOR SANCTIONS DATED 12/05/2019. (SPA -35)**

As discussed above, the District Court refused to reverse its Order

terminating Offor's fully briefed Motion for Sanctions dated 12/05/2019, which

was predicated on forged and fabricated documents submitted to the Court by

MMC & CO.  SPA 35.

**8. THE 12/15/2020 ORDER OF THE HONORABLE JUDGE SANDRA FEUERSTEIN DISMISSING OFFOR'S MOTIONS TO STRIKE (OFFOR'S MOTIONS 258, 261**) (SPA-40)

ISSUE

A. WHETHER THE DISTRICT COURT ERRED IN LAW WHEN IT DENIED OFFOR'S MOTIONS TO STRIKE AND ADMITTED FOR THE PURPOSE OF THE SUMMARY JUDGMENT MOTION, THE INADMISSIBLE WRITTEN REPORTS OF MMCS' EXPERTS.

## STANDARD OF REVIEW

The Second Circuit reviews de novo legal conclusions, including its

interpretation of Federal Statutes and determinations regarding their

constitutionality. United States v. Weingarten, 632 F.3d 60, 63 (2d Cir. 2011)

**DISCUSSION**

MMC submitted several documents purporting to be Expert Reports,

(a)**Exhibits AA, AAA, BB, Y and VV** all purport to be Expert Reports. Most of

them are unsigned, undated, and do not provide sufficient information regarding

the background of the author (CV or Resume) including the basis of their

knowledge or materials referred to in arriving at the scientific or clinical

conclusions. A1840, A1847, A1867, vol. 8 and A2760, A2738, vol. 12. In **Exhibit**

**Y**, A2760, vol. 12. Dr. John Reilly attempts to memorialize a purported Oral

Report from an Expert telephonically. **Exhibit AA** A1840, vol. 8, was the report

contained in an email purported to have been sent by Dr. Schanler from a false

email address. rschanle@nshs.edu

Dr. Schanler's email address is schanler@nshs.edu (A4994-A5014, vol. 22)

and was in the signature block of the email. The document contained several font

types and was neither signed nor dated. **Exhibit AAA –A1847, vol. 8** Unclear who

really wrote this document, contained Sondra Stoss RN's name on the header but

was signed by Jaile-Marti MD. The qualifications/Resume of these Experts were

not included in the Report. A1847, vol. 8. **Exhibit BB**, (A1867, vol. 8) was written

by Dr. Devarajan's childhood friend, Dr. Shanthy Sridhar, MD, who reportedly

grew up with her in the same village in India. The Resume/CV of the Expert was

not included neither was the basis of the Expert's knowledge. Most importantly, the Patient who was the subject of the alleged report was unidentified.

**(b)Exhibit QQ**, (A2707, vol. 12) allegedly memorializes a meeting that Dr. Reilly (fourth Defendant/Appellee) held with Offor, with one Ira Roeper in attendance. None of them took notes, neither did anyone at the meeting record same. The transcriber or recorder of the alleged minutes is unnamed. To be admissible either at trial or on Summary Judgment, an expert report must satisfy the requirements of Rule 26(a)(2)(B), and the opinions and conclusions contained in the report must be admissible under Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert testimony.

**(c)Exhibits HH, JJ, NN, X, and EE**; These were fabricated "Counselling documents" (created solely for the purpose of the litigation and after the fact. A2573, A2627, vol. 11, A2693, A2756, vol. 12, A2460, vol. 11. MMC has Counselling forms which provide for the signatures of the Counselor and Counselee after the Counseling session. See sample MMC Counseling form, A3998, vol. 18. MMC rules dictate that Employee must sign completed Evaluation form. See Handbook at A3188, vol. 14. Failure of MMC to comply with their own policies is a huge pointer to the fabrication of these documents. In addition, the District Court refused to strike out MMC's Exhibit II, PP, AA, SS and Z, forged

57

documents discussed on above, and relied extensively on these documents in its

decision. The District Court should have struck out these documents

DECISION

9.  THE JUNE 25TH, 2016 ORDER OF THE HONORABLE JUDGE
    SPATT GRANTING MMC'S SANCTIONS MOTION AGAINST
    OFFOR AND HER COUNSEL, IKE AGWUEGBO. AND THE
    NOVEMBER 20TH, 2018 ORDER OF THE HONORABLE JUDGE
    SPATT LEVYING SANCTIONS IN THE SUM OF $25,622.50
    AGAINST OFFOR COUNSEL, IKE AGWUEGBO- SPA-1 and
    SPA-11

Whether the District Court Erred in its decision to grant Sanctions Motion

against Offor and her Attorney, then levied Sanction against the Attorney

**STANDARD OF REVIEW**

Abuse of Discretion

**DISCUSSION**

MMC & CO misled the Court when they represented to the Court that

Offor's Counsel had filed papers on the ECF without redacting hundreds of Patient

Personal Information. Based on that misrepresentation, the District Court granted

MMC's Sanction's Motion against Offor and her Counsel, Ike Agwuegbo Esq,

subsequently levying Sanctions against Ike Agwuegbo Esq in the sum of

$25,622.50. Offor's Attorney has thus till date been making monthly payments of

$500, to satisfy this levy of Sanctions. See Offor's Complaint and its Exhibits at

A3081 to 3093. Clearly, the numerous Patient Personal Information were all

redacted enough to make it impossible to identify the Patient. This Court has the power to reverse a decision that was reached in error by the District Court. Caselaw.

## 10. **OFFOR'S LOSSES**

A summary of Offor's losses can be found in her damages Expert Report at A4867, vol. 22.

## VI. **CONCLUSION**

Based on the foregoing, Offor implores this Court to reverse all the decisions of the District Court and grant Offor's Summary Judgment with punitive and exemplary damages, Crain v. Schlumberger Technology, 187 F. Supp. 3d 732, grant all Offor's Motions for Sanctions with punitive and exemplary damages, grant her Motion for third Party Subpoena, and reverse the Order of Sanctions against Offor's Attorney, Ike Agwuegbo Esq.

Dated this 18th day of November 2021.

/s/ Ike Agwuwgbo
Ike Agwuegbo Esq
IKE AGWUEGBO & CO P.C
15 Ocean Avenue, Suite 2C
Brooklyn, NY 11225
(646) 328-1960

*Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE UNDER RULE 32.1(a)</u>

1.  This Brief complies with the type-volume requirement of Federal Rules of
    Appellate Procedure 32(a) (7) because the principal part of this Brief
    contains 12,957 words, excluding the parts of the Brief exempted by Federal
    Rules of Appellate Procedure 32(a)(7) (B)(iii); and

2.  This Brief complies with the typeface requirements of the Federal Rules of
    Appellate Procedure 32(a)(5) and the type style requirements of Federal
    Rules of Appellate Procedure 32 (a)(6) because this Brief has been prepared
    in a proportionally spaced typeface using Microsoft word in 14 point Times
    New Roman Font.

/s/ Ike Agwuwgbo

Ike Agwuegbo Esq

IKE AGWUEGBO & CO P.C

15 Ocean Avenue, Suite 2C

Brooklyn, NY 11225

(646) 328-1960

*Counsel for Appellant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby Certify that on November 18, 2021 an electronic copy of the

foregoing Appellant's Brief was filed with the Clerk of Court using this Court's

CM/ECF system.

I further Certify that the foregoing Brief was served electronically via this

Court's CM/ECF system by Notice of Docket Activity, and Electronic Mail to:

Tara E. Daub
NIXON PEABODY LLP
50 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 832-7613

Aaron F. Nadich
NIXON PEABODY LLP
1 Citizens Plaza, Suite 500
Providence, R.I.  02903
(401) 454-1000

*Counsels for Appellees*

/s/ Ike Agwuwgbo
Ike Agwuegbo Esq
IKE AGWUEGBO & CO P.C
15 Ocean Avenue, Suite 2C
Brooklyn, NY 11225
(646) 328-1960

*Counsel for Appellant*

In The

# United States Court of Appeals
### For The Second Circuit

## DR. CHINWE OFFOR,

*Plaintiff – Appellant*,

**v.**

## MERCY MEDICAL CENTER, ROCKVILLE CENTRE DIVISION, CATHOLIC HEALTH SERVICES OF LONG ISLAND, DR. SWARNA DEVARAJAN, DR. JOHN REILLY,

*Defendants – Appellees.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK (CENTRAL ISLIP)

———————

## SPECIAL APPENDIX
## VOLUME 1 OF 1 (Pages 1 – 109)

———————

**Ike Agwuegbo**
**IKE AGWUEGBO & CO P.C.**
**575 Lexington Avenue, 4th Floor**
**New York, New York 10022**
**(646) 328-1960**

**Tara E. Daub**
**NIXON PEABODY LLP**
**50 Jericho Quadrangle,**
  **Suite 300**
**Jericho, New York 11753**
**(516) 832-7613**

**Aaron F. Nadich**
**NIXON PEABODY LLP**
**1 Citizens Plaza, Suite 500**
**Providence, Rhode Island**
  **02903**
**(401) 454-1000**

*Counsel for Appellant*

*Counsel for Appellees*

*Counsel for Appellees*

# SPECIAL APPENDIX
## TABLE OF CONTENTS

**Page**

A.  Order of The Honorable Arthur D. Spatt
    Re: Granting Defendants' Sanctions Motion
    Against Plaintiff and her Counsel, Ike Agwuegbo
        dated June 25, 2016 ............................................................SPA-1

B.  Order of The Honorable Arthur D. Spatt
    Re: Levying Sanctions Against Plaintiff Counsel,
    Ike Agwuegbo
        dated November 20, 2018 .............................................. SPA-11

C.  Order of The Honorable Arthur D. Spatt
    Re: Denying Plaintiff's Motion for Sanctions
        dated October 4, 2019 ....................................................SPA-14

D.  Order of The Honorable Sandra J. Feuerstein
    Re: Overruling Plaintiff's Objections to the June 11, 2020
    Order of The Honorable Steven I. Locke
        dated August 19, 2020 ....................................................SPA-19

E.  Memorandum Order of Decision and Order of
    The Honorable Sandra J. Feuerstein
    Re: Overruling Plaintiff's Objections to the June 11, 2020
    Order of The Honorable Steven I. Locke
        dated August 19, 2020 ....................................................SPA-26

F.  Order of The Honorable Sandra J. Feuerstein
    Re: Terminating Plaintiff's Fully Briefed Motion
    For Sanctions
        dated September 14, 2020 ..............................................SPA-33

G.  Order of The Honorable Sandra J. Feuerstein
    Re: Granting Plaintiff's Motion for Reconsideration
    and Denying to Reverse Order Terminating Plaintiff's
    Fully Briefed Motion for Sanctions
        dated October 5, 2020 ....................................................SPA-35

**H.**     **Order of The Honorable Sandra J. Feuerstein**
        **Re: Dismissing Plaintiff's Motions for Sanctions**
           **dated December 15, 2020**................................................**SPA-40**

**I.**     **Report and Recommendations of**
        **The Honorable Steven I. Locke**
        **Re: Denying the Plaintiff's Motion for Summary Judgment**
        **And Granting Defendants' Cross Motion for Summary**
        **Judgment and Denying Plaintiff's Motions to Strike**
           **dated May 11, 2021**.........................................................**SPA-46**

**J.**     **Order Adopting Report and Recommendation of**
        **The Honorable Denis R. Hurley**
        **Re: Overruling Plaintiff's Objections and Adopting**
        **Judge Locke's R&R in Full**
           **dated September 1, 2021**.................................................**SPA-74**

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

DR. CHINWE OFFOR,

                            Plaintiff,

         -against-

MERCY MEDICAL CENTER, ROCKVILLE CENTRE
DIVISION, CATHOLIC HEALTH SERVICES OF LONG
ISLAND, DR. SWARNA DEVARAJAN, and
DR. JOHN P REILLY,

                        Defendants.

-------------------------------------------------------------------X

**MEMORANDUM OF
DECISION & ORDER**
15-cv-2219 (ADS)(SIL)

**Ike Agwuegbo, Esq.**
*Attorney for the Plaintiff*
575 Lexington Avenue, 4th Floor
New York, NY 10022

**Nixon Peabody LLP**
*Attorneys for the Defendants*
50 Jericho Quadrangle, Suite 300
Jericho, NY 11753
      By: Christopher G. Gegwich, Esq.
        Tony Garbis Dulgerian, Esq., Of Counsel

**SPATT, District Judge**.

On April 20, 2015, the Plaintiff Dr. Chinwe Offor (the "Plaintiff") commenced this action

against the Mercy Medical Center ("MMC"), Catholic Health Services of Long Island, Inc.

("CHSLI"), Dr. Swarna Devarajan, and Dr. John P. Reilly (collectively, the "Defendants"). She

asserted the following causes of action: (i) national origin and race discrimination pursuant to 42

U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

("Title VII"), and the New York State Human Rights Law, N.Y. Exec. Law § 296(1) ("NYSHRL");

(ii) retaliation under Title VII; (iii) violation of the Family and Medical Leave Act of 1993, 29 U.S.C.

§ 2601 *et seq.* ("FMLA"); and (iv) "libel, slander, and intentional infliction of emotional distress."

On May 15, 2015, the Plaintiff filed an amended complaint as a matter of course pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P." or "Rule") 15(a)(1)(A).

On March 10, 2016, the Court issued a decision and order (the "March 10, 2016 Order") (i) granting the Defendants' motion to dismiss the amended complaint; (ii) denying the Plaintiff's motion to file a second amended complaint; and (iii) granting the Defendants' motion to seal certain documents attached to the original and first amended complaint. In addition, the Court reserved decision on the parties' cross-motions for sanctions and stayed the entry of judgment pending its ruling on the cross-motions.

Presently before the Court is a motion by the Defendants pursuant to Fed. R. Civ. P. 11(b)(1) and (b)(2), 28 U.S.C. § 1927, and the Court's inherent powers for sanctions against the Plaintiff and Ike Agwuegbo, Esq. ("Agwuegbo"), the Plaintiff's attorney, for costs and attorneys' fees incurred by the Defendants in addressing the Plaintiff's repeated failure to properly redact confidential information in their filings. Also before the Court is a cross-motion for sanctions against the Defendants and Nixon Peabody LLP ("Nixon Peabody"), the law firm representing the Defendants, to pay the costs and attorneys' fees incurred by the Plaintiff in filing suit against the Equal Opportunity Employment Commission ("EEOC") in a separate and related action.

For the reasons set forth below, the Court grants the Defendants' motions for sanctions against the Plaintiff and Agwuegbo and denies the Plaintiff's motions for sanctions against the Defendants and Nixon Peabody.

## I. DISCUSSION

The Court refers to the March 10, 2016 Order for an exhaustive account of the facts and procedural history of this case.

### A. The Legal Standards

Under the so-called "American Rule," "'[i]n the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.'" Oliveri v. Thompson, 803

F.2d 1265, 1271 (2d Cir. 1986) (quoting Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247, 95 S. Ct. 1612, 1616, 44 L.Ed.2d 141 (1975)).

However, "[u]nder the inherent power of the court to supervise and control its own proceedings, an exception to the American Rule has evolved which permits the court to award a reasonable attorneys' fee to the prevailing party when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Id. (internal quotation marks and citations omitted). "Awards under the inherent power exception to the American Rule may be made against the losing party or against the attorney for the losing party." Id.

"In order to impose sanctions pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay." Enmon v. Prospect Capital Corp., 675 F.3d 138, 143 (2d Cir. 2012). "A claim is colorable when it reasonably might be successful, while a claim lacks a colorable basis when it is utterly devoid of a legal or factual basis." Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 337 (2d Cir. 1999). "'[B]ad faith may be inferred 'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" Enmon, 675 F.3d at 143 (quoting Schlaifer Nance, 194 F.3d at 336).

28 U.S.C. § 1927 ("Section 1927") provides another avenue for sanctions against attorneys. It states, "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

In practice, "'the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the

court's inherent power may be made against an attorney, a party, or both.'" <u>Enmon</u>, 675 F.3d at 144

(quoting <u>Oliveri</u>, 803 F.2d at 1273).

> Rule 11 provides a third avenue for sanctions. As relevant here, Rule 11(b) states,

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . . (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and] (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

Fed. R. Civ. P. 11(b)(1), (b)(2). Rule 11(c)(1), in turn, provides, "If, after notice and a reasonable

opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose

an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for

the violation." A sanction under Rule 11 may include "an order directing payment to the movant of

part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."

Fed. R. Civ. P. 11(c)(4). However, a court may not impose a monetary sanction on a represented party

for violating Rule 11(b)(2). <u>Id.</u> at 11(c)(5).

Unlike sanctions under Section 1927 and the Court's inherent power, sanctions under Rule 11

do not require a finding of bad faith. Rather, "the standard for triggering sanctions under Rule 11 is

'objective unreasonableness[.]'" <u>Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce</u>

<u>Factory, Ltd.</u>, 682 F.3d 170, 178 (2d Cir. 2012) (quoting <u>Margo v. Weiss</u>, 213 F.3d 55, 65 (2d Cir.

2000)). With respect to legal contentions, "[t]he operative question is whether the argument is

frivolous, i.e., the legal position has 'no chance of success,' and there is 'no reasonable argument to

extend, modify or reverse the law as it stands.'" <u>Fishoff v. Coty Inc.</u>, 634 F.3d 647, 654 (2d Cir. 2011)

(quoting <u>Morley v. Ciba–Geigy Corp.</u>, 66 F.3d 21, 25 (2d Cir. 1995)).

**B. As to the Defendants' Motion for Sanctions**

Based on the facts set forth in the March 10, 2016 Order, there is more than ample basis for the

Court to conclude that (1) the Plaintiff and Agwuegbo lacked a colorable basis to file unredacted

confidential information; and (2) the Plaintiff and Agwuegbo exhibited bad faith in continuing to file

documents on the public docket with confidential information despite being warned by the Defendants

of their obligation to redact such information.

> As the Court made clear in the March 10, 2016 Order:

> [The Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. 104–191 (1996)] and the accompanying regulations promulgated by the Department of Health Services ("DOH") keep from disclosure 'protected health information' related to the 'treatment, payment, or healthcare operation.' 45 C.F.R. § 164.502(a). The term 'health information' covers, among other things, 'past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual.' Id. at § 160.103. The DOH regulations permit health care providers, such as the Plaintiff, to disclose protected health information in the context of litigation proceedings under limited circumstances when, as relevant here, he or she "excludes" a patient's identifiable information, such as: (i) names; (ii) postal address information; (iii) telephone numbers; (iv) medical record numbers; (v) account numbers; and (v) "other unique identifying number, characteristic, or code, except as permitted by paragraph (c) of this section[.]"

(March 10, 2016 Order at 42–43.)

> In addition, Fed. R. Civ. P. 5.2 requires a party, subject to certain exceptions not relevant here, to redact an individual's (i) "taxpayer-identification number" by including only "the last four digits" of the "taxpayer identification number"; (ii) "birth date" by including only the "year of the individual's birth"; and (iii) the "name of an individual known to be a minor" by substituting "the minor's initials."

> Further, a 2004 administrative order issued by then Chief Judge of this District Edward R. Korman requires attorneys to partially redact from "all pleadings, filed with the court, including exhibits thereto" social security numbers, names of minor children, dates of birth, and financial account numbers (the "2004-09 Administrative Order"). See EDNY Administrative Order 2004-09, *available at https://img.nyed.uscourts.gov/files/general-ordes/adminorder04-09.pdf* . The Order further states that counsel is required to "exercise caution when filing documents that contain the following: 1) Personal identifying number, such as driver's license number; 2) medical records, treatment and diagnosis; 3) employment history; 4) individual financial information; and 5) proprietary or trade secret information."

To access the Court's CM/ECF filing system, all counsel, including Agwuegbo, are required to check a box indicating that they understand and acknowledge their redaction responsibilities under Rule 5.2 and the 2004-09 administrative order. Thus, Agwuegbo was on notice of his obligations to redact personal identifying information from the moment that he opened this case.

Despite being on notice of the redaction obligations, on April 20, 2015, and May 27, 2015, respectively, the Plaintiff filed a complaint and an amended complaint with hundreds of pages of medical records of the Plaintiff's patients, most of whom were infants, with "unredacted patient names, patient telephone numbers and addresses, medical record numbers, treatment dates, and details concerning patients' medical care." (Mar. 10, 2016 Order at 8–9.)

