# 21-2115-cv

## United States Court of Appeals

### *for the*

## Second Circuit

DR. CHINWE OFFOR,

*Plaintiff-Appellant,*

– v. –

MERCY MEDICAL CENTER, ROCKVILLE CENTRE DIVISION,
CATHOLIC HEALTH SERVICES OF LONG ISLAND, DR. SWARNA
DEVARAJAN, DR. JOHN P. REILLY,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

TARA E. DAUB
NIXON PEABODY LLP
50 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 832-7500

– and –

AARON F. NADICH
NIXON PEABODY LLP
One Citizens Plaza
Providence, Rhode Island 02903
(401) 454-1000

*Attorneys for Defendants-Appellees*

Page

## **CORPORATE DISCLOSURE STATEMENT PURSUANT TO RULE 26.1**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure,

Defendants-Appellees Mercy Hospital and Catholic Health System of Long Island,

Inc., by their undersigned counsel Nixon Peabody LLP, hereby certify that Mercy

Hospital f/k/a Mercy Medical Center and Catholic Health System of Long Island,

Inc. d/b/a Catholic Health are not-for-profit corporations organized under the laws

of the State of New York.  Under the New York Not-For-Profit Corporation Law,

the sole corporate member of Mercy Medical Center is Catholic Health Services of

Long Island, Inc.  Neither Mercy Medical Center nor Catholic Health Services of

Long Island, Inc. have any parents, subsidiaries or affiliates that are publicly held.

# TABLE OF CONTENTS

I.     COUNTER-JURISDICTIONAL STATEMENT.............................................1

II.    PRELIMINARY STATEMENT ...............................................................2

III.   COUNTER-STATEMENT OF ISSUES PRESENTED FOR REVIEW .......4

IV.   STATEMENT OF THE CASE ..................................................................7

     A.    Statement of Facts .........................................................................7

     B.    Procedural Background ................................................................20

V.    SUMMARY OF ARGUMENT.................................................................22

VI.   ARGUMENT...........................................................................................24

     A.    The District Court Appropriately Granted Summary Judgment In Favor of Defendants .....................................................................24

     B.    Plaintiff Has Not Carried Her Burden to Establish that the District Court Abused Its Discretion by Imposing Sanctions on Plaintiff's Counsel ........................................................................................36

     C.    Plaintiff Has Not Carried Her Burden to Establish that the District Court Abused Its Discretion by Denying Her Motion to Compel a Third Party to Produce Irrelevant Medical Records of an Infant........39

     D.    Plaintiff Has Not Carried Her Burden to Establish that the District Court Abused Its Discretion in Denying Plaintiff's Frivolous Motions for Sanctions .......................................................................42

     E.    Plaintiff Has Not Carried Her Burden to Establish that the District Court Abused Its Discretion in Denying Plaintiff's Motion to Strike Certain Documents Plaintiff Erroneously Claimed to be Expert Reports ...............................................................................54

VII.  CONCLUSION.......................................................................................58

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

<u>Amorgianos v. Nat'l R.R. Passenger Corp.</u>,
   303 F.3d 256 (2d Cir. 2002) ...............................................................55

<u>Bank of China, New York Branch v. NBM LLC</u>,
   359 F.3d 171 (2d Cir. 2004) ...............................................................56

<u>Barney v. Consol. Edison Co. of New York</u>,
   2009 U.S. Dist. LEXIS 127178 (E.D.N.Y. Oct. 1, 2009) ...................33

<u>Brown v. The Pension Boards</u>,
   488 F. Supp. 2d 395 (S.D.N.Y. 2007) .................................................31

<u>Carey v. Crescenzi</u>,
   923 F.2d 18 (2d Cir. 1991) ..................................................................33

<u>Coalition on W. Valley Nuclear Wastes v. Chu</u>,
   592 F.3d 306 (2d Cir. 2009) ...................................................31, 37, 40

<u>D'Amico v. City of New York</u>,
   132 F.3d 145 (2d Cir. 1998) ...............................................................32

<u>Fahie v. Rivera</u>,
   510 F. App'x 93 (2d Cir. 2013) ..........................................................57

<u>In re Fitch, Inc.</u>,
   330 F.3d 104 (2d Cir. 2003) ............................................. 39, 40, 42-43

<u>Garcia v. Griffin</u>,
   2021 U.S. Dist. LEXIS 77762 (S.D.N.Y. Apr. 22, 2021) ...................49

<u>George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete
Mix Corp.</u>,
   554 F.2d 551 (2d Cir. 1977) ...............................................................25

<u>Gomez v. Rivera Rodriguez</u>,
   344 F.3d 103 (1st Cir. 2003)...............................................................56

iii

King v. First Am. Investigations, Inc.,
    287 F.3d 91 (2d Cir. 2002) ....................................................................49

LoSacco v. City of Middletown,
    71 F.3d 88 (2d Cir. 1995) ........................................................31, 37, 40

Mario v. P & C Food Markets, Inc.,
    313 F.3d 758 (2d Cir. 2002) ................................................................24

Nicastro v. Runyon,
    60 F. Supp. 2d 181 (S.D.N.Y. 1999) ..................................................33

O'Reilly v. Consol. Edison Co. of New York,
    173 F. App'x 20 (2d Cir. 2006) ...........................................................33

Pacheco v. New York Presbyterian Hosp.,
    593 F. Supp. 2d 599 (S.D.N.Y. 2009) ................................................25

Passlogix, Inc. v. 2FA Tech., LLC,
    708 F. Supp. 2d 378 (S.D.N.Y. 2010) ................................................49

Potenza v. City of New York,
    365 F.3d 165 (2d Cir. 2004) ................................................................26

Presbyterian Church Of Sudan v. Talisman Energy, Inc.,
    582 F.3d 244 (2d Cir. 2009) ...........................................................54-55

Raniola v. Bratton,
    243 F.3d 610 (2d Cir. 2001) ................................................................32

Ruhling v. Tribune Co.,
    2007 U.S. Dist. LEXIS 116 (E.D.N.Y. Jan. 3, 2007) ........................33

Sanghvi v. Frendel,
    242 F.3d 367 (2d Cir. 2000) .........................................................27, 29

Seaman v. CSPH, Inc.,
    179 F.3d 297 (5th Cir. 1999) ..............................................................30

Shannon v. Gen. Elec. Co.,
    186 F.3d 186 (2d Cir. 1999) ..................................................................1

iv

<u>Slattery v. Swiss Reinsurance Am. Corp.</u>,
  248 F.3d 87 (2d Cir. 2001) ...................................................................34

<u>Slaughter v. Am. Bldg. Maint. Co. of New York</u>,
  64 F. Supp. 2d 319 (S.D.N.Y. 1999) .................................................30

<u>Tolbert v. Queens College</u>,
  242 F.3d 58 (2d Cir. 2001) ........................................................*passim*

<u>U.S. v. Seltzer</u>,
  227 F.3d 36 (2d Cir. 2000) ...............................................36, 39, 42

<u>Waran v. Christie's Inc.</u>,
  315 F. Supp. 3d 713 (S.D.N.Y. 2018) ...............................................49

**Federal Statutes**

28 U.S.C. § 636 ........................................................................................35

28 U.S.C. § 636(b)(1).............................................................................35

28 U.S.C. § 636(b)(1)(B) ......................................................................35

28 U.S.C. § 1291 ......................................................................................1

28 U.S.C. § 1331 ......................................................................................1

28 U.S.C. § 1927 ....................................................................................39

29 U.S.C. § 2611(12)(A)-(B) ..............................................................27

29 U.S.C. § 2612(a)(1)..........................................................................26

Family and Medical Leave Act of 1993, 28 U.S.C. § 2601,. .........................*passim*

Health Insurance Portability and Accountability Act of 1996...........................21, 38

**Rules**

Fed. R. App. P. 28 ....................................................................................1

Fed. R. Civ. P. 5.2 ...................................................................................38

Fed. R. Civ. P. 11 ....................................................................................39

v

Fed. R. Civ. P. 12(b)(6) ........................................................................4, 21

Fed. R. Civ. P. 41(a)(1)(A) ........................................................................21

Fed. R. Civ. P. 56 ..............................................................................5, 25

4859-5227-7775.2

## I.    COUNTER-JURISDICTIONAL STATEMENT

Plaintiff-Appellant Chinwe Offor, M.D.'s ("Plaintiff") Jurisdictional

Statement fails to provide the required details under Fed. R. App. P. 28.  In the

underlying action, Plaintiff alleged that, pursuant to 28 U.S.C. §1331, the District

Court had subject-matter jurisdiction over Plaintiff's claim for violation of the

Family and Medical Leave Act of 1993 ("FMLA"), 28 U.S.C. §2601, *et seq.*

While the case was before the District Court, Defendants-Appellees Mercy

Hospital f/k/a Mercy Medical Center ("MMC"), Catholic Health System of Long

Island, Inc. d/b/a Catholic Health ("CHSLI"), Swarna Devarajan, M.D. ("Dr.

Devarajan"), and John Reilly, M.D. ("Dr. Reilly") (collectively, "Defendants")

filed a Motion for Summary Judgment.  In its Order Adopting Report and

Recommendation dated September 1, 2021 (the "Decision"), the District Court

adopted Magistrate Judge Locke's Report and Recommendation ("R&R").  The

District Court entered Judgment for Defendants on September 1, 2021.  This Court

therefore has jurisdiction over the District Court's Decision in accordance with 28

U.S.C. §1291.  Plaintiff filed her appeal on September 1, 2021.

Plaintiff also appeals several interlocutory orders, including orders on

motions for sanctions and a motion to compel.  This Court has jurisdiction over

those orders in connection with Plaintiff's appeal of the Decision and final

judgment.  Shannon v. Gen. Elec. Co., 186 F.3d 186, 192 (2d Cir. 1999) ("When a

district court enters a final judgment in a case, interlocutory orders rendered in the case typically merge with the judgment for purposes of appellate review.").

## II.   PRELIMINARY STATEMENT

Defendants respectfully submit this brief in opposition to the appeal by Plaintiff from the District Court's Orders: (i) granting summary judgment in favor of Defendants; (ii) denying Plaintiff's motion to strike; (iii) denying Plaintiff's motion for sanctions; (iv) granting Defendants' motion for sanctions against Plaintiff's counsel; and (v) denying Plaintiff's motion to compel a third party's response to a subpoena.