As the Defendants correctly point out, courts have sanctioned lawyers and their clients for failing to properly redact individuals' personal identifying information because of the potential serious consequences to those individuals, such as identity theft, which can result from the public disclosure of such information. See, e.g., Reed v. AMCO Ins. Co., No. 3:09-CV-0328-LRH-RAM, 2012 WL 1964094, at *1 (D. Nev. May 31, 2012) (awarding $4,560.50 in attorneys' fees to the plaintiff because the defendant filed "several documents with improper confidential information"); Weakley v. Redline Recovery Servs., LLC, No. 09-CV-1423 (BEN) (WMC), , at *2 (S.D. Cal. Apr. 20, 2011) (imposing a $900 sanction on defendant's counsel under the court's inherent power because counsel publicly filed documents containing the plaintiff's social security number, without redaction, in violation of Rule 5.2); Engeseth v. Cty. of Isanti, Minn., 665 F. Supp. 2d 1047, 1048 (D. Minn. 2009) (imposing a $5,000 sanction on plaintiff's counsel for filing a sworn affidavit that included full social security numbers and dates of birth for 179 individuals).

Thus, the fact that Agwuegbo attached to the Plaintiffs' pleadings the unredacted medical records of infants is itself grounds for a sanction.

The Subsequent conduct of the Plaintiff and Agwuegbo in refusing to redact this information or seal the documents even after being notified by Defendants' counsel of their obligations to do so

provides even further evidence of bad faith. Specifically, on May 27, 2015, Defendants' counsel sent a letter to Agwuegbo notifying him of the presence of information in the pleadings protected by HIPAA and Rule 5.2 and enclosing a proposed redacted version of the complaint and exhibits. (See Gegwich Decl., Dkt. No. 33, Ex. B.) Agwuegbo refused to meet and confer to discuss the issue and instead urged the Defendants to file a motion before the Court. (See id.)

On June 16, 2015, the Defendants, having exhausted all of their options, moved to seal the complaint, the amended complaint, and the documents attached thereto. (See Dkt. No. 16.)

In response, on June 28, 2015, the Plaintiff filed a motion for leave to file a second amended complaint which included a copy of her rebuttal statement submitted to the EEOC. Attached to the EEOC statement are exhibits which contain infant patient names, full medical record numbers, partial dates of birth of infant patients, MMC's tax identification numbers, and other personal identification numbers. (See Dkt. No. 22–8 – 22–15.) Such information is clearly protected from disclosure under HIPAA and Rule 5.2(a). The Plaintiff then filed some of the same documents as exhibits to her opposition to the Defendants' motion to seal, and in opposition to the Defendants' motion to dismiss. (See Dkt. Nos. 23–7 — 23-14 & 25-7 – 25-14.) Thus, instead of alleviating the problem, the Plaintiff's actions compounded it.

In opposition to the Defendants' motion to seal, the Plaintiff and Agwuegbo offered no coherent legal or factual basis for continually failing to redact this patient information and entirely failed to address HIPAA, Rule 5.2, and the great weight of authority offered by the Defendants which clearly showed that this information should have been redacted. Thus, there was no "colorable basis" for their opposition to the Defendants' motion to seal or their decision to include unredacted personal identifying information in subsequent publicly available filings.

In addition, the Court finds that Agwuegbo's failure to meet and confer with the Defendants and then his decision to continue to publicly file documents containing confidential and unredacted medical information of infant children goes far beyond the pale of reasonable conduct so as to lead to

the conclusion that Agwuegbo and the Plaintiff were undertaking these actions for some improper purpose. In sum, the Court finds that the conduct of the Plaintiff and Agwuegbo with regard to personal confidential information of MMC and MMC's patients provides clear evidence of bad faith. Enmon, 675 F.3d at 143 ("[B]ad faith may be inferred 'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'") (quoting Schlaifer Nance, 194 F.3d at 336). Accordingly, the Court grants the Defendants' motion for sanctions against the Plaintiff and Agwuegbo pursuant to its inherent discretion, Section 1927, and Rule 11.

Given the unnecessary motion practice and, more importantly, the potential serious consequences to unsuspecting families which resulted from the conduct of the Plaintiff and Agwuegbo, the Court finds that a sanction in the amount of reasonable attorneys' fees and costs expended by the Defendants in connection with the filing of the motion to seal and the instant motion is eminently reasonable and necessary to deter further violations of Rule 5.2 and HIPAA. As such, the Court grants Nixon Peabody leave to file a supplemental declaration containing billing records and a summary of the fees and costs that it charged to the Defendants in connection with these motions. After the filing of these records, the Court will determine the reasonable amount of attorneys' fees and the total amount of the sanction to be imposed upon the Plaintiff and Agwuegbo.

## C. As to the Plaintiff's Cross-Motion for Sanctions

The Plaintiff cross-moves for sanctions against the Defendants and Nixon Peabody because she apparently contends that the EEOC is in collusion with Nixon Peabody to prevent the Plaintiff from obtaining discovery related to her discrimination claims. (See the Pl.'s Mem. of Law at 1–2.)

The Court finds the Plaintiff's contentions in this regard to be wholly unsupported, speculative, and without any legal basis. Thus, the Court denies the Plaintiff's cross motion for sanctions.

## II. CONCLUSION

For the foregoing reasons, the Defendants' motion for sanctions against the Plaintiff and Agwuegbo is granted; and the Plaintiff's cross-motion for sanctions is denied. The Defendants are directed to file a supplemental declaration within thirty days of the date of this Order in support of their request for attorneys' fees. The Plaintiff may file a rebuttal within 14 days of being served with the Defendants' supplemental declaration.

As the Court has now ruled on the cross-motions for sanctions, there is no need to continue to stay the entry of judgment in this case. Accordingly, the Clerk of the Court is directed to enter judgment for the Defendants consistent with the March 10, 2016 Order.

**SO ORDERED.**

Dated: Central Islip, New York
June 25, 2016

*/s/ Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge

9

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
DR. CHINWE OFFOR,

|  |  |
|---|---|
| Plaintiff, | **MEMORANDUM OF** |
|  | **DECISION & ORDER** |
| -against- | 2:15-cv-2219 (ADS)(SIL) |

MERCY MEDICAL CENTER, ROCKVILLE
CENTRE DIVISION, CATHOLIC HEALTH
SERVICES OF LONG ISLAND, DR.
SWARNA DEVARAJAN, and DR. JOHN P
REILLY,

Defendants.

-------------------------------------------------------------X

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E D N.Y.

★ NOV 2 0 2018 ★

LONG ISLAND OFFICE

**APPEARANCES:**

**Ike Agwuegbo, Esq.**
*Attorney for the Plaintiff*
575 Lexington Avenue, 4th Floor
New York, NY 10022

**Nixon Peabody LLP**
*Attorneys for the Defendants*
50 Jericho Quadrangle, Suite 300
Jericho, NY 11753
      By: Christopher G. Gegwich, Esq.
           Tony Garbis Dulgerian, Esq., Of Counsel

**SPATT, District Judge:**

      On June 25, 2016, the Court granted the Defendants' motion for sanctions against plaintiff Dr.

Chinwe Offor (the "Plaintiff") and her counsel, Ike Agwuegbo, Esq. ("Agwuegbo") for reasonable

attorney's fees incurred in connection with the filing of a motion to seal and a related sanctions motion.

ECF 47.

1

On August 29, 2018, the Court reviewed a fee application by the Defendants for $25,622.50 in attorney's fees and costs and found the amount to be reasonable. ECF 98. The Court reserved judgment pending a determination on the financial hardship to Agwuegbo. Pursuant to this finding, the Court instructed Agwuegbo to submit appropriate financial information and proof to the Court regarding his alleged inability to pay the sanctions.

On September 19, 2018, Agwuegbo submitted an affidavit regarding the Court's August 29, 2018 order. ECF 100. The affidavit put forward none of the requested financial information regarding Agwuegbo's ability to pay the sanctions. Rather, the affidavit repeated Agwuegbo's disagreement with the initial order awarding sanctions.

Accordingly, the Court the Court finds that Agwuegbo made no showing of financial hardship justifying reduction in the amount of sanctions. Agwuegbo is sanctioned in the amount of $25,622.50. Agwuegbo is directed to make this payment to the Defendants on or before December 21, 2018.

Dated: Central Islip, New York
       November 20, 2018

                                        /s/ Arthur D. Spatt

                                        ARTHUR D. SPATT

                                   United States District Judge

2

# EXHIBIT C

FILED
CLERK

4:57 pm, Oct 04, 2019

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
DR. CHINWE OFFOR,

|                          |                          |
|--------------------------|--------------------------|
| Plaintiff,               | **MEMORANDUM OF** |
|                          | **DECISION & ORDER** |
| -against-                | 2:15-cv-2219 (ADS)(SIL) |

MERCY MEDICAL CENTER, ROCKVILLE
CENTRE DIVISION, CATHOLIC HEALTH
SERVICES OF LONG ISLAND, DR.
SWARNA DEVARAJAN, and DR. JOHN P
REILLY,

                                  Defendants.

--------------------------------------------------------X

**APPEARANCES:**

**Ike Agwuegbo, Esq.**
*Attorney for the Plaintiff*
575 Lexington Avenue, 4th Floor
New York, NY 10022

**Nixon Peabody LLP**
*Attorneys for the Defendants*
50 Jericho Quadrangle, Suite 300
Jericho, NY 11753
       By:    Christopher G. Gegwich, Esq.
                Justin Anthony Guilfoyle, Esq.,

**SPATT, District Judge**:

      Presently before the Court is a motion by the Plaintiff, pursuant to Rule 37(b) of the Federal

Rules of Civil Procedure, seeking the imposition of sanctions against the Defendants for spoliation.

The Court denies the motion, because the Plaintiff failed to establish the necessary predicate for a

spoliation sanction, *i.e.*, the destruction or alteration of evidence.

      "Spoliation of evidence occurs when a party or an agent of such party destroys or

significantly alters evidence, or fails to properly preserve it for another's use as evidence in a

pending or reasonabl[y] foreseeable litigation." *Alaimo v. Trans World Airlines, Inc.*, No. 00-cv-3906, 2005 WL 267558, at *3 (S.D.N.Y. Feb. 3, 2005) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir.1999)). Therefore, the requirement that the sought-after evidence exist and actually be destroyed almost goes without saying; there can by definition be no spoliation of evidence if no such evidence existed in the first place. *See Stephen v. Hanley*, No. 03-cv-6226, 2009 WL 1437613, at *2 (E.D.N.Y. May 20, 2009) ("In addition to the foregoing three requirements for spoliation, the court states the obvious: the evidence must have existed."); *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 441 (S.D.N.Y. 2010) ("[F]or sanctions to be appropriate, it is a necessary, but insufficient, condition that the sought-after evidence actually existed and was destroyed.").

Here, there is no indication that the Defendant spoliated evidence whatsoever. According to the Plaintiff, she and two other treating nurses kept certain detailed treatment notes regarding a patient at Mercy Medical Center, which the Defendants deleted when they produced the patient's medical records to the Office of Professional Medical Conduct of the New York State Department of Health. However, the Plaintiff neither identifies documents corroborating the existence of those treatment notes nor provides credible, sworn testimony to that effect. Instead, she bases her allegation entirely on the affidavit of her lawyer, Ike Agwuegbo ("Agwuegbo"), and an e-mail from Dr. Devarajan mentioning an "investigation" of an intravenous bag containing medication being administered to that patient.

This "evidence" could not be less compelling. First, Agwuegbo has no personal knowledge of the matter, meaning his testimony would at most amount to a recollection of the Plaintiff's, not his, memory regarding the treatment notes. In other words, it is inadmissible hearsay. *See DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012). Second, Dr. Devarajan's passing reference to an

"investigation" into the intravenous bag by no means necessitates that the Plaintiff or the two other nurses wrote the supposed notes, let alone that the Defendants deleted those notes. The party seeking a spoliation sanction carries a substantial burden. The evidence cited, which is little more than baseless speculation, fails to come even remotely close to meeting that burden. *See Mohammed v. Delta Airlines, Inc.*, No. 08-cv-1405, 2011 WL 5554269, at *3 (E.D.N.Y. Nov. 15, 2011) ("[P]laintiff here submits no evidence that the cameras in the airport terminal recorded her accident, she merely points to the fact that cameras were present in the vicinity. Plaintiff therefore fails to establish that the evidence she accuses Delta of destroying or concealing has ever existed."); *Stephen*, 2009 WL 1437613, at *2 ("Plaintiffs' motion for spoliation pertaining to radio communications is denied because the plaintiffs have not established that radio communication and related documents pertaining to the July 2002 incident ever existed, let alone were destroyed.").

More importantly, the uncontroverted evidence overwhelmingly establishes that the treatment notes the Plaintiff seeks never existed. The Defendants furnished affidavits from the nurses identified in the Plaintiff's motion, who confirmed that they have no recollection of entering the notes. Moreover, the Defendants provided a detailed accounting of its electronic medical record system, explaining that any treatment notes entered by the Plaintiff would have been stored permanently (along with any deletions or alterations to those notes). An audit of those records revealed no entries, deletions, or alterations of the sought-after notes. Unsurprisingly, the Plaintiff failed to respond to either pieces of evidence in her reply. Although it is normally difficult to prove a negative, this is not one of those cases. It is abundantly clear that the Defendants neither deleted nor altered evidence relevant to the Plaintiff's claims. *See Whalen v. CSX Transportation, Inc.*, No. 13-cv-3784, 2016 WL 4681217, at *3 (S.D.N.Y. Sept. 7, 2016) ("CSX has presented

uncontroverted evidence that the concrete floor, with the crack in it, still exists beneath the rubber tiles and that the crack can be seen by simply lifting the tiles. Because the concrete floor has not been altered, destroyed or rendered inaccessible, there is no basis for spoliation sanctions.").

The Court warns Agwuegbo to exercise significantly more discretion regarding discovery motion practice. Since May, he has filed three consecutive motions that are totally meritless, if not frivolous. Each motion utterly failed to articulate a cogent basis for granting the relief sought, consisting entirely of his poorly organized conclusory assertions and baseless allegations. The Court reminds Agwuegbo that by filing a motion he is certifying that there are reasonable grounds supporting that motion. Rule 11(b). No definition of reasonable includes the sort of motions filed over the past few months, which have required the Court to needlessly expend resources on trivial issues and significantly impeded the efficient administration of justice. Although the Court will not sanction him at this time, if Agwuegbo fails to adopt a different posture in the future, it will have little choice.

Therefore, the Court denies the Plaintiff's motion for sanctions in its entirety.


**SO ORDERED**.

 Dated: Central Islip, New York
        October 4, 2019


                              ____/s/ Arthur D. Spatt____
                                ARTHUR D. SPATT
                              United States District Judge

# EXHIBIT D

Case 21-2115, Document 42, 11/18/2021, 3214688, Page96 of 185

Case 2:15-cv-02219-DRH-SIL Document 306 Filed 05/18/21 Page 1 of 7 PageID #: 10919
Case 2:15-cv-02219-ADS-SIL Document 227 Filed 06/11/20 Page 1 of 7 PageID #: 10763

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DR. CHINWE OFFOR,

                            Plaintiff,           **ORDER**

    -against-                        15-cv-2219(ADS)(SIL)

MERCY MEDICAL CENTER,
CATHOLIC HEALTH SERVICES OF
LONG ISLAND, DR. SWARNA
SAVARAJAN and DR. JOHN P. REILLY,

                         Defendants.
------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this Family and Medical Leave Act-retaliation action are Plaintiff Dr. Chinwe Offor's ("Offor" or "Plaintiff") motion to compel the production of subpoenaed documents from non-party New York Presbyterian Hospital ("NYPH"), and related letter motion for a protective order as to any documents produced. Docket Entry ("DE") 217, 218. For reasons stated herein, both motions are denied.

## I.   Background

Plaintiff is a neonatologist. She was hired by Defendant Mercy Medical Center ("Mercy Medical" or the "Hospital") on February 1, 2000 and worked as a physician in the Neonatal Intensive Care Unit until she was terminated on August 21, 2014. *See* Complaint ("Compl.") ¶¶ 1, 15. The ultimate issue to be decided in later proceedings will be the reason for Plaintiff's discharge.

On December 30, 2019, Plaintiff served NYPH with a subpoena seeking medical records of an infant patient treated at NYPH in 2013 after the baby was

transferred out of Offor's care at Mercy Medical. *See* Non-Party Subpoena, DE [217-2]. Plaintiff seeks these records to demonstrate that insulin was not initially commenced when the infant was transferred out of her care and into the neonatal division at NYPH, and that after the insulin treatment was eventually started it was stopped two hours later. *See* Declaration of Dr. Chinwe Offor in Support of her Motion to Compel, ("Offor Decl."), DE [217-1] at ¶ 11. According to Offor the dosage is relevant because her failure to administer insulin was a reason leading to her termination from Mercy Medical. *See id*. at ¶¶ 4, 11, 13.

After certain initial correspondence between Plaintiff and NYPH concerning whether the subpoena was initially served properly, and whether providing the documents sought would violate federal privacy requirements under the Health Insurance Portability and Accountability Act ("HIPAA"), *see* DE [217-3], NYPH ultimately objected to the subpoena by letter dated May 7, 2020, arguing that the documents sought seemed to be irrelevant, and that in any event, absent an appropriate court order, their production would violate HIPAA. *See* DE [224-1].[1] The relevance objection was echoed by Defendants in their opposition, who also take the position that the documents sought are disproportional to the needs of this case. *See* DE [222].[2]

On April 27, 2020, Offor filed her motions to compel production of the subpoenaed documents and for a protective order. *See* DEs [217, 218]. Defendants

---

[1] The Court notes that Plaintiff filed the May 7, 2020 letter on NYPH's behalf.
[2] Defendants recognize that they may lack standing to object to the subpoena but suggest that the Court is nevertheless empowered to limit the scope of discovery on its own. *See* DE [222] at 1-2.

filed their letter opposition on May 4, 2020, and Offor filed her reply on May 6, 2020. *See* DEs [222, 223]. For the reasons set forth below, the motions are denied.

## II. Legal Standard

In reviewing a motion to compel, the Court must address whether the moving party has established the necessary relevance of the information sought and that it is proportionate to the needs of the case. Fed. R. Civ. P. 26(b)(1); Rule 26 Advisory Committee Notes to 2015 Amendments; *see Neogenix Oncology, Inc. v. Gordon*, No. 14-4427, 2017 WL 1207558, at *8 (E.D.N.Y. Mar. 31, 2017) (citing *Night Hawk Ltd. v. Briarpatch Ltd*., No. 03-1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003)); *Sibley v. Choice Hotels Int'l*, No. 14-634, 2015 WL 9413101, at *2 (E.D.N.Y. Dec. 22, 2015) ("[i]nformation is discoverable . . . if it is relevant to any party's claim or defense and is proportional to the needs of the case."). Rule 45 subpoenas served on non-parties are subject to the same requirements that apply to party discovery under Rule 26(b)(1). *In re Refco Sec. Litig*., 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011*); see Ford Motor Credit Co. v. Meehan*, No. 05-4807, 2008 WL 2746373, at *4 (E.D.N.Y. July 11, 2008); *During v. City Univ. of New York*, No. 05-6992, 2006 WL 2192843, at *82 (S.D.N.Y. Aug. 1, 2006). Therefore, "[t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Night Hawk Ltd..*, 2003 WL 23018833, at *8; *see also Salvatorie Studios, Int'l v. Mako's Inc*., No. 01-4430, 2001 WL 913945, at *1 (S.D.N.Y. Aug. 14, 2001).

## III. Discussion

In support of her motion to compel, Offor claims that NYPH's documents are relevant because they would fill the alleged gaps of information in the patient's medical file and provide context and clarity for Offor's treatment. Offor Decl. at ¶¶ 12, 14. The problem with this argument is that it is not directed toward evidence that may be relevant to her claims or Defendants' defenses, but rather to her repeated assertions, all of which have been previously rejected by the Court, that Defendants have altered and deleted relevant records. *See id.* at ¶¶ 8-10; Memorandum of Law in Support of Plaintiff's Motion to Compel the Director of Neonatology, Morgan Stanley Children's Hospital of New York Presbyterian, Columbia University Medical Center, New York, to Comply with the Lawfully Issued Subpoena and Produce the Documents Demanded Therein, DE [217-8], at 9; Memorandum of Decision and Order of the Court, DE [175].

Once the Court focuses its attention on the issues of relevance and proportionality, it becomes clear that the motion to compel, and the related motion for a protective order, must be denied. To establish a *prima facie* case of FMLA retaliation, Plaintiff must show that: (1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004). If Plaintiff establishes a *prima facie* case, the burden shifts to Defendants to demonstrate a legitimate nondiscriminatory reason for their actions.