Plaintiff's sole remaining claim in this litigation sounds in retaliation under the FMLA.  As the District Court appropriately concluded, the record evidence proves that claim utterly untenable for many reasons.  There is no dispute that Plaintiff requested vacation time to visit her adult daughter in Chicago for her anticipated childbirth approximately eight months later, wanting to provide emotional support.  Plaintiff's vacation request was initially denied for compelling staffing reasons, but later granted, and she took the vacation time to be with her daughter.  Plaintiff continued working at MMC for another two (2) years after she requested the vacation time.  Plaintiff never requested FMLA leave at any time, nor did she provide Defendants with sufficient notice that her reason for requesting vacation time qualified for protection under the FMLA.  Thus, among other fatal

2

defects of Plaintiff's sole remaining claim, Plaintiff is unable to establish even a *prima facie* case of FMLA retaliation because she did not exercise rights protected by the FMLA.

Even if Plaintiff could demonstrate a request for, and a right to, FMLA leave (which she clearly cannot), the record is devoid of any evidence of retaliatory intent, as evidenced by the fact that MMC actually granted Plaintiff the vacation time to visit her daughter for her childbirth and that Plaintiff continued working at MMC for over two (2) years after she requested the vacation time. Furthermore, the record evidence confirms that Plaintiff's employment was terminated for legitimate, non-retaliatory reasons – namely, her continued poor performance as a physician where she departed significantly from accepted medical standards on numerous occasions, as well as her noteworthy interpersonal deficiencies and continued insubordination in relation to both her co-workers and her supervisors.

Indeed, the decision to terminate Plaintiff's employment, which occurred in August 2014, over two years after Plaintiff first sought to take a vacation to visit her daughter, was based on both internal and independent external medical professional reviews of Plaintiff's clinical practices, which consistently identified significant deficiencies in Plaintiff's abilities and general medical knowledge, as well as several instances of mismanaging patient treatment. These findings, which were consistent among at least seven (7) independent, external medical

3

practitioners over the course of several months, were resoundingly supported by the New York Department of Health, Office of Medical and Professional Conduct ("OPMC") following its independent investigation into Plaintiff's clinical practices at MMC. Accordingly, Defendants respectfully submit that the District Court appropriately granted their Motion for Summary Judgment on Plaintiff's sole remaining claim of FMLA retaliation.

Plaintiff's appeals of the District Court's interlocutory orders are similarly baseless. Since the filing of this case in the District Court over six years ago on April 21, 2015, Plaintiff has taken a kitchen sink approach to this litigation and engaged in dubious motion practice, bad-faith filings of confidential and sensitive medical information, numerous frivolous appeals, and other unsupportable litigation events. This is now Plaintiff's sixth time filing an appeal in this case, and her approach has not changed. Before this Court, Plaintiff sloppily asserts various patently absurd arguments – most of which without even citation to the record or to case law. For the reasons explained herein, this Court should affirm all decisions of the District Court and dismiss Plaintiff's claim in its entirety.

## III.   COUNTER-STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Whether decisions by this Court holding that a plaintiff stated a claim for purposes of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of

4

Civil Procedure necessarily preclude as a matter of course any future motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

2.      Whether Plaintiff has satisfied her burden to produce evidence to establish that she provided notice to Defendants of a need for a leave of absence under the FMLA to care for a disabled adult family member who was incapable of self-care when, approximately eight months in advance of the dates she sought to be off from work, she asked her employer only for vacation time to be with her adult daughter who was to give birth.

3.      Whether Plaintiff has waived any argument that MMC's termination of her employment occurred under circumstances giving rise to an inference of retaliatory intent by failing to address this issue on appeal; and, even if she had raised this issue on appeal, whether Plaintiff produced evidence to establish that MMC's termination of her employment over two years after her initial request for "vacation" time occurred under circumstances giving rise to an inference of retaliatory intent based on a request for FMLA (which Plaintiff did not request in the first instance).

4.      Whether Senior District Judge Hurley was precluded from adopting (and conducting a *de novo* review of) the R&R issued by Magistrate Judge Locke because the Parties' cross-motions for summary judgment were referred to Magistrate Judge Locke by District Judge Feuerstein before she passed away.

5

5.      Whether Plaintiff has waived her appeal as to the issue of the District Court's imposition of sanctions upon Plaintiff's counsel by failing to develop argumentation in her principal brief and merely adverting to this issue in a perfunctory manner; and if not, whether Plaintiff has satisfied her burden to establish that the District Court abused its discretion in imposing sanctions upon Plaintiff's counsel for repeated bad-faith filings of un-redacted materials notwithstanding multiple prior warnings to redact or file such materials under seal and subsequent requests to withdraw such filings.

6.      Whether Plaintiff has waived her appeal as to the issue of the District Court's denial of Plaintiff's motion to compel a third party to produce irrelevant medical records of an infant in response to a subpoena; and if not, whether Plaintiff has satisfied her burden to establish that the District Court abused its discretion in denying Plaintiff's motion to compel.

7.      Whether Plaintiff has satisfied her burden to establish that the District Court abused its discretion in denying Plaintiff's multiple frivolous motions, unsupported by both the record and the law, to impose sanctions on Defendants and their counsel.

8.      Whether Plaintiff has satisfied her burden to establish that the District Court abused its discretion in denying Plaintiff's motion to strike certain contemporaneous fact-based documents that Plaintiff erroneously believes to be

4859-5227-7775.2

expert reports; and even if the District Court did abuse its discretion, whether it is harmless error for the District Court to have denied Plaintiff's motion to strike such documents because the District Court did not consider such documents in connection with its decision on Defendants' motion for summary judgment with respect to the issue of Plaintiff's failure to provide notice under the FMLA.

## IV. STATEMENT OF THE CASE

### A. Statement of Facts

#### 1. About MMC

MMC is a not-for-profit health care facility and a member hospital of CHSLI, a not-for-profit network of health care facilities located in Long Island, New York. (Appendix ("A-") 2404.) Plaintiff was employed by MMC as a physician in its Neonatal Intensive Care Unit ("NICU") from on or about February 1, 2000 until August 21, 2014. (Id.)

Dr. Reilly was the Chief Medical Officer and Director of Medicine at MMC during all times relevant to the instant action. (Id.) Dr. Devarajan is the Chairwoman of the Department of Pediatrics and the Director of Neonatology & Newborn Services at MMC and has held these positions since in or about 1999. (Id.).

As of 2012, there were only three (3) full-time physicians working in MMC's NICU: (i) Dr. Devarajan; (ii) Plaintiff; and (iii) Niti Rayjada, M.D. ("Dr. Rayjada"). (A-2405.) Dr. Rayjada was scheduled to be on maternity leave for

7

twelve (12) weeks after the birth of her child in December 2012. (Id.) Due to the fact that there were only three (3) full-time physicians in the NICU and the impact Dr. Rayjada's maternity leave would have on NICU staffing, Dr. Devarajan restricted the physicians' ability, including her own, to take vacation during that time. (Id.)

### 2. Plaintiff's Vacation Request for December 2012

Plaintiff nonetheless requested time off from December 3, 2012 through December 14, 2012 to go to her niece's wedding, which Dr. Devarajan denied. (A-2406.) Dr. Devarajan reminded Plaintiff that all vacation from December 1, 2020 onward needed to be put on hold due to Dr. Rayjada's maternity leave. (Id.)

### 3. Plaintiff's Vacation Request for January and February 2013

Plaintiff's adult daughter, a 29-year-old physician in Chicago, was pregnant and expected to deliver around January 2013. (A-2407.) In June 2012, Plaintiff spoke with Dr. Devarajan about taking vacation when her daughter "would possibly give birth" and then did not raise the vacation request again with Dr. Devarajan. (A-2408.) At no time did Plaintiff mention or request FMLA leave, nor did she identify any circumstances under which she could be entitled to FMLA leave to visit her adult daughter. (Id.)

On September 27, 2012, three (3) weeks after receiving the Neonatology Service Schedule for 2013, Plaintiff requested to take several weeks of vacation in

8

February 2013 and May 2013. (A-2408-09.) In doing so, Plaintiff made no mention of her adult daughter's pregnancy or any reference to Plaintiff's earlier request to take vacation in January 2013 to visit her adult daughter in Chicago. (A-2409.) Dr. Devarajan informed her that the February vacation could not be approved due to Dr. Rayjada's maternity leave during that time and reminded Plaintiff that "[a]ll vacations during this period for all neonatal physicians in the department will be on hold." (A-2409.) Plaintiff responded to Dr. Devarajan, stating she "need[s] the vacation in February because my second daughter is due to deliver her first baby and she will need me" with no mention of the FMLA. (Id.)

In November 2012, Plaintiff retained an attorney, Joel Greenberg, Esq. ("Mr. Greenberg"), to assist her with obtaining vacation time to visit her daughter in February 2013. (A-2411.) Mr. Greenberg reiterated Plaintiff's requests for vacation without mention of the FMLA. (A-3166-67.) On December 27, 2012, Dr. Devarajan informed Plaintiff that her request for vacation in February 2013 was approved. (A-2412.) Dr. Devarajan reiterated that she was making every effort to find a neonatologist to assist with coverage during that period and even with uncertain back-up, Plaintiff's vacation request was approved. (Id.)

Importantly, the undisputed evidence demonstrates that Plaintiff requested these two weeks of vacation time in February 2013 – without ever mentioning FMLA – because it was around the time her daughter was due to give birth, and

Plaintiff wanted to be with her. (A-2409.) No one, including Plaintiff's adult daughter (also a physician) or her daughter's treating physicians, told Plaintiff that her daughter was going to have a difficult delivery or that it was medically recommended that Plaintiff be present to provide care. (A-2410.)

4.     <u>Plaintiff's Daughter Delivers Her Baby</u>

On January 26, 2013, Plaintiff's daughter gave birth. (A-2412.) During the delivery, Plaintiff did not render any care to her daughter, and Plaintiff's only role was to hold her daughter's hand and provide emotional support during the delivery. (<u>Id.</u>)

5.     <u>Significant Issues with Plaintiff's Clinical Skills</u>

On August 14, 2012, Dr. Devarajan received an unsolicited telephone call from Robert Koppel, M.D. ("Dr. Koppel"), the then-Director of the Regional Perinatal Center at Cohen Children's Medical Center ("Cohen Children's"), a prestigious medical institution unaffiliated with MMC or CHSLI, regarding Plaintiff's clinical management of a neonate at MMC. (A-2413.) Dr. Koppel expressed serious concerns about Plaintiff's management of this patient. (*Id.* ¶¶ 61-62).