*Graziado v. Culinary Institute of America*, 817 F.3d 415, 429 (2d Cir. 2016).   If Defendants satisfy this burden, Plaintiff must show that the reason proffered is pretextual.  *Id*.

Records concerning medical care of a patient after that patient left the Hospital and Dr. Offor's care, and which Plaintiff does not argue that Defendants ever saw or relied upon in making the decision to terminate her, are not relevant to her claims or Defendants' defenses under the standards set forth above.  They do not demonstrate circumstances that would create an inference of retaliatory intent, or that the reason given for her termination was a pretext for unlawful conduct.  To the extent that Plaintiff is making yet another veiled attempt to demonstrate through the subpoenaed documents that Defendants have been deleting or modifying documents to hide something from her or the Court, an argument previously rejected by the Court more than once, the subpoena is nothing more than a fishing expedition and disproportionate to the needs of this case.  Accordingly, Plaintiff's motions to compel and for a protective order, DE [217 218], are denied.

### IV.   Conclusion

For the foregoing reasons, the Plaintiff's motion to compel, DE [217], and motion for a protective order, DE [218], are denied.   The parties are directed to submit a joint status report as to what remains to be done in discovery on or before June 24, 2020.

Case 2:15-cv-02219-ADS-SIL   Document 227   Filed 06/11/20   Page 6 of 6 PageID #: 10766

**So Ordered.**

Dated:  Central Islip, New York
     June 11, 2020

         <u>s/ Steven I. Locke</u>
         STEVEN I. LOCKE
         United States Magistrate Judge

# EXHIBIT E

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
DR. CHINWE OFFOR,

|  |  |
|---|---|
| Plaintiff, | **MEMORANDUM OF** |
| | **DECISION & ORDER** |
| -against- | 2:15-cv-2219 (SJF)(SIL) |

MERCY MEDICAL CENTER, ROCKVILLE
CENTRE DIVISION; CATHOLIC HEALTH
SERVICES OF LONG ISLAND;
DR. SWARNA DEVARAJAN; and
DR. JOHN P. REILLY,

                                        Defendants.

--------------------------------------------------------X

**APPEARANCES:**

**Ike Agwuegbo, Esq.**
*Attorney for the Plaintiff*
575 Lexington Avenue, 4th Floor
New York, NY 10022

**Nixon Peabody LLP**
*Attorneys for the Defendants*
50 Jericho Quadrangle, Suite 300
Jericho, NY 11753
            By:
                  Tara L. Eyer Daub, Esq., Of Counsel,
                  Justin Anthony Guilfoyle, Esq.

**FEUERSTEIN, Senior District Judge**:

        Presently before the Court are the objections of Plaintiff, Doctor Chinwe Offor

("Plaintiff"), to the June 11, 2020 order of Magistrate Judge Steven I. Locke (hereafter, the "June

Order")(*see* ECF No. 227) denying Plaintiff's motion to compel non-party New York Presbyterian

Hospital ("NYPH") to produce subpoenaed documents (the "Compel Motion")(*see* ECF No. 217)

and her related letter motion for a protective order as to any documents produced (the "Letter Motion")(*see* ECF No. 218). (*See* ECF No. 228 (hereafter, the "Objections"); *see also* ECF No. 228-5 (hereafter, the "Support Memo".) In response, Defendants ask the Court to overrule the Objections (hereafter, the "Response")(*see* ECF No. 230). For the reasons stated herein, Plaintiff's Objections to Judge Locke's order are overruled.

The Court assumes the Parties' familiarity with the factual and procedural background of this Family and Medical Leve Act ("FMLA")-retaliation action throughout which the Parties have engaged in contentious discovery. As to the present matter, Magistrate Judge Locke has provided a thorough and accurate summary of the discovery dispute, which this Court adopts and incorporates by reference herein. (*See* June Order at 1-3 ("Background").) In sum, observing that NYPH objected to Plaintiff's subpoena on grounds of relevancy and privacy concerns (*see id.* at 2), and that Defendants echoed NYPH's relevancy objection, as well as expressed a proportionality argument (*see id.*), Magistrate Judge ruled that the medical records of the infant patient treated at NYPH in 2013 after the baby was transferred out of Offor's care at Mercy Medical Center were neither relevant nor proportional, explaining:

> [r]ecords concerning medical care of a patient after that patient left the Hospital and Dr. Offor's care, and which Plaintiff does not argue that Defendants ever saw or relied upon in making the decision to terminate her, are not relevant to her claims or Defendants' defenses under the [FMLA retaliation] standards . . . . They do not demonstrate circumstances that would create an inference of retaliatory intent, or that the reason given for her termination was a pretext for unlawful conduct.

(June Order at 5.)

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, Plaintiff objects to the June Order claiming Magistrate Judge Locke made two errors of law: ruling against Plaintiff in the absence of any response by NYPH to the Compel Motion, which non-response should have

been deemed a waiver by NYPH of any objections to the subpoena (*see* Support Memo at 8); and, improperly considering Defendants' arguments in opposition to the Compel Motion since they lacked standing to raise objections to the subpoena issued to NYPH.[1] (*See id.* at 9-10.) In response, the Defendants contend Magistrate Judge Locke: acted well within the authority afforded to him by Rule 26(b)(2)(C) in ruling on the Compel Motion; and, clearly did not rely upon Defendants' arguments in making his ruling, having merely noted that the Defendants recognized their questionable standing to oppose the Compel Order (*see* Response at 4).

When considering an appeal of a magistrate judge's ruling on a non-dispositive matter, a district judge "shall modify or set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law." Fed. R. Civ. P. Rule 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any [non-dispositive] pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). "An order is 'clearly erroneous' only if a reviewing court, considering the entirety of the evidence, is left with

---

[1] To the extent Plaintiff attempts to raise a third objection regarding the alleged misrepresentation of the facts of this case, which supposed objection is premised upon Plaintiff's claims of forgery by the Defendants and their counsel (*see* Objection Support Memo at 11-15), the Magistrate Judge correctly stated that the Court has already ruled on this issue. (*See* June Order at 5 ("**To the extent that Plaintiff is making yet another veiled attempt to demonstrate through the subpoenaed documents that Defendants have been deleting or modifying documents to hide something from her or the Court, an argument previously rejected by the Court more than once, the subpoena is nothing more than a fishing expedition and disproportionate to the needs of this case.**").) Indeed, in an October 4, 2019 Memorandum and Order, Judge Spatt ruled, *inter alia*, "It is abundantly clear that the Defendants neither deleted nor altered evidence relevant to the Plaintiff's claims." (ECF No. 175 at 3.) At this juncture, that ruling remains the law of this case. *See generally, United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009) (stating a "decision should generally be adhered to by [a] court in subsequent stages in the same case"). In any event, for the reasons set forth, *infra*, Magistrate Judge Locke's observation regarding Judge Spatt's prior ruling is not a basis to set aside the June Order. Moreover, Plaintiff raises this argument in her most recent sanctions motion (*see* ECF No. 180), which remains *sub judice* and which the Court will address when it rules upon said motion. Therefore, no prejudice is had by the Court declining to consider this argument in this context.

the definite and firm conviction that a mistake has been committed; an order is 'contrary to law'

when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Centro De*

*La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 954 F. Supp.2d 127, 139

(E.D.N.Y. 2013), *aff'd*, 868 F.3d 104 (2d Cir. 2017) (quotations and citations omitted); *accord In*

*re Hulley Enters. Ltd.*, 400 F. Supp.3d 62, 70 (S.D.N.Y. 2019). "This standard is highly

deferential, imposes a heavy burden on the objecting party, and only permits reversal where the

magistrate judge abused his discretion." *Ahmed v. T.J. Maxx Corp.*, 103 F. Supp.3d 343, 350

(E.D.N.Y. 2015) (quotations and citations omitted); *see also Hulley*, 400 F. Supp.3d at 70

("Magistrate judges are afforded broad discretion in resolving nondispositive disputes and

reversal is appropriate only if their discretion is abused. . . . A party seeking to overturn a

magistrate judge's decision thus carries a heavy burden." (quotations, alterations and citations

omitted)); *Grief v. Nassau County*, 246 F. Supp.3d 560, 564 (E.D.N.Y. 2017) ("Under Rule 72,

the heavy burden of proof lies with the moving party, and the highly deferential standard only

permits reversal where the magistrate judge abused her discretion." (quotations, alterations and

citation omitted)).

In this instance, Plaintiff is unable to meet her heavy burden. Having reviewed the

underlying motion papers, the June Order, as well as other filings in this case, this Court is not

left with the definite and firm conviction that a mistake has been committed or that Magistrate

Judge Locke misapplied Rule 26(b)(2)(C) or other applicable law. As is apparent from his

ruling, Magistrate Judge Locke carefully considered the discovery Plaintiff sought from NYPH,

via subpoena, in light of Plaintiff's sole remaining FMLA-retaliation claim. Moreover, since it is

beyond peradventure that Rule 26(b)(2)(C) permits a court to act on its own in limiting the extent

of discovery, whether NYPH formally or informally responded to the Compel Motion, or is

deemed to have waived responding, is of no consequence.  Assuming, *arguendo*, that NYPH had

waived responding to the Compel Motion, thereby presenting the court with an unopposed

motion, such a situation would not, as Plaintiff implicitly argues, automatically result in the

Compel Motion being granted.  Ironically, that could well present an abuse of discretion, since,

even an unopposed motion must be accessed to determine whether the requested relief is

permitted and warranted.  In any event, Plaintiff's claim that NYPH did not respond to her

Compel Motion is disingenuous since, as Magistrate Judge Locke noted, Plaintiff filed NYPH's

letter response.  (*See* June Order at 2 n.1 (citing ECF No. 224-1 (NYPH's letter response)); *see

also* ECF No. 224 (cover letter to NYPH's letter response indicating Plaintiff's counsel's feeling

ethically compelled to forward said response).)  Whether opposed or not, however, Magistrate

Judge Locke assessed the Compel Motion and clearly articulated his reasons for denying it.

Now, having considered: Plaintiff's Objections; Defendants' Response; the underlying Compel

Motion and the papers filed in response thereto; and, the evidence before Magistrate Judge

Locke, the Court is not left "with the definite and firm conviction that a mistake has been

committed" by the Magistrate Judge in making his ruling.  *Centro De La Comunidad Hispana*,

954 F. Supp.2d at 139 (quoting *E.E.O.C.. v. First Wireless Group, Inc.*, 225 F.R.D. 404, 405

(E.D.N.Y. 2004)) (additional citation omitted).

 Equally unavailing is Plaintiff's contention that the Magistrate Judge relied upon the

Defendants' arguments in fashioning his ruling.  Other than stating that the Defendants filed a

response to the Compel Motion in which they echoed NYPH's relevance argument and noting

that the Defendants recognized they may lack standing to object to the subpoena, but also

asserted that the court could act *sua sponte* in limiting discovery (*see id.*; *see also id.* at n.2), a

plain reading of the June Order evidences no indications that the Defendants' arguments

influenced the Magistrate Judge's well-reasoned ruling. Rather, the Magistrate Judge's ruling was based upon the record presented, with Magistrate Judge Locke reaching a conclusion well within his discretion. *See, e.g.*, *Black Love Resists In the Rust by and through Soto v. City of Buffalo, N.Y.*, 334 F.R.D. 23, 28 (W.D.N.Y., 2019) ("[A]s in all matters relating to discovery, the district court has broad discretion to limit discovery in a prudential and proportionate way." (quoting *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) (brackets in *Black Love Resists*)). Under the highly deferential standard applicable to Rule 72 appeals, the Plaintiff has failed to present any abuse of discretion warranting the setting aside of the June Order.

Hence, after considering Plaintiff's objections to the June Order and having conducted a *de novo* review of the record, the Court finds no errors in Magistrate Judge Locke's ruling regarding the Compel Motion. To the extent not directly addressed, the Court has considered the Plaintiff's remaining arguments and finds them to be without merit. Thus, concurring with the Magistrate Judge's rationale and ruling, and finding no abuse of discretion, the Court overrules Plaintiff's objections to the June Order and adopts said Order in its entirely.

ACCORDINGLY, IT IS ORDERED that Plaintiff's motion pursuant to Rule 72, objecting to the June Order (*see* ECF No. 228), is DENIED.

SO ORDERED this 18th day of August 2020 at Central Islip, New York.

/s/ *Sandra J. Feuerstein*
Sandra J. Feuerstein
United States District Judge

# EXHIBIT F

## CIVIL CAUSE FOR STATUS CONFERENCE

**BEFORE: JUDGE FEUERSTEIN**

**FILED**
**CLERK**

12:25 pm, Sep 14, 2020

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

DATE: September 14, 2020          TIME: 30 MINUTES

CASE NUMBER:      2:15-cv- 2219

CASE TITLE:       OFFOR -v- MERCY MEDICAL CENTER

PLTFFS ATTY:       Ike Agwuegbo
                     X     present          _____ not present

DEFTS ATTY:         Justin Gilfoyle and Tara Daub
                   X     present          _____ not present

COURT REPORTER: _____

COURTROOM DEPUTY: Bryan Morabito

 X   CASE CALLED.

___   HEARING HELD/ CONT'D TO_____.

__   ORDER ENTERED ON THE RECRD.

OTHER:   #180 motion is terminated.   Simultaneous motions to be served by 10/28/2020.

Opposition to be served by 11/3/2020.   Reply and fully briefed motion to be served and filed by

12/10/2020.   A telephone status conference is scheduled before Judge Feuerstein on 3/23/2021 at

11:15 am.

# EXHIBIT G

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
DR. CHINWE OFFOR,

                Plaintiff,

      -against-

MERCY MEDICAL CENTER, ROCKVILLE
CENTRE DIVISION; CATHOLIC HEALTH
SERVICES OF LONG ISLAND;
DR. SWARNA DEVARAJAN; and
DR. JOHN P. REILLY,

                Defendants.

-------------------------------------------------------X

**MEMORANDUM OF
DECISION & ORDER**
2:15-cv-2219 (SJF)(SIL)

**FILED
CLERK**
12:30 pm, Oct 05, 2020
**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

**APPEARANCES:**

**Ike Agwuegbo, Esq.**
*Attorney for the Plaintiff*
575 Lexington Avenue, 4th Floor
New York, NY 10022

**Nixon Peabody LLP**
*Attorneys for the Defendants*
50 Jericho Quadrangle, Suite 300
Jericho, NY 11753
    By: Justin Anthony Guilfoyle, Esq.

**FEUERSTEIN, Senior District Judge**:

Presently before the Court is Plaintiff's motion for reconsideration (*see* ECF No. 250; hereafter, the "Reconsideration Motion") of this Court's September 14, 2020 *sua sponte* termination (*see* ECF No. 249; hereafter, the "Termination Decision") of her Sanctions Motion (*see* ECF No. 180; hereafter, the "Reconsideration Motion"). Defendants oppose the Reconsideration Motion. (*See* ECF No. 244; hereafter, "Opposition" or "Opp'n"). For the reasons articulated herein, the Reconsideration Motion is GRANTED, but, upon reconsideration, the Court adheres to its Termination Decision.

The Court assumes the Parties' familiarity with the underlying facts and procedural history of this case, and the issues giving rise to the present Reconsideration Motion.  For the reader's convenience, the Court briefly notes that prior to the reassignment of this case to the undersigned, Plaintiff's fully-briefed Sanctions Motion was pending before the Court and discovery had not yet concluded.  (*See, e.g.*, Case Docket.)  By way of her Sanctions Motion and upon her claim of spoliation of evidence, *to wit*, the forgery or alteration of documents produced by the Defendants, Plaintiff sought an adverse inference against the Defendants at trial.  (*See* Sanctions Motion at 4.) After close of discovery, the Court held a Status Conference on September 14, 2020, during which the undersigned: set a briefing schedule for the Parties' dispositive motions; terminated the Sanctions Motion; and, stated that Plaintiff was free to incorporate her Sanctions Motion arguments into her dispositive motion.  (Termination Decision.)  This Reconsideration Motion followed.

Plaintiff contends, *inter alia*:

> This Court has also recently ruled denying Plaintiff's Motion to Compel the production of Documents which would have exposed the deletion and alteration of a Patient's Medical Chart.  As Plaintiff has strenuously argued, in order to substantiate the false claims of poor clinical performance against the Plaintiff, the Defendants resorted to forgery, alteration and deletion of medical records and other documents related to Plaintiff's work at the hospital.

(Reconsideration Motion at 2; *see also id.* at 2-3 (providing six examples of claimed document manipulations).)  She argues the Court's *sua sponte* termination of the Sanctions Motion "sends a wrong signal to fraudsters and forgers that presenting falsified or altered documents is okay in the Eastern District of New York, even in the face of manifest injustice to the Plaintiff" (*id.* at 1) and "**appeals to the Court to reconsider its Sua Sponte**" Termination Decision.  (*Id.* at 3 (emphasis in original)).

Unsurprisingly, the Defendants oppose the Reconsideration Motion arguing that, in addition to said Motion being procedurally defective (*see* Opp'n at 1 (citing to Local Rule 6.3)), Plaintiff fails to meet the well-established criteria for seeking reconsideration as: there has been no intervening change of controlling law; Plaintiff has not shown the availability of new evidence, but instead cites to evidence already presented to the Court; and, Plaintiff has not presented any clear error or manifest injustice, especially since this Court specifically "informed Plaintiff that she is free to raise any issues she has with the authenticity of Defendants' documents in opposition to Defendants' forthcoming motion for summary judgment." (*Id.* at 2.)

"Motions for reconsideration may be brought pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure and Local [Civil] Rule 6.3." *United States. v. Real Prop. & Premises Located at 249-20 Cambria Ave., Little Neck, N.Y.,* 21 F. Supp.3d 254, 259 (E.D.N.Y. 2014). A motion for reconsideration shall set forth "concisely the matters or controlling decisions which counsel believes the Court has overlooked." Local Civil Rule 6.3. The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995); *accord Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). Grounds for reconsideration exist only when the movant "identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust,* 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation and citation omitted). Reconsideration is not, however, "a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits or otherwise taking a second bite at the apple." *Analytical Surveys,* 684 F.3d at 52

(internal quotation marks, alterations, and citation omitted).  Motions for reconsideration are committed to the sound discretion of the district court.  *See Belfiore v. Procter & Gamble Co.,* 140 F. Supp.3d 241, 245 (E.D.N.Y. 2015); *Hunt v. Enzo Biochem, Inc.,* No. 06-cv-170, 2007 WL 1346652, at *1 (S.D.N.Y. May 7, 2007).

Plaintiff has failed to meet her burden of showing any intervening change of controlling law or the availability of new evidence.  Moreover, as Defendants accurately stated, "there [has been] no 'determination' on Plaintiff's motion for sanctions to be reconsidered at this juncture, as said motion was terminated and not denied."  Yet, the Plaintiff asserts that the Termination Decision will send the "wrong signal" about improper or fraudulent conduct being sanctioned by the Court.  The Court disagrees; the Termination Decision is simply a case management order which is within its authority to enter, *see Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (U.S. 2016) ("[T]his Court has long recognized that a district court possesses inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Link v. Wabash R. Co.,* 370 U.S. 626, 630-31 (1962); further citation omitted)), and which has not foreclosed Plaintiff's ability to make her substantive arguments raised in her Sanctions Motion, as clearly articulated by the Court at the September 14, 2020 Status Conference.

ACCORDINGLY, IT IS ORDERED that Plaintiff's Reconsideration Motion is GRANTED, but that upon reconsideration, the Court adheres to its Termination Decision.

SO ORDERED this 5th day of October 2020 at Central Islip, New York.

/s/ *Sandra J. Feuerstein*
Sandra J. Feuerstein
United States District Judge

# EXHIBIT  H

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DR. CHINWE OFFOR,

                              Plaintiff,                    **ORDER**
                                                           15-CV-2219 (SJF) (SIL)

                    v.

MERCY MEDICAL CENTER, ROCKVILLE                            **FILED**
CENTRE DIVISION, CATHOLIC HEALTH                           **CLERK**
SERVICES OF LONG ISLAND, DR. SWARNA
DEVARAJAN, and DR. JOHN P REILLY,                          1:07 pm, Dec 15, 2020

                              Defendants.                  **U.S. DISTRICT COURT**
-------------------------------------------------------------X          **EASTERN DISTRICT OF NEW YORK**
                                                                        **LONG ISLAND OFFICE**
FEUERSTEIN, District Judge:

        The parties are in the midst of the simultaneous briefing of cross-motions for summary

judgment.  The briefing schedule called for service of the motions on October 28, 2020, service

of opposition papers on November 30, 2020, and service of reply papers on December 10, 2020.