As a result of the concerns expressed by Dr. Koppel and a MIDAS complaint (an internal electronic incident reporting system) flagging Plaintiff's treatment of this patient, MMC decided to internally review this patient's case. (A-

2413.)  On August 20, 2012, MMC's internal review identified Plaintiff's educational deficits and inappropriate use of equipment.  More particularly, the MIDAS report noted that "[t]here have been multiple issues in the NICU of Ventilator and High Frequency Oscillator Ventilation (HFOV) mismanagement by [Plaintiff] with different staff members on both shifts" and confirmed the issues with Plaintiff's treatment of the patient that were identified by Dr. Koppel.  (*Id.*).  On August 24, 2012, Dr. Reilly met with Plaintiff to discuss the significant issues set forth in the MIDAS report, which included addressing Plaintiff's documented failure to wash her hands when intubating babies and Plaintiff's too frequent ventilator changes.  (A-2414.)

Following its internal review, MMC initiated an external review of three additional patients Plaintiff treated.  MMC engaged three independent practitioners from institutions unaffiliated with MMC or CHSLI: (1) Cohen Children's; (2) Stony Brook Long Island Children's Hospital ("Stony Brook Children's"); and (3) Morgan Stanley Children's Hospital ("Morgan Stanley Children's").  (A-2415.)  All three reports noted deficiencies in Plaintiff's treatment of patients and recommended the need for further review and discussion as to improving her practices in six areas.  (A-2415-16.)

11

6.   Plaintiff is Placed on a Focused Practitioner Performance Evaluation

Other MMC personnel, including two respiratory therapists, raised additional concerns as to Plaintiff's medical care in the NICU, including Plaintiff's ventilator management. (A-2417.) MMC's ventilator management guidelines, promulgated in 2007, required all ventilator changes (other than certain routine changes) to be made by the respiratory therapist. (A-2418.) Thus, as a result of the concerns raised by two of MMC's respiratory therapists, Dr. Reilly held a NICU department meeting on December 17, 2012, to state that it was MMC's policy that the decision of the respiratory therapist will supersede that of the attending neonatologist in the event of a disagreement over the ventilator management of a neonate. (A-2418.) On December 19, 2012, Plaintiff emailed Dr. Reilly to continue to express confusion about the policy and procedure regarding the ventilator management of a neonate. (A-2417.)

Based upon Dr. Koppel's concerns, the findings set forth in the MIDAS report, and the reports and recommendations provided by experienced medical practitioners at three (3) independent medical institutions, Dr. Reilly, Dr. Devarajan, and MMC's Director of Risk Management, Rosemarie Povinelli ("Ms. Povinelli"), met with Plaintiff on December 27, 2012 to inform her that MMC decided to place her on a three-month Focused Practitioner Performance Evaluation ("FPPE"), a process through which MMC's medical staff evaluates the

12

competence of a medical practitioner following demonstrated failures, shortcomings, or general need for improvement in connection with the medical practitioner's clinical skills or knowledge. (A-2418.) In Plaintiff's case, the FPPE would be particularly focused on Plaintiff's ventilator and medication management. (Id.)

During the three-month FPPE, there was not a sufficient volume of cases involving ventilator management, high frequency oscillatory ventilator management, use of indomethacin therapy, and the initiation of total parenteral nutrition, for MMC to adequately evaluate Plaintiff's clinical skills and performance in those areas, which were at issue and the reasons for her placement on the FPPE. (A-2419.) Consequently, in order to provide additional time for MMC to properly evaluate Plaintiff's clinical abilities in those specified areas, MMC determined that it would continue Plaintiff's FPPE. (Id.)

7.   Plaintiff's Continued Issues After Being Placed on FPPE

Throughout her time on FPPE, Plaintiff exhibited additional performance and behavioral issues. For example, in May 2013, Plaintiff had a confrontational interaction with Sajan Paul, RRT ("Mr. Paul") because she believed that a ventilator should be changed on one of her patients even though Mr. Paul informed her that it did not need be changed, as it was changed only a couple days before pursuant to applicable guidelines. During the conversation, Plaintiff referred to

13

Mr. Paul as "Doctor Saj" in a sarcastic attempt to diminish him and his clinical directives because he was not a medical doctor. (A-2420.) Despite the MMC policy stating that in the event of a disagreement, the decision of the Respiratory Therapist controls, Plaintiff separately contacted Dr. Devarajan and John Boyle, M.B.A., Ph.D. ("Mr. Boyle"), the Director of Laboratory, Respiratory, and Ancillary Services at MMC, each of whom informed her that the literature does not support her opinion. (A-2420-21.)

In addition, on June 11, 2013, while a respiratory therapist presenting during an educational presentation, Plaintiff laughed sarcastically and engaged in a disruptive conversation with the staff member next to her. (A-2421.) After rounds that day, Dr. Devarajan had a meeting with the nurses and physicians to discuss some of the new electronic documentation protocols being implemented at MMC, during which Plaintiff again carried on a conversation with a staff member and disrupted Dr. Devarajan's meeting. (Id.) On July 16, 2013, Plaintiff again disrupted and engaged in confrontational behavior during a presentation by a highly regarded neonatologist at Morgan Stanley Children's. (A-2422-23.)

Later in 2013, Plaintiff violated MMC's policy that designated the attending neonatal physician on service to be in charge of discharge planning for very premature babies by interfering with the attending physician's established discharge plan. (A-2423.) Dr. Devarajan drafted a contemporaneous note to file in

order to document Plaintiff's failure to follow established department protocol and her inability to work as a member of the NICU team. (Id.) On November 5, 2013, Dr. Devarajan drafted another contemporaneous note to file based on her counseling Plaintiff with respect to a comment she made to a nurse that Dr. Rayjada's orders were "junk" and that Plaintiff was canceling them. (A-2424.)

On November 20, 2013, a Neonatal Performance Improvement (PI) meeting was scheduled, which required the attendance of all NICU physicians, including Plaintiff. Dr. Devarajan explicitly instructed Plaintiff that she was to attend this meeting, yet Plaintiff did not attend. (Id.)

On November 11, 2013, Plaintiff demanded that MMC take her off the FPPE. (A-2424.) On December 6, 2013, Dr. Devarajan notified Plaintiff that MMC intended to continue the FPPE because her conduct while on the FPPE demonstrated a lack of professionalism and respect, as well as a failure to adhere to departmental guidelines for patient management. (A-2425.)

8.     <u>MMC Removes Plaintiff's Title of "Assistant Director of Neonatology"</u>

All full-time neonatologists at MMC, which included Plaintiff, were required to maintain "Instructor" status in the Neonatal Resuscitation Program ("NRP"). (A-2425.) On or about December 9, 2013, MMC learned that Plaintiff had not completed the requisite continuing medical education (CME) to hold NRP "Instructor" status. (A-2425.) On December 27, 2013, based upon Plaintiff's

15

continued behavioral shortcomings and clinical issues with Plaintiff's patient management and her failure to maintain the required "Instructor" status, Dr. Devarajan informed Plaintiff that MMC was removing Plaintiff's title of "Assistant Director of Neonatology." (A-2426.) Dr. Devarajan explicitly warned Plaintiff that "[a]ny future evidence of insubordinate behavior may result in immediate removal from service and further disciplinary action." (A-2426.)

On December 27, 2013, Plaintiff sent an email to various individuals at MMC to voice her displeasure with the removal of her title. (A-2426.) On January 23, 2014, Dr. Reilly met with Plaintiff to discuss the various questions Plaintiff posed in her December 27, 2013 email. (Id.) Dr. Reilly reminded Plaintiff that he "will support and help" her through the process and that she should focus on meeting MMC's expectations for neonatologists, especially by cooperating with her supervisor, Dr. Devarajan. (A-2427.) Dr. Reilly confirmed that MMC's administrative team supported Dr. Devarajan's decision to remove Plaintiff's title based on Plaintiff's insubordinate and unprofessional behavior that was creating a conflict in the department and was counterproductive to and could compromise patient safety. (Id.)

On February 5, 2014, Plaintiff met with Dr. Devarajan, Dr. Reilly, and Aaron Glatt, M.D. ("Dr. Glatt"), the then-Executive Vice President and Chief Administrative Officer of MMC. (A-2428.) Dr. Glatt informed Plaintiff that her

16

unprofessional and inappropriate behavior must stop and that any more such

conduct by Plaintiff would result in further action being taken against her,

including suspension.  (Id.)  Dr. Glatt confirmed his support for Dr. Devarajan's

handling of the continuous issues with Plaintiff.  (Id.) Dr. Devarajan drafted a

contemporaneous note to file documenting the February 5, 2014 meeting.  (Id.)

     Following the February 5, 2014 meeting, Plaintiff sent an email to Dr. Glatt,

stating:  "I sincerely believe that all the humiliation and disrespect I have been put

through is because I am black, neither Caucasian nor Indian**.**"  (A-2429.)

Plaintiff's email to Dr. Glatt contained no mention of the FMLA, retaliation, or her

taking vacation to be with her adult daughter in Chicago in February 2013, a full

year earlier.  (Id.)

         9.   <u>Plaintiff's Continued Failure to Meet the Standard of Care,
External Review of Plaintiff's Cases, and Termination of
Plaintiff's Employment</u>

On June 17, 2014, two (2) of Plaintiff's cases were reviewed at a Peer

Review meeting due to concerns about "repeated intubations and extubations" and

"the medical necessity for the chest tube that was placed as well as the mal-

position of the actual tube placement."  (A-2429.)  MMC's peer review of

Plaintiff's two cases determined that Plaintiff failed to meet the standard of care

and that there were opportunities for improvement.  (A-2430.)