Pursuant to the "bundle rule," the fully briefed motions were to be submitted on December 10,

2020.[1]  In addition to her summary judgment motion, Plaintiff has apparently served two motions

for sanctions on Defendants.  *See* Docket Entry ("DE") [259], [264].  Currently before the Court

are seven fully-briefed letter motions filed by the parties filed over a ten-day period, most of

which relate relate to the briefing of these motions.

**I.      PLAINTIFF'S FILINGS RELATED TO DEFENDANTS' EVIDENCE**

        . On September 14, 2020, this Court terminated Plaintiff's motion for sanctions, which

alleged, *inter alia,* spoliation and forgery of evidence, and which had been submitted prior to the

close of discovery, and set a schedule for the simultaneous briefing of cross-motions for

---

[1] By Electronic Order on December 10, 2020, this Court stayed the briefing and submission of
the summary judgment motions pending determination of the letter motions addressed herein.

summary judgment.  Minute Order of 9/14/20, DE [249].   Plaintiff was advised that she could raise the issues from her sanctions motion as part of her opposition to Defendants' forthcoming summary judgment motion.  Plaintiff moved for reconsideration of the decision to terminate the sanctions motion.  That motion was granted, and upon reconsideration, the Court adhered to the prior decision.  *See* Reconsideration Order, DE [253].  Noting that the decision to terminate the motion was merely an exercise in case management, the Reconsideration Order restated that Plaintiff was "free to incorporate her Sanctions Motion arguments into her dispositive motion." *Id.* at 2.

Plaintiff has, at best, misunderstood, or at worst, purposefully disregarded, the Court's orders regarding the procedure for putting her sanctions arguments before it.  Reiterating those prior rulings, the Court again directs that Plaintiff's arguments be included within the summary judgment motion papers.  Specifically, (1) any objections by Plaintiff to the quality and weight of evidence put forth by Defendants in their motion for summary judgment shall be included in Plaintiff's opposition to that motion, and (2) any objections by Plaintiff to the quality and weight of evidence put forth by Defendants in opposition to Plaintiff's motion for summary judgment shall be included in Plaintiff's reply.  To effect this ruling, Plaintiff is permitted to amend her opposition to Defendants' motion for summary judgment and serve it **no later than January 8, 2021.**  Reply papers on both motions, shall be served **by January 22, 2021**, and the fully briefed motions shall also be filed on **January 22, 2021.**

Plaintiff has submitted two motions to strike evidence put forth by Defendants. *See* Motions to Strike, DE [258], [261].   Those motions seek an order striking three types of evidence:  (1) expert reports and "related averments," (2) "forged or otherwise fabricated documents," and (3) "other inadmissible documents."  Types (2) and (3) will only be considered

as part of Plaintiffs' opposition to Defendants' motion for summary judgment and Plaintiff's reply to Defendant's opposition to her motion for summary judgment, and only if Plaintiff includes her arguments in those papers. The Court will consider Plaintiff's Motions to Strike only to the extent they challenge evidence as inadmissible expert materials. These motions remain open to this limited extent, and will be considered in conjunction with the motions for summary judgment.

In light of the above rulings, Defendants' motion regarding Plaintiffs' filings, *see* Motion, DE [267], is granted to the extent that the separate sanctions motions purportedly served on Defendants by Plaintiff on December 1, 2020, *see* DE [259], and December 6, 2020, *see* DE [264], are deemed to be nullities and will not be considered. As such, Defendants need not respond to those papers.

Plaintiff's motion to amend her opposition, *see* DE [260], is denied as moot.

## II. MOTIONS PERTAINING TO FILING

Plaintiff and Defendants have each submitted motions related to the filing of the cross-motions. Plaintiff seeks permission to file her summary judgment motion under seal. Pl. Sealing Motion, DE [266].[2] She further asks to be excused from electronically filing these submissions. Defendants do not oppose Plaintiff's request to file her summary judgment under seal, but do oppose Plaintiff's request to be excused from electronic filing, noting that she provides no basis for this request. Defendants' Opposition, DE [271]. Plaintiff's motion is granted to the extent that her summary judgment motion may be filed under seal, and denied as to her request to be excused from electronic filing of that motion.

---

[2] Plaintiff also seeks permission to file her separate Sanctions motions under seal. This portion of her request is moot given the above the rulings.

Defendants also move for permission to file their papers under seal.  Defs. Motion, DE [270].  They further seek an order requiring Plaintiff to provide her exhibits in opposition to Defendants' motion as individual PDF documents, rather than a single, 2,335 page document that exceeds the ECF filing limit and thus cannot be electronically filed by Defendants as required under the "bundle rule."  Plaintiff does not oppose the request to file under seal, *see* Opposition, DE [273], but opposes the request to break up her exhibits as "placing an unnecessary onerous demand on the Plaintiff."  *Id.*    Despite her objection, it is Plaintiff's obligation to provide Defendants with her opposition to Defendants' motion in a manner that allows Defendants to file their motion.  Defendants' motion is granted in its entirety.  Plaintiff's opposition, to be re-served by January 8, 2021, shall include individual PDF documents for each exhibit.

### III.  MOTION REGARDING PAYMENT OF SANCTIONS AWARD

By Order dated November 18, 2018, sanctions in the total amount of $25,622.50 were imposed upon Plaintiff's counsel, Ike Agwuegbo.  Order, DE [109].   Subsequently, an order was entered permitting Mr. Agwuegbo to pay monthly installments of $500 to satisfy this award.  *See* Electronic Order of 2/11/19.  He now moves to reduce the amount of the monthly payments to $100 "in light of the Covid-19 ensuing economic crisis."  Motion, DE [265].  Defendants oppose the motion, noting that Mr. Agwuegbo still owes $16,122.20, having failed to pay installments in September or November 2020, and that granting the request would increase the payment time from less than three years to over thirteen years, resulting in prejudice to Defendants.  Opposition, DE [269].  Beyond his general, conclusory reference to the Covid-19 economic crisis, Mr. Agwuegbo offers no factual basis for his request.  The motion is denied.

## IV. CONCLUSION

For the reasons, and to the limited extent, set forth above, the letter motions are resolved as follows:

- Defendants' motion [267] is GRANTED;

- Plaintiff's motion [260] is DENIED as moot;

- Plaintiff's motion [266] is GRANTED in part and DENIED in part;

- Defendants' motion [270] is GRANTED; and

- Plaintiff's motion [265] is DENIED.

Plaintiff's motions DE [258] and [261] remain pending as limited above.

**SO ORDERED**.

_/s/ Sandra J. Feuerstein_

Sandra J. Feuerstein
United States District Judge

Dated: Central Islip, New York
December 15, 2020

# EXHIBIT I

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DOCTOR CHINWE OFFOR,

                         Plaintiff,           **REPORT AND**
      -against-                            **RECOMMENDATION**

MERCY MEDICAL CENTER, CATHOLIC      15-CV-2219 (SJF)(SIL)
HEALTH SERVICES OF LONG ISLAND,
DOCTOR SWARNA DEVARAJAN, and
DOCTOR JOHN REILLY,

                      Defendants.
-------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

By way of Complaint dated April 20, 2015, later modified by an Amended
Complaint dated May 15, 2015, and again by a Second Amended Complaint dated
June 29, 2015, Doctor Chinwe Offor ("Offor" or "Plaintiff") commenced this action
against Mercy Medical Center ("MMC"), Catholic Health Services of Long Island
("CHSLI"), Doctor Swarna Devarajan ("Devarajan") and Doctor John P. Reilly
("Reilly," and together with MMC, CHSLI and Devarajan, "Defendants"), alleging
violations of:  the Civil Rights Act of 1866, 42 U.S.C. § 1981; the New York Executive
Law § 296; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title
VII"); the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA");
and the federal Health Care Quality Improvement Act of 1986 ("HCQIA"), 42 U.S.C.
§ 1111 *et seq.*, as well as state law claims for libel, slander and intentional infliction
of emotional distress, and seeking a declaratory judgment and injunctive and
monetary relief in connection with her claims.  *See* Complaint ("Compl."), Docket

Entry ("DE") [1]; Amended Complaint ("Am. Compl."), DE [15]; Second Amended Complaint ("SAC"), DE [22-17]. Presently before the Court, on referral from the Honorable Sandra J. Feuerstein for report and recommendation, are: (i) Plaintiff's two motions to strike evidence in Defendants' summary judgment papers as inadmissible expert materials pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and Federal Rule of Evidence 702, DE [258], [263]; (ii) Plaintiff's motion for summary judgment, DE [283]; and (iii) Defendants' cross-motion for summary judgment, DE [284], pursuant to Fed. R. Civ. P. 56. For the reasons set forth herein, the Court respectfully recommends: (i) denying Plaintiff's motions to strike; (ii) denying Plaintiff's motion for summary judgment; and (iii) granting Defendants' cross-motion for summary judgment.

I.      **Background**

     A. **Relevant Facts**

     The following facts are taken from the parties' pleadings, declarations, exhibits and respective Local Rule 56.1 statements. Except where indicated, these facts are not in dispute.[1]

     MMC is a not-for-profit health care facility and a member hospital of CHSLI, a not-for-profit network of healthcare facilities on Long Island. *See* SAC ¶¶ 2-3; Defendants' Local Rule 56.1 Statement of Undisputed Facts in Support of Their Motion for Summary Judgment ("Def. 56.1"), DE [284-2], ¶ 1. Plaintiff is a resident

---

[1] As discussed below, Plaintiff's 56.1 Statement and 56.1 Counterstatement contain cites to evidence not in the record in some instances. The Court ignores any facts submitted in violation of Local Civil Rule 56.1.

of New York who was a neonatal physician in MMC's Neonatal Intensive Care Unit ("NICU") from February 2000 until her termination in August 2014. *See* SAC ¶¶ 1, 15-19; Material Facts to Which There is No Genuine Issue to be Tried ("Pl. 56.1"), DE [283-17], ¶ 5; Defendants' Objections and Responses to Plaintiff's Material Facts to Which There is No Genuine Issue to be Tried ("Def. Opp. 56.1"), DE [283-80], at 1.[2] While Plaintiff maintains CHSLI, MMC's parent company, also acted as her employer, Defendants dispute that CHSLI ever employed Offor. *See* Pl. 56.1 ¶ 5; Def. Opp. 56.1 at 3. Devarajan has been the Chairwoman of the Department of Pediatrics and the Director of Neonatology and Newborn Services at MMC since 1999, and directly supervised Plaintiff during her employment. *See* Def. 56.1 ¶¶ 4-5. Reilly was the Director of Medicine at MMC from 2007 until 2017, and the Chief Medical Officer at MMC from 2008 until 2017. *See id.* ¶ 3.

      *i.    Plaintiff's Request for Vacation Time in December 2012*

In 2010, Devarajan established a policy for all NICU physicians, including Plaintiff, under which every request for vacation had to be submitted in writing. *See id.* ¶ 9. In 2012, Offor was one of three full-time physicians in MMC's NICU, along with Devarajan and Doctor Niti Rayjada ("Rayjada"), who was scheduled to be out of work for at least 12 weeks for maternity leave starting in December 2012. *See id.* ¶¶ 10-11. Accordingly, on July 17, 2012, Devarajan limited the remaining NICU physicians' ability to take vacation between late 2012 and early 2013. *See id.* ¶ 12;

---

[2] Defendants' objections and responses to Plaintiff's 56.1 Statement are not contained in numbered paragraphs. As such, all citations to Defendants' 56.1 Counterstatement are to page numbers.

Plaintiff's Counter Statement of Undisputed Material Facts ("Pl. Opp. 56.1"), DE [285-2], ¶ 13.

According to Defendants, on July 10, 2012, Plaintiff requested time off in December 2012 to attend her niece's wedding, which Devarajan denied, citing the hold on vacations at that time. *See id.* ¶ 13; Def. 56.1 ¶¶ 13-15. Plaintiff, in turn, emailed Reilly and MMC's Vice President of Human Resources, Allison Cianciotto ("Cianciotto"), about the request, and met with both on August 1, 2012 and Canciotto alone on September 25, 2012. At this meeting, Canciotto explained to Plaintiff that Devarajan denied her request due to staffing concerns surrounding Rayjada's anticipated maternity leave. *See* Def. 56.1 ¶¶ 17-20.

*ii.* *Plaintiff's Request for Vacation Time in January and February 2013*

In 2012, Plaintiff's daughter was 29 years old, living in Chicago and expecting to give birth in January 2013. *See id.* ¶¶ 22, 24-25. Offor mentioned the possibility of taking vacation for her grandchild's birth to Devarajan in June 2012, but did not submit a request for vacation in writing at that time. *See id.* ¶¶ 26-27. On September 27, 2012, after receiving the 2013 Neonatology Service Schedule confirming that no vacations would be approved or scheduled until June 2013 due to Rayjada's maternity leave, Plaintiff requested to take vacation time in both February and June 2013, which Devarajan also denied. *See id.* ¶¶ 31-33, 35. While Offor maintains her daughter suffered from serious health conditions during and after her pregnancy, and that Plaintiff was aware of them at the time she requested the vacation based on "oral[]" conversations, she did not inform Devarajan of any then-current or

anticipated health issues, disabilities or medical needs her daughter had, or any possibility that her daughter would not be able to care for herself after labor, stating on September 28, 2012 only that she "need[ed] the vacation in February [2013] because [her] second daughter [wa]s due to deliver her first baby and she will need [her]." *See id.* ¶¶ 37-40, 43; Pl. 56.1 ¶¶ 25, 28; Pl. Opp. 56.1 ¶¶ 26-27, 43, 48, 50.

In November 2012, Offor retained Joel Greenberg, Esq. ("Greenberg") as her attorney to assist her with obtaining approval for a February 2013 vacation. *See* Def. 56.1 ¶ 50. Greenberg communicated to Defendants that Plaintiff retained him because she wanted to take vacation to be with her daughter when she gave birth. *See id.* ¶ 52. On December 27, 2012, Devarajan approved Plaintiff's request for vacation time in February 2013. *See id.* ¶ 55.

    *iii.*    *2012 Reports on and Evaluations of Plaintiff's Skills*

On August 14, 2012, Doctor Robert Koppel ("Koppel"), then-Director of the Regional Perinatal Center at Cohen Children's Medical Center ("Cohen Children's"), contacted Devarajan regarding Plaintiff's clinical management of a newborn infant transferred from MMC to Cohen Children's, which Plaintiff maintains never occurred. *See id.* ¶ 61; Pl. Opp. 56.1 ¶ 62. The next day, Devarajan met with Plaintiff to discuss the issues Koppel raised, and memorialized the meeting in a handwritten note to file, a document Plaintiff asserts was fabricated. *See id.* ¶ 63; October 28, 2020 Declaration of Justin A. Guilfoyle, Esq. in Support of Defendants' Motion for Summary Judgment ("Guilfoyle Dec."), DE [284-1], Exhibit ("Ex.") X, DE [284-29].

Based on Koppel's concerns, along with an internal alert as to Plaintiff's treatment of the same patient through an electronic incident reporting system ("MIDAS"), MMC conducted an internal review of the patient's case. *See* Def. 56.1 ¶ 64. The MIDAS report generated as part of MMC's internal review, which Plaintiff also maintains was fabricated, identified educational and performance deficits and inappropriate use of equipment in connection with Plaintiff's treatment of the patient, which Reilly met with Plaintiff to discuss on August 24, 2012. *See id.* ¶¶ 65-68; Pl. Opp. 56.1 ¶ 65.

Following its internal review, MMC initiated an external review process of three additional patients Plaintiff treated by three practitioners at institutions unaffiliated with MMC or CHSLI: (1) Cohen Children's; (2) Stony Brook Long Island Children's Hospital ("Stony Brook"); and (3) Morgan Stanley Children's Hospital ("Morgan Stanley"). *See* Def. 56.1 ¶¶ 69-73. All three reports, which Plaintiff also maintains were fabricated, noted deficiencies in Offor's treatment of patients and recommended the need for further review and discussion as to improving her practices in six areas. *See id.* ¶¶ 74-79; Guilfoyle Dec. Exs. AA, DE [284-32], BB, DE [284-33]; Pl. Opp. 56.1 ¶¶ 74-77.

Other MMC personnel raised additional concerns as to Plaintiff's medical care in the NICU. *See* Def. 56.1 ¶¶ 80-82. In response, Reilly held a NICU department meeting on December 17, 2012 as to certain policies Offor was responsible for abiding by, which Defendants assert Plaintiff continued to fail to comprehend. *See id.* ¶¶ 83-86.

iv.    *MMC Places Plaintiff on a Focused Practitioner Performance Evaluation*

Plaintiff met with Reilly, Devarajan and MMC's Director of Risk Management, Rosemarie Povinelli ("Povinelli"), on December 27, 2012, at which time Reilly informed Offor that MMC decided to place her on a three-month Focused Practitioner Performance Evaluation ("FPPE"), a process through which MMC's medical staff evaluates the competence of a practitioner following failures, shortcomings or needs for improvement in connection with the practitioner's clinical skills or knowledge, based on Koppel's concerns, the MIDAS report and the three independent evaluations, after which MMC would reevaluate her work and determine what additional steps, if any, were appropriate. *See id.* ¶¶ 87-90. Three months later, MMC concluded that there was not a sufficient volume of cases involving the specific issues that needed review to adequately evaluate Offor's clinical skills and issues, and informed her in a May 8, 2013 letter that it would continue the FPPE to provide additional time to evaluate her abilities. *See id.* ¶¶ 93-95; Guilfoyle Dec. Ex. DD, DE [284-35].

Defendants noted that Plaintiff exhibited additional performance and behavioral issues throughout her time on the FPPE. *See, e.g.*, Def. 56.1 ¶¶ 98-119; Pl. Opp. 56.1 ¶¶ 101-17. On several occasions, Defendants addressed their concerns in meetings with Offor and memorialized the complaints and concerns raised, as well as meetings held, in written letters and notes to file, all of which Plaintiff maintains were forged or otherwise altered. *See, e.g.*, Def. 56.1 ¶¶ 107-10, 116-19; Guilfoyle Dec. Ex. HH, DE [284-39]; Pl. Opp. 56.1 ¶¶ 109, 117-19.

In November 2013, Offor demanded that MMC take her off the FPPE. *See* Def. 56.1 ¶¶ 120-21. On December 6, 2013, Devarajan notified Plaintiff that MMC intended to continue the FPPE because Plaintiff's recent conduct demonstrated a lack of professionalism and respect, as well as a failure to adhere to departmental guidelines for patient management. *See id.* ¶¶ 125-26.

v.  *MMC's Initial Disciplinary Actions Against Plaintiff*

After continuing Plaintiff's FPPE a second time, Defendants removed Offor's title of "Assistant Director of Neonatology" and warned of further disciplinary action, based on her continuing behavioral and clinical issues, along with the fact that she failed to maintain "Instructor" status in the Neonatal Resuscitation Program, which Plaintiff denies. *See id.* ¶¶ 127-32; Pl. Opp. 56.1 ¶¶ 127-28. Offor emailed several MMC employees regarding the removal of her title, and had several meetings with MMC superiors about this action and the events that preceded it, all of whom agreed with Devarajan's decision to continue her FPPE and remove her title, and advised Plaintiff to work on meeting MMC's expectations for neonatologists, warning that continued issues would result in further discipline. *See* Def. 56.1 ¶¶ 133-36, 139, 141-46. The superiors documented these meetings and discussions in notes to file, which Offor also claims were forged or otherwise altered. *See id.* ¶ 138, 143-46; Guilfoyle Dec. Ex. RR, DE [284-49]; Pl. Opp. 56.1 ¶¶ 136-37.

vi.  *2014 Reviews of Plaintiff's Performance*

At MMC's Department of Neonatology Peer Review meeting on June 17, 2014, the eleven individuals present reviewed two of Plaintiff's cases referred to the

committee based on concerns regarding Plaintiff's care, which she maintains were fabricated. *See* Def. 56.1 ¶¶ 151-52; Pl. Opp. 56.1 ¶¶ 151-54. The two reviews determined that Offor failed to meet the appropriate standard of care, and that there were opportunities for Plaintiff to improve. *See* Def. 56.1 ¶¶ 153-54.

Doctor Yang Kim ("Kim"), described by Defendants as then-Medical Director of the Bellevue NICU and an Assistant Professor of Pediatrics at the New York University School of Medicine in 2014, performed an external quality assurance review of seven of Plaintiff's cases upon MMC's request. *See id.* ¶¶ 155-56. Of the seven cases reviewed, Kim identified questionable points of management and departures from the normal standard of care with respect to Plaintiff's treatment in five cases. *See id.* ¶ 158.