17

Later in 2014, MMC requested that Yang Kim, M.D. ("Dr. Kim"), the then-Medical Director of the Bellevue NICU and an Assistant Professor of Pediatrics at the NYU School of Medicine, perform an external quality assurance review of seven (7) of Plaintiff's cases. (A-2430.) Of the cases that Dr. Kim reviewed, Dr. Kim found questionable points of management and departures from the normal standard of care by Plaintiff with respect to the treatment of five of the seven patients. (Id.)

On August 21, 2014, MMC informed Plaintiff that her employment with MMC was terminated and that her clinical privileges were summarily suspended based on her well-documented deviations from the acceptable standard of care in a number of cases, her pattern and practice of unprofessionalism, her lack of respect and insubordination towards her director of service, her failure to accept remedial measures to improve her clinical knowledge and practice, as well as her failure to adhere to departmental policies, procedures, and guidelines. (A-2431.) Although Plaintiff was expressly informed of her right to formally challenge the suspension of her medical staff privileges, she did not do so. (A-2432-33.) Plaintiff's requests in 2012 for time off to visit her adult daughter in Chicago in February 2013 and her retaining Mr. Greenberg to assist in obtaining same played absolutely no role in the decision to terminate Plaintiff's employment. (Id.)

10. <u>New York State Department of Health, Office of Professional Medical Conduct Proceedings</u>

In accordance with its statutory obligations, MMC reported Plaintiff's termination to the OPMC, and the OPMC commenced an investigation into the termination. (A-2433.) As part of the process, the OPMC hired an independent expert, Jesus Jaile-Marti, M.D. ("Dr. Marti"), the then-Director of Neonatology at White Plains Hospital, to review medical records of patients treated by Plaintiff. (<u>Id.</u>) Dr. Marti issued a written report finding deviations from the generally accepted medical standards of care in four out of the five cases he reviewed. (<u>Id.</u>)

As a result of Dr. Marti's findings, the OPMC brought charges against Plaintiff and conducted a hearing for which Plaintiff retained counsel. (A-2434.) No one from MMC or CHSLI participated in the hearing. (<u>Id.</u>) After the hearing, the OPMC issued a decision revoking Plaintiff's license to practice medicine in New York State. (<u>Id.</u>) The OPMC's decision stated that "[i]t was evident to the committee that [Plaintiff] lacked awareness and understanding of [Plaintiff's] repeated and significant failures to meet acceptable standards of care" and that "[Plaintiff] showed no remorse and was unwilling to accept responsibility for her actions." (<u>Id.</u>)

19

**B.  Procedural Background**

    1.  <u>Plaintiff's Complaint, Defendants' Motion to Dismiss, and this Court's Decision Regarding the Motion to Dismiss</u>

On April 20, 2015, Plaintiff filed her original Complaint in this matter, alleging various federal and state causes of action sounding in race/national origin discrimination, retaliation, FMLA interference, defamation, and intentional infliction of emotional distress.  (A-2494.)  On May 15, 2015, Plaintiff filed her First Amended Complaint ("FAC"), which made only minor modifications to the original pleading.  (<u>Id.</u>)  On June 17, 2015, Defendants filed a motion to dismiss the FAC, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), for lack of subject matter jurisdiction and failure to state a claim.  (<u>Id.</u>).

On June 29, 2015, Plaintiff filed her motion for leave to amend the FAC and to file the Proposed Second Amended Complaint ("SAC").  (A-2495.)  The SAC asserted federal and state claims sounding in race/national origin discrimination, retaliation, hostile work environment, due process violations, FMLA interference, defamation, and intentional infliction of emotional distress.  (<u>Id.</u>)

On March 10, 2016, the District Court issued an Order that, <u>inter alia</u>, granted Defendants' motion to dismiss the FAC in its entirety, with prejudice, and denied Plaintiff's motion to amend the FAC as futile.  (A-2495.)  On or about March 18, 2016, Plaintiff filed a notice of appeal of that Order with this Court.  (A-2495.)

20

On January 20, 2017, this Court issued a Summary Order in which it largely affirmed the District Court's dismissal of Plaintiff's claims but permitted Plaintiff to proceed on a FMLA retaliation claim and correspondingly reinstated jurisdiction over Plaintiff's state law claims sounding in libel, slander, and intentional infliction of emotional distress. (A-2496.) On March 6, 2017, Defendants filed their motion to dismiss the SAC's state law claims sounding in libel, slander, and intentional infliction of emotional distress, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (A-2496.) On October 28, 2017, the District Court issued an Order dismissing Plaintiff's state law claims pursuant to Fed. R. Civ. P. 41(a)(1)(A) and stating that Plaintiff's sole remaining cause of action in this matter is the FMLA retaliation claim. (Id.)

### 2. Defendants' Motion for Sanctions Against Plaintiff and Her Counsel

On September 3, 2015, Defendants filed a motion for sanctions against Plaintiff and her counsel in connection with Plaintiff's repeated violations of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the Court's redaction rules. (A-2495.) On June 25, 2016, Judge Spatt granted Defendants' motion for sanctions, denied Plaintiff's motion for sanctions, and on November 20, 2018, directed Plaintiff's counsel to make payment of $25,622.50 to Defendants. (A-2495; Special Appendix to Appellant's Brief ("SPA")-1-13.)

### 3. Completion of Discovery

On December 5, 2019, Defendants' counsel deposed Plaintiff regarding her claims in this action. (A-2496, ¶ 19). On August 28, 2020, discovery closed with Plaintiff choosing not to take any defense depositions. (Id. ¶ 20).

## V. SUMMARY OF ARGUMENT

Plaintiff's Brief primarily consists of half-baked arguments without any cogent basis or citations to record evidence or case law. Plaintiff waives several of the issues she asserts on appeal, and with respect to any issues that she actually preserves on appeal, she utterly fails to present any record evidence or applicable law to support them.

First, the District Court appropriately granted summary judgment in favor of Defendants. Plaintiff failed to produce evidence to demonstrate that she provided Defendants with sufficient notice that her request for vacation time eight months prior to the requested time off qualified for protection under the FMLA. In addition, Plaintiff's FMLA retaliation claim also fails because she did not address (and therefore waived) the District Court's alternative grounds for granting Defendants' Motion for Summary Judgment – namely, that she did not produce evidence of retaliatory intent.

Second, Plaintiff presented a three-sentence, perfunctory argument that the District Court erred in imposing sanctions on her, and without developing any

argument on that issue, she waived her right to appeal it. Nevertheless, even if she did adequately address that issue in her Brief, the District Court was well within its discretion to impose the sanctions it imposed on Plaintiff's counsel for filing un-redacted medical records into the public record in bad faith.

Plaintiff likewise waived any appeal as to the District Court's denial of her motion to compel in connection with a subpoena on a third party hospital for the medical records of an infant by failing to sufficiently address that issue in her Brief. Nevertheless, even if she addressed such issue, the District Court did not abuse its discretion by denying her motion to compel.

Fourth, Plaintiff's arguments concerning her motions for sanctions against Defendants are baseless and nonsensical. She wholly fails to present any argument that the District Court abused its discretion in concluding that she did not present clear and convincing evidence to demonstrate, as she groundlessly claimed, Defendants engaged in fraud on the court.

Finally, Plaintiff has not carried her burden to demonstrate that the District Court erred in denying Plaintiff's motion to strike certain documents that she erroneously claimed to be expert reports. And, in any event, any error by the District Court with respect to this issue was harmless.

4859-5227-7775.2

## VI. ARGUMENT

### A. The District Court Appropriately Granted Summary Judgment In Favor of Defendants

#### 1. Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*. Mario v. P & C Food Markets, Inc., 313 F.3d 758, 763 (2d Cir. 2002). "Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Id. (citing Fed. R. Civ. P. 56(c)). "Where there are no disputed issues of material fact, '[this Court's] task is to determine whether the district court correctly applied the law.'" Id. (quoting Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995)).

#### 2. The Second Circuit's Decision on Defendants' Motion to Dismiss for Failure to State a Claim in the First Amended Complaint Does Not Preclude Summary Judgment

It is hornbook law that a motion to dismiss (which considers allegations of the complaint without regard to the evidence) and a motion for summary judgment (which considers record evidence) have entirely different standards of review, and a court's denial of a motion to dismiss is not a guaranteed ticket to a trial. Nevertheless, Plaintiff argues on appeal that this Court's previous conclusion that Plaintiff pleaded sufficient allegations to state a claim for FMLA retaliation precludes summary judgment on her FMLA retaliation claim.

24

"Unlike a Rule 12 motion, in which a party's allegations in the pleadings must be accepted, a court in considering summary judgment may look behind the pleadings to facts developed during discovery." George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp., 554 F.2d 551, 554 (2d Cir. 1977). "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56, Advisory Committee's Note to 1963 amendment.

Here, when this Court considered Defendants' motion to dismiss the FAC at the very beginning of this case, it was required to accept as true the allegations therein, including Plaintiff's allegations that she provided notice to Defendants of her need to take FMLA leave and that Defendants' reasons for terminating her employment were pretextual. However, Plaintiff failed to develop evidence throughout discovery to establish those allegations (and others). Thus, the District Court's decision on Defendants' motion for summary judgment – which considered a summary judgment record comprised of over 100 exhibits totaling more than 2,500 pages and "clearly relies on matters outside of the pleadings, such as depositions, admissions and affidavits" – is not circumscribed by this Court's prior decision on Defendants' motion to dismiss. See Pacheco v. New York Presbyterian Hosp., 593 F. Supp. 2d 599, 609 (S.D.N.Y. 2009) (quoting 10A Wright, Miller & Kane, Federal Practice and Procedure § 2713, at 233 (3d ed.

25

1998 & Supp. 2008) (A "ruling on a motion to dismiss for failure to state a claim for relief is addressed solely to the sufficiency of the complaint and does not prevent summary judgment from subsequently being granted based on material outside the complaint.").

3. Plaintiff Did Not Satisfy Her Burden to Produce Evidence to Establish a *Prima Facie* Claim of Retaliation

In order to make out a *prima facie* claim for a violation of the FMLA under a retaliation theory, a plaintiff must establish that: (1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.  Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004).  Here, Plaintiff did not produce evidence to establish the first or fourth elements of her *prima facie* case.  For either or both of these reasons, the sole claim in her Complaint fails.