*vii.   MMC Terminates Plaintiff*

On August 21, 2014, Plaintiff met with Doctor Alan Guerci, the Chief Executive Officer of MMC and CHSLI, as well as Doctor Aaron Glatt, the then-Executive Vice President and Chief Administrative Officer of MMC, and Anthony Pellicano, Senior Vice President and Chief Human Resources Officer, who informed her that her employment with MMC was terminated and her clinical privileges at MMC were summarily suspended as a result of her standard of care issues, unprofessionalism, lack of respect, insubordination, failure to improve and failure to adhere to departmental policies, procedures and guidelines. *See id.* ¶¶ 166-68.

MMC's bylaws provide that a physician whose medical staff privileges have been suspended has the right and opportunity to formally challenge such action and

"request a formal hearing before an ad hoc committee comprised of members of the attending medical staff" within 30 days of receiving a termination notice. *See id.* ¶¶ 172-73; Guilfoyle Dec. Ex. WW, DE [284-54]. Plaintiff did not challenge her suspension, and on November 24, 2014, MMC terminated Plaintiff's clinical privileges and notified her of the termination. *See* Def. 56.1 ¶¶ 174-75.

> viii. *New York State Department of Health, Office of Professional Medical Conduct Proceedings*

In accordance with its statutory obligations, MMC reported Plaintiff's termination to the New York State Department of Health, Office of Professional Medical Conduct ("OPMC") on September 2, 2014, which in turn commenced an investigation into the termination. *See id.* ¶¶ 176-77. As part of that investigation, the OPMC hired an independent expert, Doctor Jesus Jaile-Marti ("Jaile-Marti"), then-Director of Neonatology at White Plains Hospital, to review the medical records of patients Offor treated. *See id.* ¶ 178. Jaile-Marti reviewed five of Plaintiff's cases from her tenure at MMC and provided the OPMC with a written report noting deviations from the generally accepted medical standards of care in four of them. *See id.* ¶¶ 180-81.

As a result of Jaile-Marti's findings, the OPMC brought charges against Plaintiff and conducted a hearing for which Offor retained counsel. *See id.* ¶¶ 182-83. No one from MMC or CHSLI participated in the hearing as a witness or panel member, and Jaile-Marti testified. *See id.* ¶¶ 184-86. After the hearing, the OPMC issued a decision revoking Plaintiff's license to practice law in New York, citing a lack of awareness and understanding of her repeated and significant failures to meet

acceptable standards of care, as well as her lack of remorse and refusal to accept responsibility for her actions. *See id.* ¶¶ 188-89; Guilfoyle Dec. Ex. CCC, DE [284-60]. The New York State Appellate Division, Third Department, annulled the OPMC's decision to revoke Plaintiff's medical license on June 8, 2020 due to the administrative law judge's failure to accept Offor's answer before the hearing but after the deadline to submit an answer, and remitted the matter to the OPMC for further proceedings. *See Matter of Offor v. Zucker*, 185 A.D.3d 1187, 1190, 127 N.Y.S. 3d 195,197-98. (3d Dep't 2020). According to Plaintiff, her medical license has not yet been reissued. *See* Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl. Opp."), DE [285], at 29.

### B. Procedural History

On February 22, 2014, Plaintiff filed a charge of discrimination against MMC with the Equal Employment Opportunity Commission ("EEOC"), alleging claims of race and color discrimination and retaliation in violation of Title VII. *See* Guilfoyle Dec. ¶ 3; Ex. A, DE [284-6]. Offor filed an amended charge on August 29, 2014, adding CHSLI as a respondent and claiming that MMC and CHSLI terminated her employment based on race and color discrimination and in retaliation for filing her initial charge. *See* Guilfoyle Dec. ¶ 4; Ex. B, DE [284-7]. The EEOC issued Plaintiff a Notice of Right to Sue on February 27, 2015. *See* Guilfoyle Dec. ¶ 5; Ex. C, DE [284-8].

Based on the above, Plaintiff commenced this action on April 20, 2015. *See* Compl. The Complaint and Amended Complaint – seeking declaratory and injunctive

relief and monetary damages – allege that Defendants discriminated against her on the basis of her race and national origin and retaliated against her for requesting vacation and hiring an attorney, by placing her on an FPPE, denying her vacation in violation of the FMLA and making false negative statements as to her employment performance. *See generally* Compl.; Am. Compl.

Defendants filed their motion to dismiss the Amended Complaint on June 17, 2015, *see* DE [19], and on June 29, 2015, Plaintiff filed a motion for leave to amend the Complaint and file the Proposed Second Amended Complaint, which added claims for violation of due process under the HCQIA and for a hostile work environment under Title VII. *See* DE [22], [22-17]. The parties also filed cross-motions for sanctions in September 2015 – Defendants moved for sanctions against Plaintiff and her counsel on the grounds that they intentionally failed to redact medical and other sensitive information from publicly filed documents in violation of the Health Insurance Portability and Accountability Act of 1996 and Fed. R. Civ. P. 5.2, *see* DE [32], and Plaintiff moved for sanctions against Defendants and their counsel on the grounds that they colluded with the EEOC to force Plaintiff to initiate a lawsuit against the EEOC prior to obtaining a copy of her EEOC charge file. *See* DE [36].

On March 10, 2016, the Honorable Arthur D. Spatt granted Defendants' motion to dismiss the Amended Complaint in its entirety and with prejudice, denied Plaintiff's motion to file a Second Amended Complaint as futile, and reserved decision as to the sanctions motions. S*ee* DE [43]. Plaintiff appealed Judge Spatt's decision on March 18, 2016. *See* DE [46]. While the appeal was pending, Judge Spatt granted

Defendants' motion for sanctions against Plaintiff and her counsel and denied Plaintiff's motion for sanctions on June 25, 2016. *See* DE [47]. By order dated November 20, 2018, Judge Spatt directed Plaintiff's counsel to pay Defendants $25,622.50. *See* DE [109].

The Second Circuit affirmed Judge Spatt's dismissal of all causes of action except for Plaintiff's FMLA retaliation claim, reinstated jurisdiction over the state law claims, s*ee* DE [55], and subsequently ordered that the SAC is the operative complaint. *See* DE [64]. Defendants moved to dismiss the SAC's state law claims, *see* DE [58], which Judge Spatt granted on October 28, 2017 pursuant to Fed. R. Civ. P. 41(a)(1)(A), leaving Plaintiff's FMLA retaliation claim as the only remaining cause of action. *See* DE [65]. Thereafter, the parties conducted discovery.

Plaintiff filed a letter motion to strike portions of Defendants' affidavits, briefs and exhibits in support of their motion for summary judgment on November 30, 2020, and a second letter motion to strike portions of Defendants' affidavits, briefs and exhibits in opposition to Plaintiff's motion for summary judgment on December 4, 2020, both of which Defendants oppose. *See* DE [258], [261], [263], [272]. On December 15, 2020, Judge Feuerstein limited these motions to Plaintiff's challenges to documents she asserts are inadmissible expert materials, and directed Plaintiff to include any challenges as to forged, fabricated or otherwise inadmissible documents in her summary judgment papers. *See* DE [276].

On January 21, 2021, the parties filed cross-motions for summary judgment. *See* Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment

("Pl. Mem."), DE [283-18]; Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Def. Mem."), DE [284-5].  Each party opposes the other's motion.  *See* Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("Def. Opp."), DE [283-81]; Pl. Opp.  Judge Feuerstein referred Plaintiff's two motions to strike, as limited in her December 15, 2020 Order, and the cross-motions for summary judgment to this Court for report and recommendation.  *See* January 22, 2021 Order Referring Motions.

## II.    Legal Standards

### A.  <u>Motion to Strike Summary Judgment Materials</u>

"[E]vidence considered on summary judgment must generally be admissible." *See LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005).   On summary judgment, "a district court has wide discretion" in determining the admission of evidence.  *Id.* (internal quotation marks and citations omitted).   Federal Rule of Civil Procedure 56(c)(2) permits a party, on summary judgment, to object to inadmissible evidence.[3]  *See* Fed. R. Civ. P. 56(c)(2); *Codename Enterprises, Inc. v. Fremantlemedia N. Am., Inc.*, 16 CIV 1267, 2018 WL 3407709, at *2 (S.D.N.Y. Jan. 12, 2018).   Federal Rule of Evidence 702(a) requires that a proposed expert witness be qualified on the basis of "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue."

---

[3] While Plaintiff purports to make her motions to strike pursuant to Fed. R. Civ. P. 56(e), she cites to the standard set forth in Fed. R. Civ. P. 56(c).  Accordingly, the Court analyzes the motions to strike under Fed. R. Civ. P. 56(c).

### B. **Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). In deciding a motion for summary judgment, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted) (emphasis in original); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is

considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party.").

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see also Artis v. Valls*, No. 9:10-cv-427, 2012 WL 4380921, at *6 n.10 (N.D.N.Y. Sept. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment.").

## III. Discussion

Applying the standards outlined above, and for the reasons set forth below, the Court respectfully recommends: (i) denying Plaintiff's motions to strike; (ii) denying Plaintiff's motion for summary judgment; and (iii) granting Defendants' cross-motion for summary judgment.

### A. **Motion to Strike**

Plaintiff argues that five of Defendants' exhibits constitute improper expert reports: (i) Exhibit AA, which is Cohen Children's external review of Plaintiff's treatment of a patient at MMC; (ii) Exhibit AAA, the report of the independent physician the OPMC retained; (iii) Exhibit BB, Stony Brook's external review of Plaintiff's treatment of a patient at MMC; (iv) Exhibit Y, which is Reilly's January 16, 2013 letter to Plaintiff discussing a meeting he held with Plaintiff, Devarajan and Povinelli during which they discussed the concerns with Plaintiff's clinical management Koppel raised; and (v) Exhibit VV, Kim's external quality assurance

review of Plaintiff's treatment of seven patients at MMC. *See* DE [258], [261], [263], [272].

Defendants did not submit any of these documents as expert reports. Rather, these are documents created prior to Plaintiff's termination and relied upon as documents submitted into the record in the course of fact discovery as events leading to Offor's discharge. The parties never exchanged any actual expert reports. *See* DE [261] at 2. Moreover, the Court does not rely on any of these documents in reaching its conclusion on the arguments for summary judgment. Accordingly, the Court denies Plaintiff's motions to strike these documents as improper expert testimony.

### A. <u>Summary Judgment</u>

 *i.* *Procedural Defects*

  a. Plaintiff's Rule 56.1 Statement and Counterstatement

There are several defects in Plaintiff's motion papers, both with respect to her Local Civil Rule 56.1 statements and her memoranda of law. Specifically, Plaintiff fails to cite to evidence in the record to support some of her assertions, and certain facts contained within her statements amount to legal arguments.

According to the Second Circuit, "a district court has broad discretion to determine whether to overlook a party's failure to comply with" Local Rule 56.1. *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 432 (S.D.N.Y. 2014). Therefore, "'[w]hile the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out.'" *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (quoting *Downes v. Beach*, 587 F.2d 469, 472

(10th Cir. 1978)). As for the requirement that the party cite to "evidence" for each contention in its Rule 56.1 Statement, the court is permitted to rely solely on the materials that the party cites in deciding whether the party has carried its burden. *See, e.g., 24/7 Records, Inc. v. Sony Music Enter., Inc.*, 429 F.3d 39, 46 (2d Cir. 2005) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements.")).

Fed. R. Civ. P. 56(c) requires that each fact asserted in a Rule 56.1 statement must be followed by citation to evidence that would be admissible. *See also Pape v. Dircksen & Talleyrand Inc.*, No. 16 CV 5377, 2019 WL 1435882, at *1 (E.D.N.Y. Feb. 1, 2019), *report and recommendation adopted*, No. 16 CV 05377, 2019 WL 1441125 (E.D.N.Y. Mar. 31, 2019); *Feldman v. Sanders Legal Grp.*, 914 F. Supp. 2d 595, 596 n.2 (S.D.N.Y. 2012) ("Each of the parties' respective statements of material fact must be supported by a citation to admissible evidence in the record."). "[T]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) (quoting *Holtz*, 258 F.3d at 74). Further, courts within the Second Circuit have declined to consider facts within Rule 56.1 statements that contain legal arguments and conclusions. *See, e.g., Labarbera v. NYU Winthrop Hosp.*, No. 218 CV 6737, 2021 WL 980873, at *8 (E.D.N.Y. Mar. 16, 2021).

Both Plaintiff's Rule 56.1 Statement and Counterstatement contain factual assertions supported by citations to documents not contained within the record, or that amount to legal arguments. *See, e.g.,* Pl. 56.1 ¶¶ 1, 3, 4, 6, 9, 11; January 6, 2021 Affirmation of Ike Agwuegbo in Opposition to Defendants' Motion for Summary Judgment, DE [285-1], Exs. 16, 23, 53, 78, 81, 82, 84 (as cited in Pl. Opp. 56.1). Accordingly, the Court declines to consider those facts contained in these paragraphs of Plaintiff's 56.1 statements.

As to Plaintiff's Rule 56.1 counterstatement, a "plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Jessamy v. City of New Rochelle*, 292 F.Supp.2d 498, 504 (S.D.N.Y. 2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs*. PTE Ltd., 262 F.Supp.2d 134, 139 (S.D.N.Y. 2003)). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz*, 258 F.3d at 73 (citations omitted); *see also Gilani v. GNOC Corp.*, No. 04 Civ. 2935, 2006 WL 1120602, at *2 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Accordingly, in the exercise of its discretion, the Court will deem admitted only those facts in Defendants' Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Jessamy*, 292 F.Supp.2d at 504-05.

Case 2:15-cv-02279-JFB-SIL Document 304-6 Filed 05/18/21 Page 20 of 27 PageID #: 8359
Case 2:15-cv-02219-JFB-SIL Document 306 Filed 05/18/21 Page 217 of 224 PageID #:
18465

b. Plaintiff's Memoranda of Law

Plaintiff's memoranda of law violate Local Civil Rule 11.1(b), which sets forth
minimum standards for the legibility of documents filed in this District, including the
requirement that all documents be "double-spaced, except for headings, text in
footnotes, or block quotations" and "have at least one-inch margins on all sides."

Although the Court declines to deny Plaintiff's motion, or grant Defendants'
motion, solely on this basis, the Court advises Plaintiff's counsel to abide by the
formatting requirements of the Local Civil Rules in future filings with this Court, as
Judge Spatt did in a previous action involving Offor. *See Offor v. Equal Emp.
Opportunity Comm'n*, No. 15 CV3175, 2016 WL 3747593, at *2 (E.D.N.Y. July 11,
2016), *aff'd sub nom. Offor v. United States Equal Emp. Opportunity Comm'n*, 687 F.
App'x 13 (2d Cir. 2017); *see also P.G. ex rel. D.G. v. City Sch. Dist. of New York*, No.
14 CIV. 1207, 2015 WL 787008, at *1 n.2 (S.D.N.Y. Feb. 25, 2015) ("[I]t is clear that
Plaintiffs' counsel abused the page limit and violated the Local Rules by reducing the
line spacing to slightly less than double-spaced. This meant that rather than having
23 lines per page, Plaintiffs['] had 27 lines per page. In so doing, Plaintiffs' counsel
accorded themselves approximately 200 extra lines of text, or over 8.5 extra pages,
onto an already-enlarged page limit. Such amateurish tricks are inappropriate for
college term papers; they certainly have no place in federal court.").

ii.     *Plaintiff's FMLA Retaliation Claim*

Both parties cross-move for summary judgment on Plaintiff's sole remaining claim for FMLA retaliation.  As set forth below, the Court recommends granting Defendants' motion and denying Plaintiff's motion.

The FMLA grants eligible employees the right "to a total of 12 workweeks of leave during any 12–month period . . . to care for [a] spouse, or a son, daughter, or parent" who "has a serious health condition."  29 U.S.C. § 2612(a)(1)(C); *see Geromanos v. Columbia Univ.*, 322 F.Supp.2d 420, 426 (S.D.N.Y. 2004).  At the end of FMLA leave, the employee is entitled to reinstatement to her former position or an equivalent.  29 U.S.C. § 2614(a)(2) ("The taking of [FMLA] leave . . . shall not result in the loss of any employment benefit accrued prior to" leave.).

Section 2615(a)(1) of the FMLA states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."  29 U.S.C. § 2615(a)(1).  The regulations promulgated pursuant to the FMLA explain that "[i]nterfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave," 29 C.F.R. § 825.220(b), and that an employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave." *See* 29 C.F.R. § 825.220(c).

A plaintiff may advance a cognizable claim for FMLA violations pursuant to 29 U.S.C. § 2615(a) under two distinct theories:  "interference" and "retaliation."  *See Potenza v. City of New York*, 365 F.3d 165, 167 (2d Cir.2004).  Here, Plaintiff alleges

Case 2:15-cv-02279-JFB-SIL Document 304 Filed 05/18/21 Page 22 of 37 PageID #: 18467

a retaliation claim. As with other anti-discrimination causes of action, an FMLA retaliation claim is analyzed under the *McDonnell Douglas* three-step burden shifting framework. *See Roberts v. Health Ass'n*, 308 Fed.Appx. 568, 570 (2d Cir. 2009) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973)).

To prevail on an FMLA retaliation claim, the complaint must plead facts plausible to establish that: (1) plaintiff exercised rights protected under the FMLA; (2) plaintiff was qualified for the position; (3) plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Potenza*, 365 F.3d at 168. Assuming that a plaintiff has pled sufficient facts to satisfy the first three prongs of a prima facie retaliation claim, where a plaintiff fails to establish a "causal connection between the protected activity and the adverse employment action" the claim fails. *Perry v. NYSARC, Inc.*, 424 Fed.Appx. 23, 26 (2d Cir. 2011) (quoting *Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 130 (2d Cir. 1996)); *Potenza*, 365 F.3d at 168.

Retaliatory intent or a causal nexus between the protected activity and the adverse employment action can be established: (i) indirectly through a showing that the protected activity was followed closely by discriminatory treatment, commonly known as "temporal proximity"; (ii) indirectly through other evidence such as disparate treatment of similarly-situated employees; or (iii) directly through a showing of evidence of retaliatory animus toward plaintiff by defendant. *Carr v. WestLB Admin., Inc.*, 171 F.Supp.2d 302, 309 (S.D.N.Y.2001) (citing *DeCintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987)). The burden then

shifts to the defendant to state a legitimate, non-discriminatory reason for the adverse employment action. *See Tomici v. N.Y.C. Dep't of Educ.*, 910 F.Supp.2d 472, 490 (E.D.N.Y. 2012) (citing *Farias v. Instructional Sys.*, 259 F.3d 91, 98 (2d Cir. 2001)). "The employer's burden is merely one of production, not persuasion." *Id.* (internal quotation marks and citations omitted). If the defendant meets its burden of production, the burden shifts back to the plaintiff "to establish by a preponderance of the evidence that the employer's stated reason was merely a pretext for discrimination." *Id.* (internal quotation marks and citations omitted).

The parties do not dispute that Plaintiff was qualified for her position at MMC or that she experienced an adverse employment action. As such, the Court analyzes only whether Offor exercised her rights under the FMLA, and whether the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. The Court concludes that Plaintiff fails to prove that she exercised her rights protected by the FMLA and, on this basis, recommends granting Defendants' motion for summary judgment.

     a.  Whether Plaintiff Exercised Her Rights Protected Under the FMLA

Plaintiff did not provide sufficient notice to Defendants that she was or may have been entitled to FMLA leave to visit her adult daughter, and therefore did not exercise rights protected under the FMLA.

Courts in the Second Circuit have held that proving entitlement to FMLA leave is a necessary prerequisite to a valid retaliation claim. *See, e.g., Higgins v. NYP Holdings, Inc.*, No. 10 Civ. 8217, 836 F.Supp.2d 182, 194–95, 2011 WL 6083702, at

Case 2:15-cv-02211-JPS-ILSI Document 406-11 FiFiled 05/13/18 Page 2ge 257 of 28geFage ID 8363
18469

*10 (S.D.N.Y. Dec. 7, 2011); *Milne v. Navigant Consulting*, No. 08 Civ. 8964, 2010 WL 4456853, at *10 n.19 (S.D.N.Y. Oct. 27, 2010) ("It appears clear that in order for a plaintiff to 'exercise rights protected under the FMLA,' the plaintiff must demonstrate she actually has a valid claim to FMLA benefits."); *Lee v. Heritage Health & Hous., Inc.*, No. 07 Civ. 10628, 2009 WL 3154314, at *14 n.14 (S.D.N.Y. Sept. 30, 2009) ("If Plaintiff cannot show that she had a serious health condition, entitling her to FMLA leave, then, *a fortiori*, she cannot show that she was retaliated against for exercising rights that were, in fact, protected by the Act.") (emphasis in original); *Brown v. The Pension Boards*, 488 F.Supp.2d 395, 410 (S.D.N.Y.2007) (retaliation claim failed because employee "did not enjoy FMLA protection").