 *a.* *Plaintiff Did Not Satisfy Her Burden to Produce Evidence that She Exercised Rights Under the FMLA Because She Did Not Provide Notice to Defendants of a Need to Take FMLA Leave for an Incapacitated Adult Family Member*

The FMLA provides "eligible employee[s]" with up to twelve (12) weeks of unpaid leave per year for certain family emergencies.  See 29 U.S.C. §2612(a)(1). As the only type of FMLA leave potentially relevant here, the FMLA entitles an eligible employee to take leave in order to "care for the spouse, or a son, daughter,

or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." See id.  However, "son or daughter" is defined to include **only children under eighteen (18) years of age or who are incapable of self-care because of a mental or physical disability**.  See 29 U.S.C. §2611(12)(A)-(B).

It is settled law that an employer is not required to affirmatively grant FMLA leave without sufficient notice from an employee that her requested time off qualifies under the FMLA.  Sanghvi v. Frendel, 242 F.3d 367 (2d Cir. 2000).  "[T]o be sufficient, notice must provide the employer with enough information to make clear that the employee's reason for seeking leave qualifies under the FMLA…." Id.

Here, because Plaintiff's daughter was 29 years old, Plaintiff would only qualify for FMLA if Plaintiff's need for leave was to care for her daughter because her daughter was "incapable of self-care because of a mental or physical disability." See 29 U.S.C. §2611(12)(A)-(B).  Thus, to provide Defendants with sufficient notice that her time off qualifies under the FMLA, Plaintiff was required to provide sufficient information to place Defendants on notice that her need for leave was to care for her daughter who was incapable of self-care because of a mental or physical disability.

However, with respect to Plaintiff's requested time off in February 2013, Plaintiff informed Defendants only as follows:  "I need the vacation in February

27

because my second daughter is due to deliver her first baby and she will need me."
(A-2721.)  On its face, Plaintiff's request does not provide Defendants with
sufficient notice that her need for "vacation" was based on any disability of her
daughter, nor does it provide sufficient notice that her daughter would be incapable
of self-care.  Thus, as both Magistrate Judge Locke and the District Court
concluded, the undisputed record evidence confirms that Plaintiff did not request
or even contemplate taking leave under the FMLA, and Plaintiff's request that her
daughter "need[ed]" her for the birth of her grandchild was insufficient to provide
Defendants with knowledge or reason to inquire as to whether Plaintiff's daughter
may have a serious health condition and may be incapable of self-care.  (SPA-72;
SPA-101; A-2408-10, ¶¶ 26, 28, 33-34, 37, 39-42).

Instead, the undisputed evidence establishes that Plaintiff sought only to use
her accrued paid vacation time to visit her adult daughter in Chicago so that she
could be present at the birth of her grandchild.  (A-2408-10, ¶¶ 26, 28, 33-34, 37,
39-42).  In fact, the charge that Plaintiff filed with the EEOC prior to instituting
this action confirms that she was simply attempting to take vacation to visit her
adult daughter and that she never contemplated FMLA leave until after the
commencement of this litigation.  (A-2901 ("[I]n August 2012, I put in **a request
for vacation in February 2013** to be with my daughter who was having a baby.
Following the repeated **denials of my vacation requests**, I retained an attorney. . .

28

.") (emphasis added). And, Plaintiff retained the services of an attorney, Joel Greenberg, Esq., specifically to assist in getting her vacation time and <u>not</u> to obtain or even discuss FMLA leave. (A-2411-12, ¶¶ 50-54). Plaintiff's requests for vacation time – without notice to Defendants that such time was to care for her daughter who would be disabled and incapable of self-care – were insufficient as a matter of law to exercise any rights under the FMLA. <u>See</u> <u>Sanghvi v. Frendel</u>, 242 F.3d 367 (2d Cir. 2000) (granting summary judgment in favor of the defendant where the plaintiff "labeled the leave as 'vacation'" and "failed to indicate that his father suffered from any medical condition that would qualify as a 'serious health condition' under the FMLA").

In Plaintiff's Brief, she makes a one-sentence argument that her "daughter was physically incapacitated and incapable of self-care for several weeks following the delivery of her baby." (Appellant's Brief, p. 23.) However, as the District Court appropriately concluded, such evidence is immaterial because it does not address "whether she in fact **alerted Defendants** to her daughter's conditions at the time she requested vacation time." (SPA-102 (Emphasis added.))

Likewise, although Plaintiff claims that Defendants generally had knowledge of Plaintiff's daughter's alleged medical conditions unrelated to her pregnancy (including anemia, recurring heart palpitations and a cardiac murmur), it is undisputed that she did not inform Defendants that the reason that she would

29

need time off in February 2013 was to care for her daughter who would be incapable of self-care because of such medical conditions.  Thus, even if true, Defendants' general knowledge of Plaintiff's adult daughter's alleged ongoing medical conditions was insufficient as a matter of law to provide adequate notice to Defendants that her daughter would be disabled seven months later in February 2013 based upon pregnancy-related complications due to these medical conditions – let alone that she would be incapable of self-care as a result.  See Seaman v. CSPH, Inc., 179 F.3d 297, 302 (5th Cir. 1999) (affirming district court's grant of summary judgment on the ground that the plaintiff failed to exercise his rights under the FMLA because although he told his employer that he may be suffering from bipolar disorder and needed time off to see a doctor, he did not tell his employer that he was off duty on the dates in question to seek medical attention for bipolar disorder); Slaughter v. Am. Bldg. Maint. Co. of New York, 64 F. Supp. 2d 319, 327–28 (S.D.N.Y. 1999) (concluding that a defendant's "general awareness of [an employee's] back troubles would not relieve [the employee] of the obligation to inform [the employer] that he was taking leave because of his back"); see also Brown v. The Pension Boards, 488 F. Supp. 2d 395, 401 (S.D.N.Y. 2007) (recognizing that an "employer is not required to be clairvoyant" and concluding that the plaintiff's phone calls, physician's letter stating that the plaintiff was under the doctor's care for an "exacerbation of chronic illness," the defendant's

30

conversations with the plaintiff's sister and mother, and an additional physician's letter, taken collectively, did not constitute adequate notice under the FMLA).

Accordingly, the District Court correctly held that Plaintiff failed to satisfy the first element of her *prima facie* FMLA retaliation claim because she did not satisfy her burden to demonstrate that she exercised rights protected under the FMLA. This Court should affirm that holding.

> b. *Plaintiff Did Not Satisfy Her Burden to Produce Evidence that Her Termination from Employment Occurred Under Circumstances Giving Rise to an Inference of Retaliatory Intent*

As an alternative ground for the District Court's Decision, it held that Plaintiff "fail[ed] to offer proof sufficient to withstand summary judgment on the fourth element of her *prima facie* case: whether 'the adverse action occurred under circumstances giving rise to an inference of retaliatory intent.'" (SPA-103) (citation omitted). Plaintiff does not argue in her Brief that the District Court erred in this holding, and, accordingly, any such argument is waived. See Tolbert, 242 F.3d at 75 (failure to sufficiently present an argument on appeal deems it waived); Coalition on W. Valley Nuclear Wastes, 592 F.3d at 314; LoSacco, 71 F.3d at 92–93. Accordingly, on this ground alone, this Court may affirm the decision of the District Court.

Even if Plaintiff had presented this issue for appeal, any such argument would fail because there is no evidence of retaliatory intent. To establish

31

retaliatory intent, a plaintiff must show either direct evidence of retaliatory animus directed at the plaintiff or circumstantial evidence, including "that the protected activity was followed closely by discriminatory treatment" or by evidence of "disparate treatment of fellow employees who engaged in similar conduct." Raniola v. Bratton, 243 F.3d 610, 625 (2d Cir. 2001). Here, Plaintiff is unable to present a scintilla of evidence satisfying her burden of proof as to Defendants' alleged retaliatory intent.

Not only is the record entirely devoid of any direct or indirect evidence of retaliatory intent on the part of Defendants, Plaintiff actually confirmed that Defendants never made any comments to her or anyone else about Plaintiff having asked for or actually taking vacation time. (A-2256, 346:16-24 ("Q. [ ] Did anyone make any comments about the fact that you had asked for or taken vacation? A. No, not directly to me. Q. Are you aware of anyone making comments to other – even if they didn't say it directly to you, are you aware of someone making a comment about it? A. No.")). Plaintiff's inability to present any evidence of Defendants' retaliatory intent warrants dismissal of her FMLA retaliation claim at the outset. See D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998) (holding that a plaintiff must "offer some hard evidence" and "may not rely on mere conclusory allegations nor speculation" in order to survive summary judgment); Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991) (holding that "bald

32

assertion[s], completely unsupported by evidence" cannot defeat summary judgment).

Additionally, to the extent Plaintiff seeks to rely on temporal proximity to support her claim of FMLA retaliation, that too fails because the span of time between her initial request for vacation (June 2012), her retaining an attorney to assist her with obtaining vacation (November 2012), her ultimately taking the requested vacation time (February 2013), and MMC's termination of Plaintiff's employment (August 2014), are far too attenuated as a matter of law. See O'Reilly v. Consol. Edison Co. of New York, 173 F. App'x 20, 22 (2d Cir. 2006) (holding that a three-month gap between FMLA leave and termination insufficient to create an inference of retaliation); Barney v. Consol. Edison Co. of New York, 2009 U.S. Dist. LEXIS 127178, at *41 (E.D.N.Y. Oct. 1, 2009) ("[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation."); Ruhling v. Tribune Co., 2007 U.S. Dist. LEXIS 116, at *72-73 (E.D.N.Y. Jan. 3, 2007) (noting that "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line"); Nicastro v. Runyon, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999) ("Claims of retaliation are routinely dismissed when as few as three months elapse between the protected EEO activity and the alleged act of retaliation.").

33

Moreover, this Court has repeatedly affirmed grants of summary judgment "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity" because under such circumstances, "an inference of retaliation does not arise." Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001). As the District Court aptly noted, the undisputed evidence demonstrates that Defendants took "extensive investigatory and disciplinary actions… before she retained her attorney in November 2012." (SPA-103-104 n.10 (detailing the disciplinary actions Defendants took prior to her attorney's involvement concerning her request for vacation time)). Defendants began an internal review of Plaintiff's clinical management after a report from a third-party doctor unaffiliated with MMC and CHSLI in August 2012, and thereafter commenced an external review, requiring the assistance of multiple unaffiliated doctors who provided their written assessments in October 2012. (SPA-104 n.10.) Plaintiff did not hire her attorney until November 2012 (and, as noted above, she hired her attorney to seek vacation time – not FMLA). (SPA-104 n.10.) In all, Plaintiff has presented no evidence whatsoever to establish an inference of retaliatory intent.