A plaintiff need not *explicitly* request time off pursuant to the FMLA to put an employer on notice that she may be entitled to FMLA leave, but must provide sufficient notice to make her employer aware that she may need leave protected by the statute. According to the regulation concerning notice:

> An employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request. Depending on the situation, such information may include . . . whether the employee or the employee's family member is under the continuing care of a health care provider . . . or if the leave is for a family member that the condition renders the family member unable to perform daily activities. . . . When an employee seeks leave for the first time for a[n] FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA. . . . The employer will be expected to obtain any additional required information through informal means.

29 C.F.R. §§ 825.303(b); *see also id.* § 825.302(c) (with respect to foreseeable needs, "the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought"); *id.* § 825.300(b)(1) ("[W]hen

the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances.").

Accordingly, if an eligible employee provides sufficient information for the employer to reasonably determine that the requested leave *may* qualify for FMLA protection, the employer *must* specify whether, and what, additional information is required for a determination of whether the employee is entitled to such leave. *See Coutard v. Mun. Credit Union*, 848 F.3d 102, 110–11 (2d Cir. 2017) ("[A]n employee need only provide the employer with sufficient information to understand that the circumstances indicate that the FMLA 'may' apply. . . .The employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee *may* be in need of FMLA leave.") (emphasis in original).

As the only type of FMLA leave relevant to Plaintiff, the FMLA entitles an eligible employee to take leave to "care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). "Son or daughter" is defined to include only children under 18 years of age or those over 18 who are incapable of self-care because of a mental or physical disability. *See* 29 U.S.C. § 2611(12)(A)-(B).

Plaintiff did not provide Defendants with notice that she was in any way entitled to FMLA leave when she requested vacation to be with her adult daughter for the birth of her grandchild. As her daughter was over 18, Offor was required to inform Defendants that her daughter was unable to care for herself because of a

mental or physical handicap in order to be entitled to FMLA leave.  Instead, the parties do not dispute that Offor and her attorney repeatedly requested <u>vacation</u> time to "visit" her daughter and be with her during her childbirth.  *See* October 28, 2020 Declaration of Swarna Devarajan, M.D. in Support of Defendants' Motion for Summary Judgment, DE [284-3], ¶¶ 18, 20, 27, 29; December 5, 2019 Deposition of Doctor Chinwe Offor ("Offor Tr."), Guilfoyle Dec. Ex. D, DE [284-9], at 124-39, 151-55; Guilfoyle Dec. Ex. T, DE [284-25].  Offor requested the vacation because her "second daughter is due to deliver her first baby and she will need [her]."  She never identified any health concerns with this request, and while her daughter may have had health conditions related to her pregnancy, Offor never claimed or made any statement in her request indicating that her daughter suffered from a physical or mental handicap, or any other health problems, which would trigger Defendants' obligation to request further information.  *See* Offor Tr. at 124-39, 151-55; *Cruz v. Publix Super Markets, Inc.*, 428 F.3d 1379, 1384–86 (11th Cir. 2005) ("[Plaintiff] did not provide [Defendant] with [FMLA] notice, but merely expressed her desire to assist her adult daughter during the birth of her grandchild, a condition which the FMLA does not cover.").  Accordingly, Plaintiff was not entitled to FMLA leave, and in turn did not exercise any rights under the statute, and there are no circumstances giving rise to an inference of unlawful retaliatory intent.  As a result, summary judgment in Defendants' favor is appropriate.[4]

---

[4] In reaching this conclusion, the Court notes that Plaintiff challenges the authenticity and veracity of several documents Defendants cite in their papers regarding MMC policies, instances of Offor's behavioral and clinical shortcomings and meetings Defendants held with Plaintiff as to complaints and issues raised.  *See* Pl. Mem. at 26-28.  As the Court concludes that Plaintiff was not eligible for

Based on the foregoing analysis, the Court recommends that summary judgment in Defendants' favor be granted, and that Plaintiff's cross-motion for summary judgment be denied.

## IV.   Conclusion

For the reasons set forth above, the Court respectfully recommends:   (i) denying Plaintiff's motions to strike; (ii) granting Defendant's motion for summary judgment; and (iii) denying Plaintiff's motion for summary judgment.

## V.   Objections

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below.   Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report.   Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:      Central Islip, New York
            May 11, 2020                         /s/ Steven I. Locke
                                                 STEVEN I. LOCKE
                                                 United States Magistrate Judge

FMLA leave and therefore never exercised her rights under the statute, it declines to address these arguments.

# EXHIBIT J

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
DOCTOR CHINWE OFFOR,

                                    Plaintiff,          **ORDER ADOPTING REPORT
                                                        AND RECOMMENDATION**

 - against -                                            2:15-cv-2219 (DRH) (SIL)

MERCY MEDICAL CENTER, CATHOLIC
HEALTH SERVICES OF LONG ISLAND,
DOCTOR SWARNA DEVARAJAN, and
DOCTOR JOHN REILLY

                                    Defendants.
--------------------------------------------------------------X

**APPEARANCES**

**IKE AGWUEGBO & CO. P.C.**
Attorney for Plaintiff
575 Lexington Avenue, 4th Floor
New York, NY 10022
By:    Ike Agwuegbo, Esq.

**NIXON PEABODY LLP**
Attorneys for Defendants
50 Jericho Quadrangle, Suite 300
Jericho, NY 11753-2728
By:    Tara Eyer Daub, Esq.
       Aaron F. Nadich, Esq.


**HURLEY, Senior District Judge:**


## INTRODUCTION

Presently before the Court is the Report and Recommendation of Magistrate

Judge Steven I. Locke, dated May 11, 2021 (the "R&R") [DE 304], recommending that

the Court (i) deny Plaintiff Dr. Chinwe Offor's motions to strike evidence in the

captioned Defendants'[1] summary judgment papers as inadmissible expert materials, (ii) deny Plaintiff's motion for summary judgment, and (iii) grant Defendants' cross-motion for summary judgment. Plaintiff filed objections pursuant to Federal Rule of Civil Procedure 72 on May 18, 2021, to which Defendants responded on June 1, 2021. For the reasons stated below, Plaintiff's objections are overruled and the R&R is adopted in full. Plaintiff's Motion to Strike and Motion for Summary Judgment are both denied, and Defendants' Motion for Summary Judgment is granted.

## BACKGROUND

The Court adopts the R&R's detailed Background Section, R&R at 2–14, over Plaintiff's objections, *see infra* Discussion Section II (overruling the objections raised at pages 15 through 27 in Plaintiff's Objections to the Report and Recommendations ("Obj.") [DE 305]). The Background section in this Order contains only the information necessary to understand the basis for Judge Locke's recommendations and the objections thereto.

### A.    Relevant Facts

MMC, a nonprofit hospital member of CHSLI, employed Plaintiff as a full-time neonatologist between 2000 and 2014. R&R at 2–3. As of 2012, there were only three full-time neonatologists at MMC: Plaintiff, Dr. Niti Rayjada, and the Chairwoman of

---

[1]    The captioned Defendants are: Mercy Medical Center ("MMC"), Catholic Health Services of Long Island ("CHSLI"), Doctor Swarna Devarajan ("Dr. Devarajan") and Doctor John P. Reilly ("Dr. Reilly," and together with MMC, CHSLI and Dr. Devarajan, "Defendants").

the Department of Pediatrics and the Director of Neonatology and Newborn Services Dr. Swarna Devarajan. *Id.* at 3. Dr. Rayjada was scheduled for a twelve-week maternity leave following the anticipated birth of her child in December 2012. *Id.*

In June 2012, Plaintiff voiced to Dr. Devarajan the possibility of taking vacation in late January 2013 – when Plaintiff's twenty-nine-year-old daughter, who lived in Chicago, expected to give birth to her first child. *Id.* at 3–4. As stated in the R&R, Plaintiff "maintains her daughter suffered from serious health conditions during and after her pregnancy" but "did not inform [Dr.] Devarajan of any then-current or anticipated health issues, disabilities or medical needs her daughter had, or any possibility that her daughter would not be able to care for herself after labor." *Id.* at 4–5. Dr. Devarajan did not take any action with respect to Plaintiff's comments; MMC's policy since 2010 required neonatologists to request vacation time in writing. *Id.* at 3–5; *see* Defs. Local Rule 56.1 Statement ¶¶ 26–30 ("Defs. 56.1") [DE 284-2]. In July 2012, Dr. Devarajan limited the remaining neonatology "physicians' ability to take vacation between late 2012 and early 2013," in light of Dr. Rayjada's expected absence. R&R at 5–6.

In August 2012, Dr. Devarajan instituted an internal review of Plaintiff's clinical management following concerns expressed by Dr. Richard Koppel, the Director of the Regional Perinatal Center at Cohen Children's Medical Center. *Id.* An external review followed the internal review, with three practitioners at institutions unaffiliated with MMC and CHSLI reviewing Plaintiff's medical care. *Id.* at 6.

Case 2:15-cv-02219-DRH-SIL Document 313 Filed 09/01/21 Page 35 of 36 PageID #: 18617

In September 2012, Plaintiff emailed Dr. Devarajan to request time off in February 2013. *Id.* Her email, in relevant part, reads: "I need vacation in February because my daughter is due to deliver her first baby and she will need me." Ex. T [DE 284-25] to Decl. of Justin A. Guilfoyle ("Guilfoyle Decl.") [DE 284-1]; *see* R&R at 5. The request was not granted. R&R at 5.

In November 2012, Plaintiff hired an attorney to help her get permission to take time off. *Id.* In December 2012, the neonatology department held meetings to address the concerns raised by those who reviewed Plaintiff's clinical management. *Id.* at 5–7. Later that month, on the same day—December 27, 2012—Plaintiff (i) received permission to take leave in February 2013 and (ii) was placed on a three-month Focused Practitioner Performance Evaluation ("FPPE") to further assess her clinical "skills or knowledge" and to "determine what additional steps, if any, were appropriate." *Id.*

Three months, however, did not suffice to generate enough data to evaluate Plaintiff, and MMC kept the FPPE ongoing. *Id.* During the FPPE review, Defendants continued to hold several "meetings with [Plaintiff] and memorialized the complaints and concerns raised [regarding Plaintiff], as well as meetings held, in written letters and notes to file." *Id.* at 7–8.

In June 2014, MMC held a Peer Review meeting at which it was "determined that [Plaintiff] failed to meet the appropriate standard of care." *Id.* at 8–9. MMC and CHSLI terminated Plaintiff on August 21, 2014 and summarily suspended her clinical privileges "as a result of her standard of care issues, unprofessionalism, lack

of respect, insubordination, failure to improve and failure to adhere to departmental

policies, procedures and guidelines." *Id.* at 9.

### B. Procedural History

Plaintiff commenced this action on April 20, 2015. R&R at 11. On March 10,

2016, then-presiding District Court Judge Arthur D. Spatt granted Defendants'

motion to dismiss, a decision which, on April 12, 2017, the Second Circuit affirmed

except as to Plaintiff's Family Medical Leave Act ("FMLA") retaliation claim and the

supplemental state law claims over which the Court declined to exercise jurisdiction.

R&R at 11–13. Judge Spatt dismissed the state law claims on October 28, 2017, [DE

65], leaving only the FMLA retaliation cause of action.

On June 25, 2016, Judge Spatt sanctioned Plaintiff's counsel for his repeated

failure to redact confidential information in his filings. [DE 47]. In October 2019,

Judge Spatt warned Plaintiff's counsel "to exercise significantly more discretion

regarding discovery motion practice" as a result of Plaintiff's numerous motions for

sanctions and to strike – each premised upon Defendants' alleged spoliation and

fraud on the court. [DE 175]. Since the warning, the docket reflects Plaintiff filed

seven additional motions for sanctions, motions to strike, or motions to reconsider

denials of same, including (i) a motion for sanctions filed not two months after Judge

Spatt's warning, [DE 180], and (ii) two motions for sanctions filed within five days of

each other, *see* [DE 259] (dated Dec. 1, 2020); [DE 264] (dated Dec. 6, 2020). United

States District Court Judge Sandra J. Feuerstein, who presided over the matter

between June 2020 and April 2021, and Magistrate Judge Locke, who presided over

the matter since its inception, each reminded Plaintiff's counsel of his obligation to follow Court orders and rules in his motion practice. Order dated Jan. 6, 2021 (Feuerstein, J.); R&R at 20 (Locke, M.J.).

The parties cross-moved for summary judgment on October 28, 2020. [DEs 283, 284]. Plaintiff moved to strike evidence in Defendants' summary judgment papers on November 30, 2020, [DE 258], and December 4, 2020, [DE 263]. Judge Feuerstein referred the motions for summary judgment and the motions to strike to Judge Locke on January 22, 2021. *See* Order dated Jan. 22, 2021. Judge Locke issued his R&R on May 11, 2021. [DE 304]. Judge Locke recommended granting Defendants' motion for summary judgment and denying Plaintiff's motion for summary judgment because "Plaintiff did not provide sufficient notice to Defendants that she was or may have been entitled to FMLA leave to visit her adult daughter." R&R at 23. Judge Locke further recommended denying Plaintiff's motions to strike because he "did not rely on any of the[] documents in reaching its conclusion on the arguments for summary judgment." *Id.* at 17.

Plaintiff objected to the R&R pursuant to Federal Rule of Civil Procedure 72 on May 18, 2021, [DE 305], and Defendants responded on June 1, 2021, [DE 308]. The matter was reassigned to the undersigned on June 2, 2021.

## LEGAL STANDARD

Federal Rule of Civil Procedure 72(b) provides that when a magistrate judge issues a report and recommendation on a matter "dispositive of a claim or defense of a party," the district court judge shall make a *de novo* determination of any portion

of the magistrate judge's disposition to which specific written objection has been made.  Fed. R. Civ. P. 72(b).

**DISCUSSION**

The Court addresses Plaintiff's objections in the order in which she presents them.

**I.      Fraud on the Court, Ipso Facto, as a Claimed Basis to Grant Summary Judgment to Plaintiff**

Plaintiff objects to the R&R's failure to recommend the Court grant summary judgment to Plaintiff as a sanction for Defendants' submission and reliance on purportedly "forged, fabricated and altered documents."  Obj. at 8–9.  Judge Locke "decline[d] to address" her concerns because the documents related to the retaliatory intent prong of her FMLA claim – an issue he did not reach.  R&R at 26 n.4.  Plaintiff contends "the relevancy of the fraudulent materials" is "of no consequence" and the documents' falsity alone suffices as a basis to default Defendants.  Obj. at 9 (citing *Pope v. Fed. Exp. Corp.*, 974 F.2d 982 (8th Cir. 1992); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989); *Synanon Found., Inc. v. Bernstein*, 517 A.2d 28 (D.C. 1986)).  In that sense, Plaintiff says, Judge Locke erred in declining to analyze them.

"The submission of false documents is clearly sanctionable."  *Bravia Cap. Partners Inc. v. Fike*, 2015 WL 1332334, at *18 (S.D.N.Y. Mar. 25, 2015).  But fraud on the court "will not lie where the alleged misconduct merely consists of 'an advocate's view of the evidence, drawing all inferences favorable to [his client] and against the [adversary].'"  *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 407 (S.D.N.Y. 2010) (alterations in original) (quoting *Intelli–Check, Inc. v. TriCom Card*

*Techs., Inc.*, 2005 WL 3533153, at *12 (E.D.N.Y. Dec. 22, 2005)). Plaintiff thus bears the heavy burden of proving, by "clear and convincing evidence," that Defendants perpetrated fraud on the court. *Bravia Cap. Partners Inc.*, 2015 WL 1332334, at *3 (quoting *Passlogix, Inc.*, 708 F. Supp. 2d at 393). Defendants have "no obligation here to 'disprove' fraud." *Bullock v. Reckenwald*, 2016 WL 5793974, at *19 (S.D.N.Y. Aug. 24, 2016), *report and recommendation adopted*, 2016 WL 5719786 (S.D.N.Y. Sept. 30, 2016).

Clear and convincing evidence "produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established" and "enable[s] the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Funk v. Belneftekhim*, 2019 WL 7603139, at *3 (E.D.N.Y. Jan. 17, 2019) (Scanlon, M.J.) (internal quotation marks omitted) (quoting *Esposito v. Suffolk Cnty. Cmty. Coll.*, 2019 WL 1044099, at *2 (E.D.N.Y. Mar. 4, 2019)). "In other words, the proof must be 'highly probable' and 'leave[] no substantial doubt.'" *Esposito*, 2019 WL 1044099, at *2 (alteration in original) (quoting *Waran v. Christie's Inc.*, 315 F. Supp. 3d 713, 718–19 (S.D.N.Y. 2018)). Indeed, the Second Circuit has noted in passing that "[p]erjury and fabricated evidence are evils that can and should be exposed at trial." *Gleason v. Jandrucko*, 860 F.2d 556, 560 (2d Cir. 1988) (parenthetically quoting *Great Coastal Express, Inc. v. Int'l Brotherhood of Teamsters*, 675 F.2d 1349, 1357 (4th Cir. 1982)); *A.I.A. Holdings, S.A. v. Lehman Bros.*, 2002 WL 1271722, at *2 (S.D.N.Y. May 29, 2002) (finding no fraud on the court even though

"defendants have made some showing that the two documents submitted by plaintiffs in support of their motion for summary judgment may well have been doctored").

While Plaintiff objects to virtually every piece of evidence not in her favor as fraudulent, *see* R&R at 2–11, she specifically raised objections as to Exhibits II, PP, AA, SS, Z, X, HH to the Declaration of Justin A. Guilfoyle in Support of Defendants' Motion for Summary Judgment[2] and Exhibit H to the Declaration of Dr. Swarna Devarajan dated January 22, 2020,[3] Obj. at 8–9, 19, 21, 23.[4] The Court analyzes each exhibit in the same order as they appear in Plaintiff's Objection.

The Court harbors substantial doubt that Defendants forged any of these exhibits and cannot find clear and convincing evidence of fraud.

## A. Exhibit II

Exhibit II is an October 28, 2013 typewritten note authored by Dr. Devarajan. Ex. II [DE 284-40] to Guilfoyle Decl. Plaintiff correctly points out an inconsistency between that date and the dates listed in the body of the note. Specifically, the note "details events that occurred over one month later"—on "11/25/2013" and "11/28/2013"—*i.e.*, events that had not yet transpired as of October 28, 2013. Obj. at 10. Plaintiff persuasively argues the events likely did not occur in November. For

---

[2]     Exs. II, PP, AA, SS, Z, X, HH [DEs 284-40, -47, -32, -50, -31, -29, -39] to Guilfoyle Decl.

[3]     Ex. H [DE 187-8] to Decl. of Dr. Swarna Devarajan dated Jan. 22, 2020 ("Devarajan Sanctions Decl.") [DE 187]; *see also* Ex. 28 at 838–46 [DE 288] to Aff. of Ike Agwuegbo ("Agwuegbo Aff.") [DE 285-1].

[4]     While Plaintiff does not formally analyze Exhibits X, HH, and H in the same section as she does the others, she raises their allegedly fraudulent nature immediately thereafter. *See* Obj. at 19, 21.

example, "11/28/2013" was Thanksgiving – a Thursday, and not a Monday as written in the note.  *Id.*  And, as Plaintiff's evidence reflects, Dr. Devarajan was not on-call in November 2013.  *See* Ex. 17 [DE 286-13] to Agwuegbo Aff.

Even so, the Court does not believe the note is fraudulent.  Like other courts have held, "inaccuracies about the date[s] . . . do not convince the Court that [a declarant] is lying."  *E.g.*, *Passlogix*, 708 F. Supp. 2d at 402.  They may reflect honest mistakes.  For example, here, if the events occurred in October 2013, and Dr. Devarajan confused October for the eleventh month, everything lines up.  Defs. Reply in Support of Summary Judgment at 17 ("Defs. Reply") [DE 296-1].  October 28, 2013 was indeed a Monday.  A revised schedule in Plaintiff's evidence demonstrates Dr. Devarajan's on-call responsibility for October 2013.  *See* Ex. 17 at 0448 to Agwuegbo Aff.  And whether the events occurred in October or November 2013 does not materially impact the issues at bar, which further undermines an inference of fraud. *See* Obj. at 10.