Accordingly, Plaintiff's sole remaining claim should be dismissed, both because she waived any argument concerning her failure to establish the fourth

4859-5227-7775.2

element of her *prima facie* claim and because the record is devoid of any evidence to establish that element.

    4.    <u>Plaintiff Has Not Presented Any Credible Legal Authority to Support Her Argument that the District Court was Precluded from Considering Magistrate Judge Locke's R&R</u>

Grasping at straws in an attempt to save her claim, Plaintiff attempts to invent a technicality that does not exist. She shockingly requests that this Court reverse the District Court's decision because she believes that Magistrate Judge Locke no longer had authority to issue the R&R "upon the death of Hon. Judge Feuerstein." (Appellant's Brief, p. 26.)

Before the District Court, Plaintiff cited no authority for this proposition. Now, Plaintiff attempts to ground this argument in 28 U.S.C. §636(b)(1), which she claims requires a magistrate judge to submit a report and recommendation to the particular district court judge who referred the case to the magistrate. However, Plaintiff's argument runs contrary to the plain language of 28 U.S.C. §636(b)(1), which states that a district court judge may designate a magistrate judge "to submit to **a judge of the court** proposed findings of fact and recommendations for the disposition, by **a judge of the court**," of a motion for summary judgment. 28 U.S.C. §636(b)(1)(B). Nowhere in 28 U.S.C. §636 does it require the particular district judge who referred the matter to the magistrate judge

35

to ultimately receive the report and recommendation and issue the decision with respect to the underlying matter.

Nor is there any support for Plaintiff's argument in the record of this case. On January 22, 2021, Judge Feuerstein entered a Text Order, without any contingencies, stating as follows:

> Cross-motions for summary judgment … , as well as motions to strike …, as limited by this Court's prior order, … are respectfully referred to the Magistrate Judge for report and recommendation. Ordered by Judge Sandra J. Feuerstein on 1/22/2021. Motions referred to Steven I. Locke.

(A-27.) Plaintiff's attempt to get a second bite at the apple, through her apparent position that Judge Feuerstein's unfortunate death would nullify all Orders she entered before her death, is baseless and repulsive.

### B. Plaintiff Has Not Carried Her Burden to Establish that the District Court Abused Its Discretion by Imposing Sanctions on Plaintiff's Counsel

#### 1. Standard of Review

"This Court reviews 'all aspects of a District Court's decision to impose sanctions for abuse of discretion.'" U.S. v. Seltzer, 227 F.3d 36, 39 (2d Cir. 2000) (quoting Schlaifer Nance & Co. v. Estate of Andy Warhol, 194 F.3d 323, 333 (2d Cir. 1999)).

36

2.      Plaintiff Waived Her Appeal as to the Court's Imposition of
Sanctions Upon Plaintiff's Counsel

"It is a 'settled appellate rule that issues adverted to in a perfunctory manner,

unaccompanied by some effort at developed argumentation, are deemed waived.'"

Tolbert v. Queens College, 242 F.3d 58, 75 (2d Cir. 2001) (quoting United States

v. Zannino, 895 F.2d 1, 17 (1st Cir.), cert. denied, 494 U.S. 1082 (1990)).

In her principal brief, Plaintiff baldly asserts, as her only argument on the

issue of sanctions imposed on Plaintiff's counsel, that "[c]learly, the numerous

Patient Personal Information were all redacted enough to make it impossible to

identify the Patient."  (Appellant's Brief, p. 58-59.)  Plaintiff does not cite any

support in the record or in the law for this argument (aside from the typewritten

word "Caselaw" following her purported argument).  Plaintiff's failure to develop

any meaningful argument or to support it with citation to applicable law waives her

appeal as to this issue.  See Tolbert, 242 F.3d at 75; Coalition on W. Valley

Nuclear Wastes v. Chu, 592 F.3d 306, 314 (2d Cir. 2009) (holding that two-

sentence legal analysis in opening brief is insufficient to preserve an issue for

appellate review and noting that "[t]he premise of our adversarial system is that

appellate courts do not sit as self-directed boards of legal inquiry and research, but

essentially as arbiters of legal questions presented and argued by the parties before

them"); LoSacco v. City of Middletown, 71 F.3d 88, 92–93 (2d Cir. 1995)

37

(holding, in the context of a <u>pro se</u> appeal, that issues not raised in an appellate

brief are abandoned).

3.     <u>Plaintiff Has Not Carried Her Burden to Establish that the District Court Abused Its Discretion by Imposing Sanctions</u>

Plaintiff failed to sufficiently raise an issue with respect to the District

Court's decision on Defendants' motion for sanctions – let alone establish that it

abused its discretion in imposing sanctions against Plaintiff's counsel. First,

Plaintiff's argument on appeal that it was impossible to identify patients is

baseless. Indeed, in its Summary Order with respect to Defendants' earlier motion

to dismiss the FAC, this Court acknowledged that Plaintiff attached "hundreds of

pages of documents to her various complaints" and "[m]any of those pages contain

information which should have been filed under seal pursuant to HIPAA and

Federal Rule of Civil Procedure 5.2." (A-306.)

Moreover, the District Court was well within its discretion to impose

sanctions upon Plaintiff. The District Court's Order explained, in pertinent part:

(i) Plaintiff was warned several times – including by an Order of the District Court,

Fed. R. Civ. P. 5.2, a 2004 administrative order by the District Court, and the

CM/ECF filing system itself – to redact sensitive information from filings; (ii)

despite these warnings, Plaintiff filed a complaint with hundreds of pages of

medical records of Plaintiff's patients without redacting sensitive information; and

(iii) Plaintiff's counsel thereafter refused to redact or seal the documents even after

38

being notified by Defendants' counsel of his obligation to do so, and in opposing

Defendants' subsequent motion to seal, Plaintiff yet again attached exhibits

containing infant patient names and their sensitive information.  (SPA-6-7.)  The

District Court found that this conduct demonstrated that Plaintiff's counsel acted in

bad faith with respect to such filings, (SPA-7-8), even though the District Court

was not required to find bad faith to impose sanctions.  Seltzer, 227 F.3d at 42

("[W]hen the district court invokes its inherent power to sanction misconduct by an

attorney that involves that attorney's violation of a court order or other misconduct

that is not undertaken for the client's benefit, the district court need not find bad

faith before imposing a sanction under its inherent power.").

Based upon these findings, the District Court imposed sanctions pursuant to

its inherent discretion, 28 U.S.C. §1927, and Fed. R. Civ. P. 11, and it cited to

substantial support in the law.  (SPA-5-9.)  Plaintiff has failed to establish that the

District Court abused its discretion.

### C. Plaintiff Has Not Carried Her Burden to Establish that the District Court Abused Its Discretion by Denying Her Motion to Compel a Third Party to Produce Irrelevant Medical Records of an Infant

#### 1. Standard of Review

"Motions to compel and motions to quash a subpoena are both 'entrusted to

the sound discretion of the district court,'" and this Court reviews such decisions

only for an abuse of discretion."  In re Fitch, Inc., 330 F.3d 104, 108 (2d Cir. 2003)

(quoting <u>United States v. Sanders</u>, 211 F.3d 711, 720 (2d Cir. 2000)). "A district court abuses its discretion when '(1) its decision rests on an error of law ... or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions.'" <u>Id.</u> (quoting <u>Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukr.</u>, 311 F.3d 488, 498 (2d Cir.2002)).

2.  <u>Plaintiff Waived Her Appeal as to the Court's Denial of Her Motion to Compel</u>

Plaintiff's only purported argument concerning the District Court's Motion to Compel is a broad claim that the records requested by the subpoena "would further prove the deletion of the Patient's Charts" and a conclusory argument that the "District Court absurdly rul[ed] that the records were excessive to the needs of the case." (Appellant's Brief, p. 44.) Once again, Plaintiff cites to no record evidence or case law in support of her argument. She does not argue that the District Court's decision rested on an error of law, nor does she argue that the District Court made any clearly erroneous factual finding, as required to establish an abuse of discretion. <u>In re Fitch, Inc.</u>, 330 F.3d at 108. Plaintiff's failure to present any meaningful argument or support in the record and law waives her appeal of this issue. <u>See</u> <u>Tolbert</u>, 242 F.3d at 75; <u>Coalition on W. Valley Nuclear Wastes</u>, 592 F.3d at 314; <u>LoSacco</u>, 71 F.3d at 92-93.

40

3.  Plaintiff Has Not Carried Her Burden to Establish that the
    District Court Abused Its Discretion by Denying Her Motion to
    Compel

As explained above, Plaintiff does not claim in her brief that the District

Court abused its discretion in denying her Motion to Compel (nor does she cite to

the record or any law). Instead, Plaintiff only lobs a loose insult that the District

Court's ruling was "absurd[]." (Appellant's Brief, p. 44.) Thus, on its face,

Plaintiff's brief does not establish any basis to establish that the District Court

abused its discretion.

The District Court performed a detailed analysis of the documents requested

by Plaintiff's subpoena on a third party hospital for the medical records of an

infant (with citations to the record and applicable law), and it agreed with

Magistrate Judge Locke that such records were not relevant nor proportional to the

needs of the case because the records concern the medical care of a patient after the

patient left MMC and which Plaintiff does not claim Defendants ever saw or relied

on in making the decision to terminate her employment. (SPA-28-32.) Thus, even

if Plaintiff had not waived this argument by failing to sufficiently address it in her

Brief, the District Court did not abuse its discretion in denying Plaintiff's Motion

to Compel.

41

4859-5227-7775.2

**D.      Plaintiff Has Not Carried Her Burden to Establish that the District Court Abused Its Discretion in Denying Plaintiff's Frivolous Motions for Sanctions**

1.      <u>This Court Need Not Consider Plaintiff's Arguments with Respect to the Plaintiff's Motion for Sanctions</u>

Having no real claim against Defendants, Plaintiff resorts to baselessly alleging that several of the documents submitted in support of Defendants' Motion for Summary Judgment were forgeries, which allegations serve as the basis for her motions for sanctions against Defendants.  As both Magistrate Judge Locke and the District Court concluded, the documents which Plaintiff erroneously claims are fraudulent are immaterial to the issue of whether Plaintiff provided sufficient notice under the FMLA.  (SPA-93.)  Accordingly, this Court need not consider Plaintiff's (sometimes incoherent) arguments with respect to her motions for sanctions, and, instead, may affirm the decision of the District Court based on Plaintiff's failure to provide adequate notice under the FMLA.