### B.  Exhibit PP

Exhibit PP is a December 19, 2013 letter on Mercy Medical Center letterhead from Dr. Devarajan to Plaintiff.  Ex. PP [DE 284-47] to Guilfoyle Decl.  Plaintiff deems it fraudulent for two reasons.  First, Dr. Devarajan "falsely claimed" in Exhibit PP that "she gave a letter to [Plaintiff] on June 15th, 2013," a Saturday, a day of the week on which the hospital has only one doctor on-call.  Obj. at 11.  Second, it is

"identical" to another document "dated December 20, 2013."[5]  *Id.*  Dr. Devarajan's declaration corroborates Plaintiff's reading; she avers "I did not present [Plaintiff] with a letter on June 15, 2013."  Devarajan Sanctions Decl. ¶¶ 19–21.

But Dr. Devarajan's mistake, without more, does not make fraud highly probable.  Dr. Devarajan owns up to her "inadvertent error."  *See id.*  She explains that she drafted a letter to Plaintiff on June 15, 2013, submitted it to the Human Resources Department, and ultimately delivered the letter on July 1, 2013.  *Id.*  In writing Exhibit PP, Dr. Devarajan "unintentionally and mistakenly" referenced the date of the first draft.  *Id.*; *see* Defs. Reply at 18–19.  Likewise, the differences between the December 19 and 20 letters are too minor to suggest fraud – the latter simply adds the word "previously" and the first and last names of certain doctors.  *Compare* Ex. PP to Guilfoyle Decl. *with* [DE 200] at 25 of 34.  "While there is evidence of multiple drafts of memoranda and incorrect dates on documents, none of those variances allow an inference of fraud."  *E.g.*, *Oliver v. New York State Police*, 2020 WL 1989180, at *50 n.53 (N.D.N.Y. Apr. 27, 2020).

The Court offers no opinion on Dr. Devarajan's credibility nor the weight her testimony and documentary evidence deserve.  But it should be noted that Defendants indicate, and Plaintiff does not dispute, that Plaintiff failed to take any depositions in the case, eschewing the opportunity to ask questions of Defendants and

---

[5]     The December 20, 2013 version can be viewed at Docket Entry 200, page 25 of 34.

their witnesses as to their documents' veracity. Defs. 56.1 at 2 n.1. Plaintiff has failed to establish that Exhibit PP is fraudulent under the attendant circumstances.

### C.    Exhibit AA

Exhibit AA is an email dated October 25, 2012 from Dr. Richard J. Schanler to Dr. Devarajan. Ex. AA [DE 284-32] to Guilfoyle Decl. Plaintiff traces fraud to Dr. Schanler's email address. Dr. Schanler sent the email from "rschanle@nshs.edu" rather than "schlaner@nshs.edu" – the latter is (according to Plaintiff) his "correct email address" as shown in his signature block. Obj. at 12.

Exhibit AA does not give the Court a firm conviction that fraudulent conduct occurred. Plaintiff's argument stems from her experiences communicating with Dr. Schanler. Decl. of Dr. Chinwe Offor ¶¶ 38–39 ("Offor Decl.") [DE 285-3]. She states, "I do not believe that Dr. Schanler wrote or sent [the email at Exhibit AA]. . . . I have communicated several times with Dr. Schanler . . . . Dr. Richard Schanler's correct [e]mail address is schanler@nshs.edu." *Id.* But that does not rule out Dr. Schanler having two email addresses, even if he communicated with Plaintiff solely through one. Defs. Reply at 20.

The Court also takes *sua sponte* judicial notice of a neonatology textbook listing Dr. Richard J. Schanler,  with a "rschanle@nshs.edu" email address, as a contributor. *See* Evidence-Based Handbook of Neonatology at xvii (William Oh, ed., 1st ed. 2011);[6]

---

[6]    World Scientific, the publisher of the Evidence-Based Handbook of Neonatology, makes a scan of the List of Contributors freely available online at its website: https://www.worldscientific.com/doi/epdf/10.1142/9789814313476_fmatter (last accessed Sept. 1, 2021). So too does Amazon.com, via its "Look Inside" feature:

*see also* Defs. Reply at 20 ("[A] simple search on the Internet confirms that Dr. Schanler had more than one email address . . . ."). The judicial notice extends solely to the textbook's linking of Dr. Schanler's to the purportedly fake email address and not as to the truth of whether Dr. Schanler's email address was actually "rschanle@nshs.edu." *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008); *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 2006 WL 3771013, at *2 (S.D.N.Y. Dec. 18, 2006) ("The Court can . . . take judicial notice of the fact that [] advertisements were published in certain publications and on certain dates, but it cannot make factual inferences based on the content of those advertisements that it could not otherwise make pursuant to its power under Fed. R. Evid. 201 to take notice of widely known and indisputable facts."). Its mere existence—an unrelated third-party's publication, before this matter arose, of a book listing the false Dr. Schanler email address—leads the Court to disagree with Plaintiff's assessment of fraud.

### D.    Exhibit SS

Exhibit SS is Dr. Devarajan's February 5, 2014 typewritten note memorializing a meeting called by Dr. Aaron Glatt. Ex. SS [DE 284-50] to Guilfoyle Decl. It is fabricated, says Plaintiff, because Dr. Glatt's email recounting the same meeting demonstrates he "never made the statements credited to him by Dr. Devarajan." Obj. at 12 (emphasis removed). Specifically, Dr. Glatt considered his statements "not specific but general in nature regarding appropriate direct verbal

---

https://www.amazon.com/Evidenced-Based-Handbook-Neonatology-William-Oh/dp/9814313467 (last accessed Sept. 1, 2021).

communication regarding patient care issues, how to address quality concern, chain of command, etc." Ex. 80 [DE 292-28] to Agwuegbo Aff. Dr. Devarajan, by contrast, wrote Dr. Glatt "stated the expectation that emails discussing patient information that are damaging must stop. He stated that any more such emails and he will take further action including suspension. He supports the Chair of the department. All quality concerns must be brought forth through Peer Review and PI process within the department." Ex. SS to Guilfoyle Decl.

In the Court's view, Dr. Glatt's and Dr. Devarajan's recollections are not irreconcilable. *See* Defs. Reply at 21. Perhaps Dr. Devarajan's notes reflect statements more "specific" than Dr. Glatt's characterization of the same would suggest. The divide between "general" and "specific" here is not great enough to indicate fraud.

### E.    Exhibit Z

Exhibit Z is a "MIDAS report"—a "Risk Management Worksheet" from CHSLI's electronic incident reporting system. Ex. Z [DE 284-31] to Guilfoyle Decl. The second page lists the "General Event Data" and a comment entry dated August 20, 2012. *Id.* The entry begins: "There have been multiple issues in the NICU of vent and HFOV mismanagement by Dr. Offor with many different staff members on both shifts." *Id.*

Plaintiff contends this document reflects Dr. Devarajan's "initial attempt" to allege clinical mismanagement against Plaintiff. Obj. at 13–15. The report is a forgery, Plaintiff argues, because (i) it fails to include Plaintiff's allegations of

mismanagement against Drs. Devarajan and Rayjada, (ii) Plaintiff was not working on August 20, 2012, (iii) a Pediatric Infectious Disease Specialist "endorsed [Plaintiff's] management of the baby," and (iv) the treatment plan "was made by that" specialist and "followed and continued by all the other" doctors in the neonatal unit. *Id.* (citing Exs. 82, 83 [DEs 293-1, -2] of Agwuegbo Aff.). Plaintiff also calls into question the report's timing – generated after Dr. Koppel raised concerns about Plaintiff's clinical management and not "when the alleged clinical mismanagement occurred." *Id.* Lastly, Plaintiff alleges Defendant's counsel lied to the Court at an April 23, 2020 conference by stating "such a document never existed." *Id.*

The conflicting evidence in the record does not clearly and convincingly reveal fraud. The basis for Plaintiff's objection here is Plaintiff's declaration dated January 6, 2021, from which the objections were copied verbatim. *Compare* Offor Decl. ¶¶ 30–35, *with* Obj. at 13–15. In any event, Plaintiff's objections "are an advocate's view of the evidence, drawing all inferences favorable to [her] and against [Defendants] in this action." *See Intelli-Check, Inc.*, 2005 WL 3533153, at *12. Her disagreement with the report's substance does not prove fraud. For example, Plaintiff does not provide a foundation for why she believes the MIDAS report should contain her allegations against Drs. Devarajan and Rayjada. She likewise fails to explain why the chronology of events is suspicious: Dr. Koppel expressed concern about Plaintiff to Dr. Devarajan, who then instituted the internal review that generated the MIDAS report. Defs. 56.1 ¶¶ 65–66 (citing Decl. of Dr. Swarna Devarajan dated Oct. 28, 2020 ¶¶ 37–39 ("Devarajan SJ Decl.") [DE 284-3]). If Plaintiff contends that MMC's course

of practice was to generate MIDAS reports at the time of the inciting events and never thereafter, she has offered insufficient proof in support.

The Court does not read the transcript of the April 23, 2020 conference as revealing lies perpetrated by Defense counsel. The conference addressed, *inter alia*, Plaintiff's Motion to Compel the MIDAS reports for Patients ## 1, 2, 3, 5, 11, 12, and 13.[7] *See* Tr. at 9:13–10:15, Ex. 48 [DE 290-3] to Agwuegbo Aff.; *see* Pl. Mot. to Compel at 2–3 [DE 196]. Defense counsel affirmed that MIDAS reports for these patients did not exist. Tr. at 9:13–10:15, Ex. 48 to Agwuegbo Aff.; Defs. Ltrs. dated Feb. 19 and 20, 2020, Ex. 31 [DE 289-2] to Agwuegbo Aff. Exhibit Z's MIDAS report, on the other hand, pertains to Patient # 4, whose reports Plaintiff did not move to compel.[8] *See* Defs. Reply at 20. Plaintiff herself recognizes as much. Obj. at 11 ("This Report [Exhibit Z] was generated in alleged connection to the treatment of Patient # 4."); *see* Pl.'s Counter Statement of Undisputed Material Facts ¶ 66 ("Pl. Counter 56.1") [DE 285-2]. As such, Defense counsel's representations at the April 23, 2020 conference do not prove Exhibit Z is fabricated.

### F. Exhibit X

Exhibit X is Dr. Devarajan's handwritten Neonatology Performance Improvement note dated August 15, 2012 regarding Plaintiff's management of a particular patient. Ex. X [DE 284-29] to Guilfoyle Decl. Plaintiff asserts "[n]o such

---

[7]    In this action, patients are identified by number to protect their personally identifiable information.

[8]    Defendants state they produced to Plaintiff this MIDAS Report in September 2018. Defs. Reply at 20.

meeting or counseling session occurred" because "there would have been at least [a] [MIDAS] Report or Sentinel Event Report made at the time." Obj. at 21. Further, as the note "memorializ[es] [] a [c]ounseling session," Plaintiff argues, Dr. Devarajan should have filled out a counseling report with both her and Plaintiff's signatures. *Id.* at 19.

The Court fails to find clear and convincing evidence of fraud in Exhibit X. Dr. Devarajan avers she prepared this handwritten note contemporaneously with her meeting with Plaintiff. Devarajan SJ Decl. ¶¶ 34–40. Plaintiff's characterization of this exhibit as a counseling memorandum follows from unsupported speculation: "Exhibit X looks like an attempt by Dr. Devarajan to provide a memorialization of a [c]ounseling session." Obj. at 19. Moreover, Dr. Devarajan states the incident *did* result in a MIDAS report – one dated August 20, 2012, *i.e.*, Exhibit Z. Devarajan SJ Decl. ¶ 38; *see supra* Discussion Section I.E.

### G. Exhibit HH

Exhibit HH is a letter dated July 1, 2013 from Dr. Devarajan to Plaintiff with the subject "Unacceptable Behavior." Ex. HH [DE 284-39] to Guilfoyle Decl. Plaintiff asserts the underlying meeting at which Defendants allegedly gave her the letter never occurred and that Dr. Devarajan should have memorialized the letter in a counseling report with her and Plaintiff's signatures. Obj. at 21. This Objection fails to cite any record evidence, and thus fails to clearly and convincingly demonstrate fraud, as opposed to a Plaintiff-favorable view of the evidence. *Id.*; *see Intelli-Check,*

*Inc.*, 2005 WL 3533153, at *12. Without evidence beyond Plaintiff's averments, the Court does not view Exhibit HH as proof of fraud on the Court.

### H. Exhibit H

Defendants did not rely on Exhibit H in support of the at-issue summary judgment motion; instead, it was cited in their opposition to Plaintiff's Motion for Sanctions dated December 5, 2019. Ex. H [DE 187-8] to Devarajan Sanctions Decl.; *see also* Ex. 28 at 838–46 Agwuegbo Aff. (attaching a copy of Defendants' sanctions opposition papers). Exhibit H is the Neonatology Peer Review Committee Minutes dated June 17, 2014 for a meeting held "on Wednesday June 17, 2014." Plaintiff states the document is fraudulent because June 17, 2014 was a Tuesday and because the minutes incorrectly "concluded that [Plaintiff's] clinical management failed to meet the Standard of Care." Obj. at 23–24. According to Plaintiff, the "truth could have easily been verified by the Court taking a look at Patient's Chart and Medical Record" exhibits among her papers. *Id.*

Plaintiff is correct June 17, 2014 was a Tuesday. That said, this mistake of one day is insufficient to render Exhibit H fraudulent. *See, e.g.*, *Oliver*, 2020 WL 1989180, at *50 n.53. And Plaintiff's reading of the medical record to discredit Exhibit H is closer to advocacy than proof of fraud. *Passlogix, Inc.*, 708 F. Supp. 2d at 407.

As none of the exhibits amount to fraud on the Court, Plaintiff's objection to the R&R's failure to recommend the Court enter a default judgment against Defendants is overruled. It bears repeating: Judge Locke correctly declined to

consider and to address these exhibits as they do not touch upon the issue of FMLA notice, which was the basis for his summary judgment recommendations.  R&R at 26 n.4.

## II.    The R&R's Recitation of Facts

Plaintiff objects to the R&R's Background and Relevant Facts sections as "ma[king] it seem as if the Plaintiff was being unreasonable in her request for vacation."  Obj. at 15.  To the extent this objection relies on Judge Locke's citation to allegedly "forged, fabricated and altered documents" or "expert reports," *id.* at 15, 19–20, it is overruled, *see supra* Discussion Section I (fabricated documents); *see infra* Discussion Section VI (expert reports).

At the outset, the Court notes that Plaintiff's failure to comply with Local Rule 56.1 led Judge Locke (i) to "decline to consider" Plaintiff's assertions "supported by citations to documents not contained within the record[] or that amount to legal arguments," (ii) to "admit[] only those facts in Defendants' Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record," and (iii) to "ignore[] any facts submitted in violation of Local Civil Rule 56.1."  *See* R&R at 2 n.1, 17–19.  Judge Locke did not abuse his discretion in doing so.  *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 72–73 (2d Cir. 2001) (observing the court's "broad discretion to determine whether to overlook a party's failure to comply with local court rules" in the context of Local Rule 56.1).  The Court here nonetheless endeavors to "conduct an assiduous review of the record," as if Plaintiff had complied with Local Rule 56.1.  *Id.*

Plaintiff disputes many facts unrelated to the issue on which the R&R recommended granting summary judgment to Defendants.  Disputed immaterial facts do not create genuine questions sufficient to withstand summary judgment. *E.g.*, *Lilakos v. New York City*, 2018 WL 6242227, at *3 (E.D.N.Y. Nov. 29, 2018) ("But [the] objections . . . all dispute facts that are immaterial, rendering their consideration unnecessary for summary judgment purposes." (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986))).  For example, (i) the availability of physician coverage, (ii) the date on which Defendants formalized a written vacation policy, (iii) whether the FPPE was justified, (iv) whether Plaintiff was justified in not seeking a pre-termination hearing or a post-termination appeal, and (v) the Office of Professional Medical Conduct's investigation, *see* Obj. at 15–16, 19–26, do not concern the FMLA notice issue dispositive on summary judgment, *see infra* Discussion Section IV.

Plaintiff does object to one pivotal fact – that Plaintiff "did not inform [Dr.] Devarajan of any then-current or anticipated health issues, disabilities or medical needs her daughter had, or any possibility that her daughter would not be able to care for herself after labor."  Obj. at 16–19 (quoting R&R at 4–5).  The full statement in the R&R reads:

> While Offor maintains her daughter suffered from serious health conditions during and after her pregnancy, and that Plaintiff was aware of them at the time she requested the vacation based on "oral[]" conversations, she did not inform Devarajan of any then-current or anticipated health issues, disabilities or medical needs her daughter had, or any possibility that her daughter would not be able to care for herself after labor, stating on September 28, 2012 only that she

"need[ed] the vacation in February [2013] because [her] second daughter [wa]s due to deliver her first baby and she will need [her]."

R&R at 4–5 (alterations in original).

It is indisputable that Plaintiff's September 28, 2012 email does not mention her daughter's health issues or inability to care for herself. *See* Email dated Sept. 28, 2012, Ex. T to Guilfoyle Decl. Accordingly, the Court understands Plaintiff to contend the R&R reads the email out of context, without reference to (a) her conversations with Dr. Devarajan in June 2012, in which she purportedly communicated her daughter's health issues and inability to care for herself or (b) her daughter's diagnosed conditions and her impairment therefrom. Obj. at 17. Plaintiff's objection is built upon an unsupported reading of the evidence contradicted by her own deposition testimony.

Plaintiff asserts that she "informed Dr. Devarajan in June 2012 . . . [that her daughter] was being investigated for Hodgkin's Lymphoma." Offor SJ Decl. ¶ 13. Yet at her deposition, Plaintiff testified it was "some form of *non*-Hodgkin's lymphoma." Tr. of Dec. 5, 2019 Deposition of Dr. Chinwe Offor at 119:25, 135:20–21, 136:7–8 ("Offor Dep. Tr.") (emphasis added), Ex. D [DE 284-9] to Guilfoyle Decl. Plaintiff also asserts she told Dr. Devarajan about her daughter's heart palpitations, heart murmur, and "unusually severe anemia." Offor SJ Decl. ¶ 13. But she testified she "didn't want to give [Dr. Devarajan] any more detail" other than that her daughter's lymph nodes had "enlarged" and "flared up." Offor Dep. Tr. at 120:9, 121:5–14. She reiterated: "That was as far as I went, and beyond that I didn't talk to [Dr. Devarajan]

about other details." *Id.* at 121:5–14. That is, she affirmatively disavowed telling Dr. Devarajan of the other conditions.[9] *See id.*

She likewise testified she did not know, at the time she requested vacation in June, whether the lymph node condition did, or could, incapacitate her daughter:

> Q. Now, when you spoke with Dr. Devarajan, you spoke about something having to do with your daughter's lymph nodes?
>
> A. I had told her about her lymph nodes because early in this pregnancy the lymph nodes flared up again.
>
> . . . .
>
> Q. I'm talking about when you asked Dr. Devarajan for the --
>
> A. That was only information I gave her about the lymph nodes and how they had flared up.
>
> Q. And when you say they flared up, how did that impact or affect your daughter?
>
> A. How do you mean?
>
> Q. I mean, so they flared up. What does that mean?
>
> A. They became enlarged. And she needed to be investigated for that.
>
> Q. Did that prevent her from working? Did that prevent her from doing things? How did the flaring up of her lymph nodes affect her?
>
> A. I don't know what you mean by affecting her, but when --
>
> Q. Well, did it prevent her from doing anything?

---

[9]     Plaintiff's deposition testimony also suggests that she did not know of the other conditions until after her daughter gave birth. *E.g.*, Offor Dep. Tr. at 217:3–8 (Q: "When did [your daughter] say she was anemic?" A: "After she gave birth. By the time I came back again." Q: "Did she tell you at any point in time prior to her giving birth, that she was anemic?" A: "I don't really remember.")

> MR. AGWUEGBO:     Her daughter was sick.
>
> A.   I have no idea about whether she was going to work or not going to work.  I just talked about the medical issues she had.
>
> Q.   With Dr. Devarajan?
>
> A.   In early pregnancy.  The issues with the lymph node enlargement.  That was as far as I went, and beyond that I didn't talk to her about other details because she kind of didn't believe me.  She told everyone that I was just trying to make trouble, that there was nothing wrong with my daughter.
>
> So once I got that information back, I didn't want to give her any more details about my daughter.