2.      <u>Standard of Review</u>

"This Court reviews 'all aspects of a District Court's decision to impose sanctions for abuse of discretion.'"  <u>Seltzer</u>, 227 F.3d at 39 (quoting <u>Schlaifer Nance & Co.</u>, 194 F.3d at 333).  "A district court abuses its discretion when '(1) its decision rests on an error of law ... or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions.'"  <u>In</u>

42

re Fitch, Inc., 330 F.3d at 108 (quoting Monegasque De Reassurances S.A.M., 311

F.3d at 498).

### 3. The District Court Did Not Abuse Its Discretion in Denying Plaintiff's Motion for Sanctions

The record with respect to Plaintiff's several frivolous motions for sanctions

speaks for itself.  After Defendants filed a motion for sanctions against Plaintiff's

counsel because he filed un-redacted documents containing sensitive information

and refused to file such documents under seal, Plaintiff's counsel went on a tirade

by filing motions for sanctions at every opportunity – even after the District Court

warned him to exercise more caution in filing such frivolous motions.

### a. Procedural Background

On September 3, 2015, Defendants filed a motion for sanctions against

Plaintiff and her counsel because he failed to redact hundreds of pages of

documents attached to his Complaint that contained sensitive patient information

and he refused to file such documents under seal.  (A-4.)  The very next day,

Plaintiff filed a motion for sanctions against Defendants on the bizarre ground that

she believed the EEOC colluded with Defendants' counsel to prevent her from

obtaining discovery related to her discrimination claims.  (A-5; SPA-9.)  The

District Court denied Plaintiff's motion for sanctions and stated that it "finds the

Plaintiff's contentions in this regard to be wholly unsupported, speculative, and

without any basis." (SPA-9.) Plaintiff appealed the District Court's denial of her

motion for sanctions, and this Court affirmed the District Court's decision, stating:

> We identify no [abuse of discretion] here. The only evidence
> presented in support of [Plaintiff's] sanctions motion was a
> conversation between defense counsel and the EEOC in which
> defense counsel sought to confirm that the EEOC would not share
> [Plaintiff's] charge file (which contained sensitive information) with
> anyone other than [Plaintiff] and her attorney. There is no evidence
> that defense counsel tried to prevent [Plaintiff] herself from obtaining
> the file, or that counsel otherwise acted in bad faith.

Offor v. Mercy Medical Center, et al., No. 16-2342, Docket No. 106-1.

On March 3, 2019, Plaintiff filed another motion for sanctions, which the

District Court denied because Plaintiff failed to meet and confer with Defendants,

as required by the Federal Rules of Civil Procedure and the Local Rules. (A-13.)

Thereafter, on July 22, 2019, Plaintiff again filed a motion for sanctions against

Defendants and their counsel, based on purported spoliation of documents. On

October 4, 2019, the District Court denied Plaintiff's motion, stating, in pertinent

part:

> [T]here is no indication that the Defendant spoliated evidence
> whatsoever. According to Plaintiff, she and two other treating nurses

44

kept certain detailed treatment notes regarding a patient at Mercy Medical Center, which the Defendants deleted when they produced the patient's medical records to the [OPMC]. However, the Plaintiff neither identifies documents corroborating the existence of those treatment notes nor provides credible, sworn testimony to that effect.

…

[T]he uncontroverted evidence overwhelmingly establishes that the treatment notes that Plaintiff seeks never existed. The Defendants furnished affidavits from the nurses identified in the Plaintiff's motion, who confirmed that they have no recollection of entering the notes. Moreover, the Defendants provided a detailed accounting of its electronic medical record system, explaining that any treatment notes entered by the Plaintiff would have been stored permanently (along with any deletions or alterations to those notes). An audit of those records revealed no entries, deletions, or alterations of the sought-after notes. Unsurprisingly, the Plaintiff failed to respond to either pieces of evidence in her reply. Although it is normally difficult to prove a negative, this is not one of those cases. It is abundantly clear that the Defendants neither deleted nor altered evidence relevant to the Plaintiff's claims.

45

(SPA-16-17.) The District Court went on to "warn [Plaintiff's counsel] to exercise significantly more discretion regarding discovery motion practice," stating:

> Since May, [Plaintiff's counsel] has filed three consecutive motions that are totally meritless, if not frivolous. Each motion utterly failed to articulate a cogent basis for granting the relief sought, consisting entirely of his poorly organized conclusory assertions and baseless allegations. The Court reminds [Plaintiff's counsel] that by filing a motion he is certifying that there are reasonable grounds supporting that motion. No definition of reasonable includes the sort of motions filed over the past few months, which have required the Court to needlessly expend resources on trivial issues and significantly impeded the efficient administration of justice. Although the Court will not sanction him at this time, if [Plaintiff's counsel] fails to adopt a different posture in the future, it will have little choice.

(SPA-18.)

Undeterred, Plaintiff filed another frivolous motion for sanctions just two months later. (A-18.) In that motion, Plaintiff requested that the Court impose sanctions in the amount of $10 million and issue an adverse inference at trial against Defendants for alleged spoliation of evidence, yet again without any evidentiary support of such alleged spoliation. (A-3482-3490.)

46

Before the Court could render a decision on Plaintiff's motion for sanctions, District Judge Spatt passed away and the case was reassigned to District Judge Feuerstein. On September 14, 2020, District Judge Feuerstein held a status conference, at which she: (1) set a briefing schedule for the Parties' dispositive motions; (2) *sua sponte* terminated Plaintiff's motion for sanctions without prejudice; and (3) stated that Plaintiff was free to incorporate her motion for sanctions into her dispositive motion. (SPA-34, 36-37.) The same day, Plaintiff moved for reconsideration.

On October 5, 2020, the District Court granted Plaintiff's motion for reconsideration, but, upon reconsideration, adhered to its termination decision (which terminated Plaintiff's motion for sanctions without prejudice and permitted her to incorporate arguments concerning spoliation and sanctions into her dispositive motion). In its Order, the District Court stated that Plaintiff failed to meet her burden to show any intervening change of controlling law or the availability of new evidence, and there had been no "determination" on Plaintiff's motion because it was terminated and not denied. (SPA-39.) The District Court expressly noted that its termination order was "simply a case management order" and it "has not foreclosed Plaintiff's ability to make her substantive arguments raised in her [motion for sanctions], as clearly articulated by the Court at the September 14, 2020 Status Conference." (SPA-39.)

47

Thereafter, Plaintiff nevertheless served two motions for sanctions on Defendants, rather than including such arguments in her dispositive motion, as required by the District Court in its October 5, 2020 Order. On December 15, 2020, the District Court entered another Order, stating: "Plaintiff has, at best, misunderstood, or at worst, purposefully disregarded, the Court's orders regarding the procedure for putting her sanctions arguments before it. Reiterating those prior rulings, the Court again directs that Plaintiff's arguments be included within the summary judgment papers." (SPA-42 (Emphasis in original.))

Finally, Plaintiff listened to the District Court and included the arguments in her summary judgment papers. In Magistrate Judge Locke's R&R, he recommended granting summary judgment in favor of Defendants and "decline[d] to address" Plaintiff's spoliation arguments which concerned documents related to the retaliatory intent prong of the FMLA analysis – an issue that he did not need to reach in order to recommend granting summary judgment in favor of Defendants. (SPA-72, n.4.) In its Decision, the District Court nevertheless considered *de novo* each of Plaintiff's arguments concerning the spoliation of documents.

4859-5227-7775.2

#### b. *Applicable Law*

As the District Court noted, "[f]raud upon the court must be established by clear and convincing evidence." King v. First Am. Investigations, Inc., 287 F.3d 91, 95 (2d Cir. 2002).  To support a finding of fraud on the court, a movant must produce "evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue."  Garcia v. Griffin, 2021 U.S. Dist. LEXIS 77762, at *3 (S.D.N.Y. Apr. 22, 2021) (quoting Blair v. Inside Ed. Prods., 7 F. Supp. 3d 348, 358 (S.D.N.Y. 2014)).  Thus, the proof must be "highly probable" and "leave[ ] no substantial doubt." Waran v. Christie's Inc., 315 F. Supp. 3d 713, 718–19 (S.D.N.Y. 2018) (quoting Dongguk Univ. v. Yale Univ., 734 F.3d 113, 123 (2d Cir. 2013)).  "Fraud on the court will not lie where the alleged misconduct merely consists of 'an advocate's view of the evidence, drawing all inferences favorable to the [client] and against the [adversary].'"  Passlogix, Inc. v. 2FA Tech., LLC, 708 F. Supp. 2d 378, 407 (S.D.N.Y. 2010) (citation omitted).

In a detailed analysis spanning eleven pages, the District Court carefully considered each piece of evidence that Plaintiff claimed to amount to "fraudulent materials" and rejected each of Plaintiff's arguments with respect to the same. (SPA-81-93.)  Each of the Exhibits that Plaintiff erroneously claims to be fraudulent will be discussed in turn.

49

*c. Exhibit II*

With respect to Exhibit II (A-2605), the District Court noted that Plaintiff correctly pointed out an inconsistency between the date of Dr. Devarajan's note (October 28, 2013) and the dates listed in the body of the note, which were dated "11/25/2013" and "11/28/2013," because such events had not occurred as of the date of the note. However, the District Court concluded that, if the events described in the note occurred in October 2013, and Dr. Devarajan confused October for the eleventh month, "everything lines up" with respect to the days of the week as compared to the dates of the note.

In her Brief, Plaintiff asserts that "the facts don't line up" because Dr. Devarajan was not on call on either October 28, 2013 or November 28, 2013. (Appellant's Brief, p. 30.) However, Plaintiff's assertion ignores the record evidence cited by the District Court, which shows that Dr. Devarajan was, in fact, scheduled for October 28, 2013. (A-3212.) Otherwise, Plaintiff's arguments merely repeat the arguments she made below, which the District Court appropriately rejected. Plaintiff has not established that the District Court abused its discretion in concluding that Plaintiff did not present clear and convincing evidence of fraud on the court.