Offor Dep. Tr. at 118:9–14, 120:6–121:14.  Plaintiff provided Dr. Devarajan with no more detail than a "lymph node enlargement," a condition which (at the time) Plaintiff did not know had incapacitated, or could incapacitate, her daughter.  The R&R therefore accurately described the facts; as of September 2012, Plaintiff had not informed Dr. Devarajan that Plaintiff's daughter was unable, or "would not be able[,] to care for herself after labor."

Altogether, Plaintiff's objection—drawn from her summary judgment submissions, which include her declaration—contradicts her previous sworn testimony and fails to defeat summary judgment in Defendants' favor.  *In re Fosamax Prod. Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013).  "[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."  *Hayes v. N.Y.C. Dep't of Corrs.*, 84 F.3d 614, 619 (2d Cir. 1996).  "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting [her] own prior testimony, this would greatly

diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Perma Rsch. & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969).

Plaintiff also attacks the R&R's statement by citing evidence that Plaintiff's daughter was in fact so afflicted with anemia, recurring heart palpitations, and a cardiac murmur and was in fact "temporarily disabled after the birth of her baby." Obj. at 17. This argument does not address the thrust of the R&R's point: Defendants had no knowledge, in June or September 2012, of these conditions or that they could render Plaintiff's daughter incapable of self-care – conditions which (as discussed further *infra* Discussion Section IV) "may" have qualified Plaintiff for FMLA leave.

Accordingly, Plaintiff's objection to the Background and Relevant Facts section is overruled.

### III. The Second Circuit's Ruling on Defendants' Motion to Dismiss

Plaintiff objects that the R&R "totally disregarded and discountenanced" the Second Circuit's decision earlier in the case, which held Plaintiff's Complaint "plausibly alleged" an FMLA retaliation claim. Obj. at 27; *see Offor v. Mercy Med. Ctr.*, 676 Fed. App'x 51, 54 (2d Cir. 2017). Plaintiff contends that, because the Second Circuit held her Complaint established "a prima facie case," she no longer has to establish it again to withstand summary judgment; the analysis should begin with Defendants' burden to "to provide non-retaliatory reasons for the adverse employment actions." Obj. at 27.

Plaintiff's position conflates the standard on a Rule 12(b)(6) motion to dismiss with that applicable here, a Rule 56 motion for summary judgment. "[I]t is quite

possible [for decisions on these motions] to reach the opposite result in the same case, depending on the applicable standard of review." *MacDonald v. Safir*, 206 F.3d 183, 190 (2d Cir. 2000); 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2713 (4th ed. 2021) ("The ruling on a motion to dismiss for failure to state a claim for relief is addressed solely to the sufficiency of the complaint and does not prevent summary judgment from subsequently being granted based on material outside the complaint.").

A Rule 12 motion requires a court to accept the allegations in the pleadings, but "a court in considering summary judgment may look behind the pleadings to facts developed during discovery." *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 554 (2d Cir. 1977). "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment. For that reason, the denial of Defendants' Motion to Dismiss does not preclude the Court from granting Defendants' Motion for Summary Judgment—even if they are premised upon "identical arguments"— because the latter "clearly relies on matters outside of the pleadings, such as depositions, admissions and affidavits." *See Pacheco v. N.Y. Presbyterian Hosp.*, 593 F. Supp. 2d 599, 609 n.2 (S.D.N.Y. 2009). The summary judgment record here extends well beyond the pleadings: Plaintiff's eighty-plus exhibits amount to more than 2,500 pages; Defendants, for their part, rely on more than fifty total exhibits, depositions, and declarations. *See, e.g.*, Exs. to Agwuegbo Aff.; Exs. to Guilfoyle Decl.

Accordingly, the Second Circuit's decision at the pleadings stage did not bind Judge Locke in his analysis on summary judgment, and Plaintiff's objection is overruled.

## IV. FMLA Notice Requirement

Plaintiff objects that Judge Locke misunderstands the FMLA and its related regulations because the R&R addressed Plaintiff's, and not Defendants', notice obligations. Obj. at 28. Plaintiff asserts an "employer must provide the employee notice of FMLA eligibility once the employer learns that the [employee's requested] leave may qualify as FMLA leave" and that Defendants "failed to provide [n]otice to the Plaintiff that her [l]eave [r]equest may be FMLA eligible." *Id.* (emphasis removed). Plaintiff's objection is lifted, verbatim, from the first paragraph on page 16 of her Memorandum in Opposition to Defendants' Motion for Summary Judgment. Pl. Opp. at 16 [DE 285].

Plaintiff is correct that the FMLA imposes a notice requirement upon Defendants. But that requirement triggers only if the employer first has notice that an employee's "requested leave may qualify for FMLA protection." R&R at 24–25 (emphasis removed) (citing *Coutard v. Mun. Credit Union*, 848 F.3d 102, 110–11 (2d Cir. 2017)). The analysis properly begins with an inquiry into Defendants' knowledge – specifically, whether Defendants' knew or had reason to investigate whether Plaintiff's requested leave "may qualify" as FMLA leave. *Id.* As is relevant here, Plaintiff could qualify for FMLA leave only if her daughter "ha[d] a serious health condition," 29 U.S.C. § 2612(a)(1)(C), *and* her daughter, who was then over eighteen

years of age, was "incapable of self-care because of a mental or physical disability," *id.* § 2611(11)(B). Those "incapable of self-care" are unable to perform "daily activities." 29 C.F.R. § 825.113(b) (defining "incapacity").

The FMLA regulations provide examples of notice "sufficient to make the employer aware that the employee needs FMLA-qualifying leave." *Id.* § 825.302(c). According to one, sufficient information includes, "if the leave is for a family member, that the condition renders the family member unable to perform daily activities." *Id.* Because the example contemplates the situation at bar—viz., Plaintiff's request for FMLA leave to care for a family member (her daughter)—it provides a helpful rubric against which to measure the information Plaintiff provided to Defendants.

The record evidence does not reflect a *genuine* issue of fact here: Plaintiff's request for vacation time to be with her adult daughter, who "need[ed]" her for the birth of her grandchild, did not give Defendants knowledge or reason to inquire as to whether Plaintiff's daughter may have a serious health condition and may be incapable of self-care. Ex. T [DE 284-25] to Guilfoyle Decl. ("[M]y second daughter is due to deliver her first baby and she will need me."); *see* Devarajan SJ Decl. ¶¶ 18–20, 29–30.

The Eleventh Circuit's decision in *Cruz v. Publix Super Markets, Inc.* is instructive. 428 F.3d 1379 (11th Cir. 2005). Cruz told her employer "that she believed her daughter was in labor and that her daughter needed her help due to her son-in-law's broken collarbone." *Id.* at 1384. Cruz also provided "a physician's letter convey[ing] that Cruz's daughter felt she needed Cruz to help her with delivery." *Id.*

The Eleventh Circuit held this information did not suffice to put her employer on notice that she may qualify for FMLA leave. *Id.* at 1386. Cruz failed disclose information beyond "her own belief . . . that her daughter needed her help as reasons for the leave," a fact from which her employer "could not reasonably be expected to conclude that her absence qualified for FMLA leave." Instead, Cruz "merely expressed her desire to assist her adult daughter during the birth of her grandchild, a condition which the FMLA does not cover." *Id.* at 1386; *see also Lyons v. Stephenson Cty.*, 2018 WL 2161940 (N.D. Ill. May 10, 2018); *Deloatch v. Harris Teeter, Inc.*, 797 F. Supp. 2d 48, 66 (D.D.C. 2011) (granting summary judgment to defendant where plaintiff "told his manager that he 'needed some time off to help his mom'" because "plaintiff does not indicate whether he even told his manager . . . that the extent of her illness rendered her unable to perform daily activities").

As noted earlier, Plaintiff's summary judgment submissions do not reconcile with her sworn testimony. *See supra* Discussion Section II. Her subsequent, contradictory assertions cannot defeat summary judgment in Defendants' favor. *E.g.*, *In re Fosamax Prod. Liab. Litig.*, 707 F.3d at 193. In a similar vein, when Plaintiff supports her declaration with citations to her daughter's medical charts, she is not addressing whether she in fact alerted Defendants to her daughter's conditions at the time she requested vacation time. The same is true as to Plaintiff's assertion that her daughter was in fact incapacitated following her pregnancy – it does not address Defendants' knowledge at the time of Plaintiff's leave request.

All this to say, Plaintiff has not provided evidence from which a reasonable juror could find that Plaintiff met her predicate FMLA notice obligation, giving Defendants knowledge that, or a reason to inquire whether, her leave request may be FMLA eligible.[10]

---

[10]     Even assuming Plaintiff gave sufficient FMLA notice, she fails to offer proof sufficient to withstand summary judgment on the fourth element of her prima facie case: whether "the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 152 (2d Cir. 2012); *see* R&R at 26 (remarking, in passing, "there are no circumstances giving rise to an inference of unlawful retaliatory intent"). This element, while not analyzed in depth by Judge Locke, was fully briefed in the summary judgment papers. *E.g.*, Pl. Mem. at 14–15; Def. Opp. at 16–17; Def. Mem. at 17–19; Pl. Opp. at 19–20.

Throughout this litigation, Plaintiff has relied solely on temporal proximity to raise the inference of retaliatory intent – namely, the time between her retention of an attorney "to assist her in getting leave to be with her daughter" and Defendants "put[ting] her on" FPPE review. Obj. at 6–7; Pl. Counter 56.1 ¶¶ 91–92; Pl. Mem. in Supp. at 7–8, 15 ("Pl. Mem.") [DE 283-18]; Pl. Opp. at 5–6, 8, 18–19. Indeed, the Second Circuit vacated the district court's dismissal of Plaintiff's FMLA retaliation claim because her pleaded allegations regarding that "temporal proximity [were] enough *at th[at] stage* to give rise to an inference of retaliatory intent." *Offor*, 676 Fed. App'x at *54 (emphasis added).

In her summary judgment submissions, Plaintiff cites no evidence and rests solely, again, on this temporal proximity. Pl. Mem. at 14–15; Pl. Opp. at 8, 18. She contends "[t]here was no other causal event between [Plaintiff's] hiring of an [a]ttorney to help with her FMLA request and her placement on FPPE by MMC." Pl. Mem. at 15.

Plaintiff overlooks the extensive investigatory and disciplinary actions Defendants took before she retained her attorney in November 2012. Offor Dep. Tr. at 151:24–152:9. In August 14, 2021, Dr. Koppel—a doctor unaffiliated with MMC and CHSLI—raised concerns about Plaintiff's clinical management. Devarajan SJ Decl. ¶¶ 34–35; Exs. X, Y to Guilfoyle Decl.* The very next day, August 15, 2012, Dr. Devarajan met with Plaintiff to discuss these issues; the Defendants began an internal review shortly thereafter. Devarajan SJ Decl. ¶¶ 36–27; Ex. X to Guilfoyle Decl. Five days later, on August 20, 2012, the internal review generated the MIDAS report, which noted "multiple issues in the NICU of . . . mismanagement by [Plaintiff] with many different staff members on both shifts." Devarajan SJ Decl. ¶¶ 38-39; Ex. Z to Guilfoyle Decl. Four days after that, on August 24, 2012, Dr. John Reilly met with Plaintiff to "discuss the significant issues set forth in the MIDAS report."

## V.     Entry of the R&R Without a Presiding District Court Judge

Plaintiff objects that District Court Judge Sandra J. Feuerstein's passing renders the R&R a "nullity." Obj. at 8, 28–29. Plaintiff's argument comes without citation to legal authority. *See id.*; *see* Defs. Resp. at 3 [DE 308]. The Court cannot entertain her argument in the absence of such support; Plaintiff's position is unintuitive and the issue appears to be one of first impression.

Even though it has no obligation to investigate further, the Court's independent research suggests a report and recommendation may issue without a district court judge assigned to the case. *E.g.*, *Laws v. Obert*, 2016 WL 5395943, at *3 (E.D. Cal. Sept. 26, 2016) (Barnes, M.J.) ("For the reasons set forth above, it is

_____

Declaration of Dr. John P. Reilly ¶ 6 ("Reilly Decl.") [DE 284-4]. MMC then began an external review, requiring the assistance of multiple unaffiliated doctors, who provided their assessment in (i) a two-hour call on October 5, 2012, (ii) a written report dated October 12, 2012, and (iii) a written report dated October 26, 2012. Devarajan SJ Decl. ¶¶ 43–51; Reilly Decl. ¶¶ 8–10; Exs. Y, AA, BB to Guilfoyle Decl. Only after, in November 2012, did Plaintiff hire her attorney. Offor Dep. Tr. at 151:24–152:9.

"Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001), *as amended* (June 6, 2001). The Second Circuit has continually affirmed grants of summary judgment to defendants on this basis. *Perez v. City of New York*, 43 Fed. App'x 406 (2d Cir. 2021); *Frantti v. New York*, 850 Fed. App'x 17 (2d Cir. 2021); *Porter v. Potter*, 366 Fed. App'x 195, 197 (2d Cir. 2010) ("Adverse employment actions that are part of an 'extensive period of progressive discipline' that begins prior to any protected activity on the plaintiff's part cannot give rise to an inference of retaliation sufficient to make out a prima facie case.").

The fourth prong of Plaintiff's prima facie case is therefore an additional, independent basis on which to grant summary judgment to Defendants.

\*     Plaintiff's challenges to Exhibits X, Y, Z, AA, and BB, for reasons stated elsewhere in this Order, are overruled. *See supra* Discussion Sections I.C, I.E, I.F; *see infra* Discussion Section VI.

hereby ordered that the clerk randomly assign a district judge to this case and recommended that defendant's motion to dismiss be granted and that this case be dismissed without prejudice." (capitalization omitted)), *report and recommendation adopted*, Order dated Nov. 30, 2016 [DE 51], *Laws v. Obert*, No. 2:14-cv-01466 (E.D. Cal.); *Jenkins v. Sw. Gas Corp.*, 2010 WL 1194486, at *1 (D. Ariz. Mar. 22, 2010) ("On October 5, 2009, Magistrate Judge Guerin issued her Report and Recommendation as to Defendants' motion to dismiss, and, because the parties had not yet consented to the jurisdiction of the Magistrate, review of the R&R was randomly assigned to Chief Judge [John] Roll."), *adopting* 2009 WL 6302956 (D. Ariz. Oct. 5, 2009) (Guerin, M.J.). The Court is unaware of any authority suggesting that a district court judge's untimely passing nullifies her referrals to a magistrate judge or revokes the magistrate judge's authority to enter a report and recommendation.

The Court declines to grant Plaintiff any relief on this basis and overrules her objection.

## VI. Motion to Strike

Plaintiff contends Judge Locke erred in three respects when he recommended denying her Motion to Strike. Obj. at 19–20, 29. Plaintiff challenges Exhibits AA, AAA, BB, Y and VV, [DEs 284-32, -58, -33, -30, -53], arguing (1) the evidence is inadmissible "hearsay upon hearsay"; (2) it reflects "expert reports" without any corresponding "information regarding the background of the author," "the basis of [his or her] knowledge," and "materials referred to in arriving at scientific or clinical conclusions"; and (3) the parties did exchange expert reports, contrary to Judge

Locke's statement otherwise, because she "sent to the Defendants an Expert Report on her damages." *Id.*; *see* R&R at 17.

First, and similar to his judicious choice not to consider the allegedly fraudulent exhibits, Judge Locke "d[id] not rely on any of these documents in reaching [his] conclusion on the arguments for summary judgment." R&R at 17. Indeed, the R&R cites none of these exhibits while discussing the merits of Plaintiff's FMLA claim. *See* R&R at 20–27. Judge Locke correctly did not consider these exhibits and did not admit them into evidence. Plaintiff's objection that it is "hearsay upon hearsay" is overruled. Obj. at 20.[11]

Second, Plaintiff's "expert report" objection mirrors an argument Judge Locke rejected. *Compare* Obj. at 29, *with* Pl. Opp. at 12 (incorporating Ltr. Mot. to Strike dated November 30, 2020 [DE 258]). Plaintiff has not explained *why* these exhibits are "expert reports," and she cites no case law to support her view. Even though the doctors authoring these exhibits have "specialized knowledge, or that [they] carried out [an] investigation because of that knowledge," Federal Rule of Evidence 701 does not preclude their testimony,[12] "so long as the testimony [would be] based on the investigation and [would] reflect[] [their] investigatory findings and conclusions, and

---

[11] Exhibit Y is attached to and relied upon in Plaintiff's Complaint, which is an additional reason to overrule Plaintiff's hearsay objection thereto. Compl. ¶ 40 [DE 1]; Ex. 10(A) [DE 1-11] to Compl.; *cf. Utica Mut. Ins. Co. v. Munich Reins. Am., Inc.*, 594 Fed. App'x 700, 702 (2d Cir. 2014) (rejecting evidentiary challenge to a document relied upon at summary judgment because plaintiff "attached the [document] to its complaint and did not raise questions as to its authenticity until faced with [defendant's] summary judgment motion").

[12] Assuming Defendants intended to call them at trial, as Plaintiff did not take their depositions and their reports are unsworn.

was not rooted exclusively in [their] expertise in" the medical field. *Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171, 181 (2d Cir. 2004). These reports are admissible "because [they] w[ere] based on [their] *perceptions*." *Id.* (emphasis in original). And, further, Federal Rule of Civil Procedure 26(a)(2)(B)'s expert witness disclosure obligations trigger "not [from] the status of the witness, but, rather, the essence of the proffered testimony. Accordingly, a party need not identify a witness as an expert so long as the witness played a personal role in the unfolding of the events at issue and the anticipated questioning seeks only to elicit the witness's knowledge of those events." *Gomez v. Rivera Rodriguez*, 344 F.3d 103, 112–14 (1st Cir. 2003) (deeming "an actor with regard to the occurrences from which the tapestry of the lawsuit was woven" was not subject to Federal Rule of Civil Procedure 26(a)(2) expert disclosures).

Third, and ostensibly contending that Judge Locke's wrongly denied her Motion to Strike, Plaintiff argues that, "[c]ontrary to the assertion in the [R&R] that there were no Expert Reports exchanged, the Plaintiff sent to the Defendants an Expert Report on her damages." Obj. at 29. It seems that Judge Locke overlooked Plaintiff's Exhibit 66. *See* Report of Economic Loss Resulting from the FMLA Retaliation Claim of Dr. Chinwe Offor by David Gouiran, Ex. 66 to Agwuegbo Aff. Even so, his error is harmless. Plaintiff's retention of Mr. Gourian has no relation to the merits of Plaintiff's Motion to Strike; it is inconsequential. Defs. Resp. at 6 n.2.

Plaintiff's objections to Judge Locke's recommendation to deny her Motion to Strike are overruled.

**VII.    Failure to Cite Evidence in the Record in Drafting the 56.1 Statement**

At Page 2 footnote 1, Judge Locke wrote: "Plaintiff's 56.1 Statement and 56.1 Counterstatement contain cites to evidence not in the record in some instances.  The Court ignores any facts submitted in violation of Local Civil Rule 56.1."  R&R at 2 n.1.  Plaintiff objects that Judge Locke "misrepresented the facts" because "he failed to provide any example of the Plaintiff's failure."  Obj. at 29–30.

At Page 19, Judge Locke provided six examples in "[b]oth Plaintiff's Rule 56.1 Statement and Counterstatement [that] contain factual assertions supported by citations to documents not contained within the record, or that amount to legal arguments."  R&R at 19 (citing, by way of example, Pl. 56.1 ¶¶ 1, 3, 4, 6, 9, 11).  Plaintiff has not identified which factual assertions, if any, concerning the FMLA notice issue were ignored by Judge Locke.  Notwithstanding her failure, the Court's *de novo* review of the record reveals no genuine dispute on the material facts pertinent to this dispositive issue.  *See supra* Discussion Sections II, IV.  Plaintiff's objection is overruled.

## CONCLUSION

For the reasons discussed above, Plaintiff's objections are overruled, and Judge Locke's R&R is adopted in full.  Plaintiff's Motion to Strike and Motion for Summary Judgment are both denied and Defendants' Motion for Summary Judgment is granted.  The Clerk of Court is respectfully directed to enter judgment accordingly and to terminate the action.

**SO ORDERED.**

Dated: Central Islip, New York           s/ Denis R. Hurley
        September 1, 2021              Denis R. Hurley
                                 United States District Judge