4859-5227-7775.2

### d. *Exhibit PP*

Likewise, the overwhelming evidence demonstrates that there was no fraud on the court with respect to Exhibit PP (A-2703-04). Plaintiff claims that Dr. Devarajan "falsely claimed" in that document that she presented it to Plaintiff on June 15, 2013. Yet, Dr. Devarajan submitted a declaration explaining, with respect to Exhibit PP, that she drafted the letter on June 15, 2013, submitted it to the Human Resources Department, and ultimately delivered the letter on July 1, 2013. As the District Court properly noted, Dr. Devarajan's mistake in the letter does not amount to a fraud on the court, especially where Dr. Devarajan "owns up to her 'inadvertent error.'" (SPA-85.) Plaintiff makes no new argument on appeal that she did not already make below, which the District Court appropriately rejected. Plaintiff has not established that the District Court abused its discretion in concluding that Plaintiff did not present clear and convincing evidence of fraud on the court.

### e. *Exhibit AA*

Plaintiff claims that Exhibit AA (A-1841-46) is a "poorly forged email" from Dr. Richard J. Schanler based on the fact that it came from the email address, "rschanle@nshs.edu," rather than the email address through which Plaintiff ordinarily communicated, "schanler@nshs.edu." (Appellant's Brief, p. 34.) This argument was already considered and rejected by the District Court. In particular,

51

the District Court noted that Plaintiff's claim that she ordinarily communicated with the "schanler@nshs.edu" did not rule out the possibility that Dr. Schanler had two email addresses – let alone establish that it was "highly probable" and "leave[ ] no substantial doubt" that it was a forgery, as required to demonstrate fraud on the court.  (SPA-86.)  Moreover, the District Court took judicial notice of textbook listings and other documents listed Dr. Schanler's email address as "rschanle@nshs.edu," in further support of the fact that Dr. Schanler may have had two email addresses.  (SPA-86.)  In all, Plaintiff failed to present clear and convincing evidence that Exhibit AA was a forgery, and the District Court did not abuse its discretion in denying Plaintiff's motion for sanctions with respect to the same.

### f.  Exhibit SS

Plaintiff likewise claims that Dr. Devarajan's note to file (Exhibit SS, A-2719) memorializing a meeting between Dr. Devarajan, Plaintiff, and Dr. Glatt amounted to a "fraudulent mischaracterization" of that meeting because she believes that note to file and Dr. Glatt's email to Human Resources are inconsistent.  (Appellant's Brief, p. 36.)  The District Court considered this argument and rejected it.  As the District Court appropriately concluded, "Dr. Glatt's and Dr. Devarajan's recollections are not irreconcilable" and "[t]he divide between 'general' and 'specific'" nature of Dr. Glatt's and Dr. Devarajan's notes,

respectively, "is not great enough to indicate fraud." (SPA-88.) Plaintiff has not presented anything in her Brief to demonstrate that the District Court abused its discretion in reaching this conclusion.

### g. *Exhibit Z*

Finally, Plaintiff takes issue with the District Court's denial of her motion for sanctions with respect to Exhibit Z (A-2767-72), which she claims to be a "fabrication." (Appellant's Brief, p. 36-40.) Plaintiff's argument with respect to Exhibit Z is, for the most part, nonsensical and incapable of comprehension.

From the best Defendants can discern, Plaintiff appears to claim that Exhibit Z is a forgery because Defendants' counsel stated that it did not exist. However, the District Court considered and rejected this argument. In particular, the District Court recognized that Exhibit Z concerns Patient No. 4, and Plaintiff only moved to compel MIDAS reports with respect to Patient Nos. 1, 2, 3, 5, 11, 12, and 13. (SPA-90.) Thus, Defendants' counsel's representation that it did not have MIDAS reports with respect to Patient Nos. 1, 2, 3, 5, 11, 12, and 13, was not a misrepresentation at all. (SPA-90.) Moreover, Plaintiff's claim that Defendants' counsel allegedly misrepresented that Exhibit Z did not exist in a letter dated February 19, 2020, (A-4063), is belied by the evidence. Indeed, Defendants produced the document that would later become Exhibit Z nearly two years earlier

53

in September 2018.  (A-2767-72, Bates Nos. D000411-16 from Defendants'

Production of Documents.)

Otherwise, as before the District Court, Plaintiff's objections before this

Court appear to amount to nothing more than "an advocate's view of the evidence"

and "her disagreement with the report's substance does not prove fraud."  (SPA-89

(quoting Intelli-Check, Inc. v. TriCom Card Techs., Inc., 2005 U.S. Dist. LEXIS

38196, at *37 (E.D.N.Y. Dec. 22, 2005)).

Accordingly, Plaintiff did not produce before the District Court clear and

convincing evidence to demonstrate that Exhibit Z amounted to a fraud on the

court.  Thus, Plaintiff has failed to establish that the District Court abused its

discretion in denying her motion for sanctions with respect to the same.

### E.   Plaintiff Has Not Carried Her Burden to Establish that the District Court Abused Its Discretion in Denying Plaintiff's Motion to Strike Certain Documents Plaintiff Erroneously Claimed to be Expert Reports

#### 1.   Standard of Review

Plaintiff incorrectly states that a *de novo* standard of review applies to the

District Court's denial of her Motion to Strike certain evidence for purposes of

Defendants' Motion for Summary Judgment.  "A district court deciding a summary

judgment motion 'has broad discretion in choosing whether to admit evidence,'"

and this Court reviews a district court's evidentiary determinations in connection

with a motion for summary judgment for an abuse of discretion.  Presbyterian

54

Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 264 (2d Cir. 2009)

(quoting Raskin v. Wyatt Co., 125 F.3d 55, 65 (2d Cir. 1997)).  As explained

below, the documents that Plaintiff claims to be "expert reports" are actually

contemporaneous fact-based documents created years before Plaintiff filed her

Complaint in this matter.  Nevertheless, even if Plaintiff were correct that the

documents at issue were "expert reports," this Court would review the District

Court's decision under an abuse of discretion rubric and only disturb its decision if

it is "manifestly erroneous."  Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d

256, 265 (2d Cir. 2002).

> 2. Plaintiff Has Not Carried Her Burden to Demonstrate that the
> District Court Abused Its Discretion in Denying Plaintiff's
> Motion to Strike Because the Documents at Issue Are Not
> Expert Reports

Plaintiff argues that the District Court erred by admitting several documents

which she (falsely) claims "MMC … purport[ed] to be Expert Reports" on the

basis that such documents "do not provide sufficient information regarding the

background of the author."  (Appellant's Brief, p. 56.)  Defendants never claimed

that the documents cited by Plaintiff (i.e., Exhibits AA, AAA, BB, Y and VV)

were expert reports – because they are not.

Plaintiff cites no case law in support of her view that these documents are

expert reports.  The Federal Rules of Evidence do not require that all documents

created by individuals with specialized knowledge in a particular field be

55

considered "expert reports." Rather, as this Court has held, "[t]he fact that [a witness] has specialized knowledge, or that he carried out [an] investigation because of that knowledge, does not preclude him from testifying pursuant to Rule 701, so long as the testimony was based on the investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise in [the applicable area of expertise]." Bank of China, New York Branch v. NBM LLC, 359 F.3d 171, 181 (2d Cir. 2004). Thus, "a party need not identify a witness as an expert so long as the witness played a personal role in the unfolding of the events at issue and the anticipated questioning seeks only to elicit the witness's knowledge of those events." Gomez v. Rivera Rodriguez, 344 F.3d 103, 113–14 (1st Cir. 2003).

Here, the documents cited by Plaintiff as purported "expert reports" were all based on contemporaneous external reviews of Plaintiff's clinical performance and were not rooted exclusively in the expertise of the witness at issue. Accordingly, the District Court appropriately concluded that these contemporaneous documents were not "expert reports" in the first instance, and it did not abuse its discretion in denying Plaintiff's Motion to Strike.

4859-5227-7775.2

3.     <u>The District Court Did Not Consider the Purported "Expert Reports" In Connection with Its Decision on Plaintiff's Failure to Provide Sufficient Notice Under the FMLA</u>

Even if Plaintiff could establish that the District Court abused its discretion in denying Plaintiff's Motion to Strike (which she cannot), any potential error was harmless.  Magistrate Judge Locke did not consider the documents at issue at all in his R&R, and the District Court did not consider such documents with respect to the issue of Plaintiff's failure to provide notice under the FMLA.  Indeed, such expert reports, which concerned Plaintiff's clinical performance issues have nothing to do with whether Plaintiff's request for "vacation" time was sufficient to exercise her rights under the FMLA.  Accordingly, even if the District Court did abuse its discretion in concluding that the documents at issue concerning Plaintiff's clinical performance issues were "expert reports" (which it did not), this Court should nevertheless affirm the decision of the District Court because any such error was harmless. <u>See</u> <u>Fahie v. Rivera</u>, 510 F. App'x 93, 95 (2d Cir. 2013) (unpublished) ("Even if [the plaintiff] could demonstrate that the district court's admission of the report as a business record was an abuse of discretion, however, we find that any potential error was harmless.") (citing Fed. R. Civ. P. 61).

## VII.  CONCLUSION

For the reasons stated herein, this Court should affirm the decision of the

District Court in favor of Defendants with respect to all Orders listed in Plaintiff's

Notice of Appeal.

/s/ Aaron F. Nadich

Tara E. Daub
Aaron F. Nadich
NIXON PEABODY LLP
50 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 832-7500
tdaub@nixonpeabody.com
anadich@nixonpeabody.com

4859-5227-7775.2

## CERTIFICATION OF COMPLIANCE WITH RULE 32(a)

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,992 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word, in 14-point Times New Roman font.

/s/ Aaron F. Nadich
Aaron F. Nadich
Attorney for Appellees
Dated:  February 16, 2022

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on the 16th day of February, 2022, I filed and served this document electronically through the Court's CM/ECF system to:

Ike Agwuegbo Esq
IKE AGWUEGBO & CO P.C.
15 Ocean Avenue, Suite 2c
Brooklyn, NY 10022