RECORD NO.

# 21-2115

In The

# United States Court of Appeals

### For The Second Circuit

## DR. CHINWE OFFOR,

*Plaintiff – Appellant,*

**v.**

## MERCY MEDICAL CENTER, ROCKVILLE CENTRE DIVISION, CATHOLIC HEALTH SERVICES OF LONG ISLAND, DR. SWARNA DEVARAJAN, DR. JOHN P. REILLY,

*Defendants – Appellees.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK (CENTRAL ISLIP)

————————

## REPLY BRIEF OF APPELLANT

————————

**Ike Agwuegbo**
**IKE AGWUEGBO & CO P.C.**
**15 Ocean Avenue, Suite 2C**
**Brooklyn, New York 11225**
**718-355-0585**

*Counsel for Appellant*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................v

INTRODUCTION AND SUMMARY OF THE ARGUMENT ..............................1

ARGUMENT .........................................................................................1

1. THIS IS AN FMLA RETALIATION CASE........................................1

2. AN EMPLOYEE WHO DID NOT QUALIFY FOR FMLA
   CAN STILL PURSUE AN FMLA RETALIATION CLAIM ............2

3. THE DISTRICT COURTS DECISIONS DENYING OFFOR'S
   SANCTION MOTIONS ........................................................5

   A. THE DENIAL OF OFFOR'S SANCTIONS MOTIONS
      DATED 12/01/2020 AND 12/06/2020......................................5

      THIS COURT SHOULD IGNORE MMC & CO'S
      ARGUMENTS RAISED FOR THE FIRST TIME ON
      APPEAL....................................................................6

      (i) EXHIBIT II (A-2605 AT VOL. 11) ................................6

      (ii) EXHIBIT PP.........................................................8

      MMC'S DUELING AFFIDAVITS ...........................................9

      MMC & CO FAILED TO RESPOND IN ANY WAY
      TO OFFOR'S ARGUMENT ON THIS DOCUMENT.............9

      (iii) EXHIBIT AA (A1840, Vol. 8)......................................10

      (iv) EXHIBIT SS (A2718, VOL. 12) ...................................10

      (v) EXHIBIT Z (A2766 Vol. 12) .......................................11

B.   THE TERMINATION OF OFFOR'S MOTION FOR SANCTIONS DATED 12/05/2019 (SPA-33) (A3481-3491, Vol. 15) (A3492-3679, Vol. 16) (A3680-3948, Vol. 17) (A3949-4051, Vol. 18) ................................................14

      (i)   RISK MANAGEMENT INVESTIGATION/TIMELINE OF REPORTED MIDAS INCIDENTS/COMPLAINTS INVOLVING NEONATOLOGIST, DR. OFFOR DATED 11/14/2012 AND 06/10/2013 A1778-1788 Vol. 8 ....................................................14

      (ii)  JANUARY 20TH, 2008 LETTER ..................................15

      (iii)  LETTERS DATED DECEMBER 19TH & 20TH, 2013(A3598,3599, Vol. 16)............................................16

      (iv)  PEER REVIEW COMMITTEE MINUTES (A3607-A3614, Vol. 16) ..................................16

      THE DENIAL OF OFFOR'S MOTION FOR SANCTIONS DATED JULY 22ND,2019 ..............................17

4.   OFFOR'S MOTION TO COMPEL THIRD PARTY SUBPOENA..............................................................................18

   A.   NEW YORK PRESBYTERIAN HAS NOT FILED ANY PAPERS BEFORE THIS COURT IN OPPOSITION .............19

   B.   MMC & CO HAVE NO STANDING TO OPPOSE THE MOTION TO COMPEL THIRD PARTY SUBPOENA AND THIS APPEAL...................................................................20

5.   MMC & CO'S FALSE STATEMENTS AND FLAILING ARGUMENTS .................................................................21

   A.   MMC & CO'S ALLEGED EXTERNAL REVIEWS..............21

      (i)   COHEN CHILDREN'S...................................................21

      (ii)    STONY BROOK HOSPITAL EXPERT REVIEW A1867, Vol. 8 .................................................22

      (iii)   MORGAN STANLEY CHILDREN'S HOSPITAL ......22

      (iv)   DR. MARJORIE SCHULMAN .....................................22

      (v)    DR. YANG KIM'S EXPERT REPORT A2738-2748 Vol. 12 ...............................................................23

   B.    OFFOR'S ALLEGED CONTINUED ISSUES AFTER BEING PLACED ON FPPE ......................................23

      (i)    OFFOR ALLEGED INCIDENT WITH RESPIRATORY THERAPIST MR. SAJAN PAUL ...............................................................23

      (ii)    JUNE 11, 2013/JULY 16, 2013 INCIDENTS. ..............24

      (iii)   OFFOR'S ALLEGED VIOLATION OF MMC POLICY REGARDING DISCHARGE PLANNING .................................................................25

      (iv)   DEVARAJAN'S ALLEGED COUNSELING ON "JUNK ORDERS' NOV. 5TH 2013 ............................25

      (v)    NEONATAL PERFORMANCE IMPROVEMENT MEETINGS.....................................26

      (vi)   MMC & CO CONTINUED OFFOR ON FPPE FOR TWENTY MONTHS.............................................26

      (vii)  OFFOR WAS DEMOTED BY MMC & CO.................27

6.   THE OPERATIVE PLEADING IN THIS CASE IS OFFOR'S SECOND AMENDED COMPLAINT ................................................28

7.   MMC & CO'S ARGUMENT REGARDING TEMPORAL PROXIMITY OF ADVERSE EVENT ................................................28

iii

8.  MMC & CO MISREPRESENTS OFFOR'S ARGUMENT
    REGARDING THE AUTHORITY OF MAGISTRATE
    JUDGE LOCKE TO ISSUE A REPORT AND
    RECOMMENDATION ......................................................................28

9.  THE DISTRICT COURT REFUSAL TO STRIKE CLEARLY
    INADMISSIBLE DOCUMENTS OR FORGED
    DOCUMENTS AND EVEN THE DOCUMENTS MMC & Co
    HAD ADMITTED WERE FALSE OR "MISTAKES" ....................29

10. SANCTIONS AGAINST OFFOR AND HER ATTORNEY,
    AWARD OF SANCTIONS AMOUNT AGAINST OFFOR'S
    ATTORNEY ......................................................................................30

CONCLUSION.....................................................................................................31

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

<u>**CASES**</u>

<u>Barrow v. City of Cleveland,</u>
No. 18-3665 (6th Circuit, May 7, 2019)...........................................................3

<u>Bey v. State of N.Y,</u>
11-CV-3296 (JS)(WDW), 2013 WL 3282277 (EDNY June 25, 2013)........10

<u>Collymore v. City of New York,</u>
No. 18-2099 (2nd Cir. April 11, 2019)..........................................................3

<u>Concord Boat Corp. v. Brunswick Corp.,</u>
169 F.R.D. 44 (SDNY 1996)..........................................................................20

<u>Cruz v Green Tree Mortg. Servicing, LLC,</u>
3:15-CV-00714 (AWT) (D. Conn. Feb. 17, 2017)........................................20

<u>Eastman Kodak Co. v. STWB, Inc.,</u>
452 F. 3d 215 (2d Cir. 2006)............................................................................6

<u>Giannullo v. City of New York,</u>
322 F.3d 139, 140 2d Cir. 2003).....................................................................10

<u>Gomes v. Steere House,</u>
No. 20-270 (D.R.I. Nov. 2, 2020).....................................................................2

<u>Harrison v. Republic of Sudan,</u>
838F.3d 86 (2d Cir. 2016) ...............................................................................6

<u>Hicks v. Baines,</u>
593 F.3d 159 (2d Cir. 2010) .............................................................................3

<u>Martinez v. City of Avondale,</u>
2013 WL 5705291 (D. Ariz Oct 18, 2013) ...................................................20

McDonnell Douglas Corp. v. Green,
　　411 U.S. 792 (1973)........................................................................1, 5

Moon v SCP Pool Corp.,
　　232 F.R.D. 633 (CD Cal 2005)...................................................20

Register.com, Inc. v. Verio Inc.,
　　356 F.3d 393 (2d Cir. 2004) .......................................................10

Ridinger v. Dow Jones & Co. Inc.,
　　651 F.3d 309 (2d Cir. 2011) ..........................................................6

United States v. Nachamie,
　　91 F.Supp. 2d 552 ...................................................................21

Vasquez v. Williams,
　　13 Civ 9127 (SDNY Aug. 11, 2015) ............................................9

## STATUTES

28 U.S.C § 636(b) .......................................................................29

## RULES

Fed. R. Civ. P. 26 ......................................................................21

Fed. R. Evid. 702 ......................................................................21

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Offor hereby replies to MMC & Co, Appellees' Answering Brief (AAB). The Jurisdictional basis of this Appeal is clear, this is an appeal from the final decision of the District Court disposing of Offor's entire claims in the suit. Despite its length, MMC & Co's arguments in their Response Brief (Appellees Response Brief-ARB) to affirm the District Court's Order adopting the Magistrate Judge's Report and Recommendations would require this Court to ignore indisputable truths, all established in Offor's opening Brief.

## ARGUMENT

### 1.     THIS IS AN FMLA RETALIATION CASE

MMC & Co wrongly focus on relitigating the earlier decision of this Court in, Offor v Mercy et al., 16-839, A3149,3161 VOL. 13 erecting straw men and arguing that Offor was not entitled to FMLA. Unfortunately, the District Court was drawn into this purposeful error and it re-echoed those arguments in its decision. MMC & Co have in their Brief again, as has been its practice throughout this litigation, sought to relitigate this Court's earlier decision, when it ruled that Offor had established a prima facie case of FMLA Retaliation A3149, A3161 Vol. 13 The effect of this decision applying the Second Circuit Court's Retaliation analysis from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) was that MMC & Co then had the burden to articulate a legitimate non discriminatory reasons for the

1

adverse employment action. Truly, MMC & Co tried to satisfy this burden when it predicated its defense on the "after acquired evidence theory" and initiated the OPMC proceedings against Offor, leaning heavily on the OPMC to revoke Offor's Medical License in New York without affording her an opportunity to defend herself, produce documents or witnesses in her defense. (A4774, Vol. 21). Following Offor's appeal to the Third Appellate Division of the New York State Supreme Court and the subsequent unanimous decision setting aside the revocation of Offor's Medical License and stating that the decision to revoke Offor's license was "arbitrary and capricious". (A4767, Vol. 21). Interestingly, MMC & Co switched their argument and started to claim that Offor did not qualify for FMLA.

## 2. <u>AN EMPLOYEE WHO DID NOT QUALIFY FOR FMLA CAN STILL PURSUE AN FMLA RETALIATION CLAIM</u>

Offor was well qualified to take the FMLA vacation, and the Second Circuit Court had found that she had established a Prima Facie case of FMLA retaliation. See <u>Offor v. Mercy et al.</u>, 16-839 (A3149,3161 Vol. 13) To be clear, the issue before this Court in this Appeal is the Retaliation that followed Offor's FMLA Request, and NOT the plausibility of the FMLA Claim. In <u>Gomes v. Steere House,</u> No. 20-270 (D.R.I. Nov. 2, 2020). The Federal District Court determined that a Nurse who did not qualify for FMLA Leave can still continue with her Retaliation Claim against her former employer. According to the Court, the employee had shown that she tried to take advantage of FMLA rights and had alleged a close

temporal proximity to support the proposition that her request for FMLA initiated her firing. The Gomes court specifically noted the "close temporal proximity" between the request and her termination. Because timing alone can establish a prima facie case of retaliation.

The 6th Circuit let stand a jury's finding that a police officer who was subjected to retaliation for his bias complaint, but not for the bias itself. See Barrow v. City of Cleveland, No. 18-3665 (6th Circuit, May 7, 2019).

Similarly, this Court has allowed an employee's retaliation claim to proceed, even though her sexual harassment and race discrimination allegations were unsuccessful. The Court opined that while her allegations are not actionable because they were petty slights, her claim that she was forced to work through her lunch hour after she complained was enough to sustain her retaliation claim. See Collymore v. City of New York, No. 18-2099 (2nd Cir. April 11, 2019.

Indeed, this Court had in its earlier decision in this case observed as follows: "She has plausibly alleged that she attempted to exercise FMLA rights, that she was qualified for her position, and that she suffered an adverse employment action when she was put on FPPR probation. Mercy Medical put her on FPPR probation only one month after she retained an attorney, and that temporal proximity is enough at this stage to give rise to an inference of retaliatory intent. See Hicks v. Baines, 593 F.3d 159, 170 (2d Cir. 2010). We therefore vacate the district court's

dismissal of Offor's retaliation claim." <u>Offor v. Mercy et al.,</u> 16-839 at A3149, 3161.

Indeed, MMC & Co approved Offor's FMLA Leave to be with daughter and Offor was placed on FPPE, <u>one minute</u> thereafter. A3168-3170 Vol. 14. Offor was continued on this FPPE for twenty months (until the termination of her employment), and she was demoted from the position of Assistant Director of Neonatology A2714 Vol. 12). Despite the continuation of the FPPE by MMC & Co, in those twenty months of FPPE, Offor worked alone, independently, and was asked many times to take charge of the Neonatal unit during extended periods when her supervisor, Dr. Devarajan was away from the hospital (A3241-3270, Vol. 14) Offor was reappointed without conditions, (A3236-3240, Vol. 14) her work performance during the said period was never reviewed nor evaluated as required by MMC's own rules (A3183 para 3, A3198-3199, Vol. 14). Offor managed the highest acuity Neonates and performed the most intricate procedures. (A3200-3211, Vol.14). Offor's employment was terminated and subsequently MMC & Co initiated the proceedings at the OPMC ultimately revoking her New York Medical License. With the revocation of her New York Medical License (A4774, Vol. 21), her New Jersey (A4802 Vol. 21) and Pennsylvania Licenses (A4783, Vol. 21), Pediatric Board Certifications were also revoked. (A4781, Vol. 21) To be clear, assuming arguendo that Offor in fact so mismanaged her Patients as alleged (which

she did not), the allegations against her were not enough to sustain a revocation of her Medical Licensure. None of the Patients allegedly mismanaged suffered any harm, grievous harm, short or long term consequences. The most serious allegation of mismanagement was Patient #5 whom Offor allegedly failed to administer insulin. (This Patient's case is discussed in this Brief under the Sanctions Motions header).

Applying the retaliation analysis from <u>McDonnell Douglas Corp v. Green,</u> 411 U.S. 792 (1973) which this Court applies, upon this Court's ruling that a Prima Facie case was made, the burden shifted to MMC & Co to articulate a non-retaliatory reason for the adverse employment action. MMC & Co have failed to discharge that burden.

### 3. <u>THE DISTRICT COURTS DECISIONS DENYING OFFOR'S SANCTION MOTIONS</u>

#### A. <u>THE DENIAL OF OFFOR'S SANCTIONS MOTIONS DATED 12/01/2020 AND 12/06/2020.</u>

MMC & Co offered no response at all to these Motions for Sanctions in the District Court, instead, they filed a Motion to Dismiss (the Motions) without responding to the allegations, which the Court granted, and in their response to Offor's Objections to Magistrate Judge Steven Locke's Report and Recommendation, described Offor's claims of fabrication and forgery as "nothing

more than wild conspiracy theories" See A608, Vol. 3, para 2, and affording no explanations or arguments.

## THIS COURT SHOULD IGNORE MMC & CO'S ARGUMENTS RAISED FOR THE FIRST TIME ON APPEAL

This Court does not consider arguments raised for the first time on appeal. Harrison v. Republic of Sudan, 838F.3d 86,96 (2d Cir. 2016), Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011, Arguments raised for the first time on Appeal are deemed waived. Eastman Kodak Co. v. STWB, Inc., 452 F. 3d 215, 221 (2d Cir. 2006) stating that the Second Circuit Court ordinarily will not hear arguments not made to the District Court. Consequently, any argument offered by MMC & Co in their Brief should be discountenanced by this Court as MMC & Co cannot raise any arguments regarding this document for the first time on appeal. Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011, Arguments raised for the first time on Appeal are deemed waived.

### (i)    EXHIBIT II (A-2605 AT VOL. 11)

This document was submitted twice by MMC & Co, in support of their Motion for Summary Judgment on 12/01/2020 and again on 01/22/2021 in Opposition to Offor's Motion for Summary Judgment and after Offor's earlier Motion for Sanctions complaining inter-alia about this document.

This document was clearly forged as it was dated October 28th, 2013 and it pointed to alleged events that occurred on 11/25/2013 and 11/28/2013. The District

Court Suo Motu attempted to provide a possible explanation for this clear forgery stating that:

"…if the events occurred in October2013, and Dr. Devarajan confused October for the eleventh month, everything lines up" See SPA84.

However, it doesn't. The District Court's explanation did not provide an answer to the other mis-statements in the note, for example that 11/28/2013 was a "Monday" when in fact it was a "Thursday" and the Call schedule for all those dates indicate that Dr. Devarajan was nowhere near the hospital. See pages A3225 -3226 (Vol. 14). Furthermore, the reference by the District Court to Dr. Devarajan's on call responsibility citing page A3212 (Exhibit 17) was clearly in error as the same was a "monthly service schedule" not "call schedule" regardless, that service schedule relied upon by the Court was revised by the monthly service schedule at page A3213. Consequently, A3212 was replaced by A3213. The revised schedule (the true schedule) clearly shows that Dr. Devarajan was neither on Service in the month of October 2013 nor November 2013. MMC & Co in fact produced and submitted this same final revised schedule. See A2737, Vol. 12. MMC & Co bate No. D003497.

Assuming arguendo however, that the postulation of the District Court is accepted as true and Dr. Devarajan did mistake the month of October 2013 for November 2013, it still does not "add up" because even by the old schedule

deliberately relied on(which was later revised), Dr. Devarajan was not in service

for the month of November 2013 (the month that the District Court offers that Dr.

Devarajan really wrote the note). See A3212 at Vol. 14. Dr. Devarajan was not on

call on October 28th, 2013 (A3226, vol. 14) or on November 28th, 2013 (A3225,

vol. 14).

At pages 50-53 of their Brief, MMC & Co tried to adopt the arguments and

postulations of the District Court regarding inter-alia Exhibit II, PP, AA, SS, and Z

which arguments they failed to make at the District Court when they had an

opportunity to do so. See Defendants' response to Plaintiff's objections to

Magistrate Judge Steven Locke's report and recommendation to grant Defendants'

Motion for Summary Judgment at pages A609-610,Vol.3. MMC Counsel, Justin

Guilfoyle Esq deposed to Affidavits twice (even after Offor's Motions for

Sanctions) reaffirming and reauthenticating this document. (A2500, Vol. 11, at

para. 53 and A2831, Vol. 12 at para 53).

### (ii)   <u>EXHIBIT PP</u>

Offor had initially flagged this document as a fraudulent document in her

Motion for Sanctions dated 12/05/2019. Dr. Devarajan had falsely claimed in this

document that she gave a letter to Dr. Offor on June 15th, 2013 regarding Offor's

alleged "unacceptable behavior" June 15th, 2013 was a Saturday and Dr. Devarajan

after her fraud was exposed, she claimed the letter was an error. See A1422, Vol.

7, para 20. The District Court referred to it as an "inadvertent error".SPA85 para2.

MMC & Co resubmitted this document (having suffered no consequence for their

earlier fraud) In support of their Motion for Summary Judgment. Offor filed a

Motion for Sanctions flagging this document. Undeterred, MMC & Co resubmitted

this "inadvertent error" in opposition to Offor's Motion for Summary Judgment

even in the face of a Motion for Sanctions filed by Offor.

MMC'S DUELING AFFIDAVITS

The District Court avoids to discuss (and so does MMC & Co), the

Appellees' dueling affidavits.  And the resubmission (twice) of this document

(inadvertent error-A2702, Vol 12). MMC & Co Counsel, Mr. Guilfoyle in his

affidavits of 10/28/2020 and 11/30/2020 (A 2501 at para 60, Vol. 11 and A2832 at

para 60, vol. 12) twice affirmed the authenticity of this "inadvertent error". These

Affidavits remain dueling with Dr. Devarajan's (third Appellee) affidavit deposed

to by Dr. Devarajan on January 22, 2020 stating that the document was "a mistake"

or "error". A1422, vol. 7, para 20.

At least one or more of these affidavits is false and the affiant must be

Sanctioned by this Court for Perjury.

MMC & CO FAILED TO RESPOND IN ANY WAY TO OFFOR'S
ARGUMENT ON THIS DOCUMENT

Facts not disputed are deemed admitted Vasquez v. Williams, 13 Civ 9127

(SDNY Aug. 11, 2015), Factual allegations that are not disputed are deemed

9

admitted, as long as they are also supported by the record. See <u>Giannullo v. City of New York,</u> 322 F.3d 139, 140 2d Cir. 2003).

### (iii)    **EXHIBIT AA (A1840, Vol. 8)**

This document is an alleged Expert Review allegedly written by Dr. Schanler. It was allegedly sent from rschanle@nshs.edu but the signature block in the said email had Dr. Schanler's real email address schanler@nshs.edu The email contained multiple document fonts and an employee was most unlikely to have two different active emails on the same server. The District Court goes to strenuous lengths to take Judicial Notice of certain online publications and again offers arguments not made by MMC & Co. In their Appellees' Brief, asides from rehashing the District Court's argument, MMC & Co offer no reasonable explanation for this document.

It is well established that courts cannot make a party's arguments for it or fill in the blanks on that party's behalf <u>Bey v. State of N.Y 11-CV-3296 (JS)(WDW),</u> 2013 WL 3282277 at 6 (EDNY June 25, 2013. According to the Second Circuit Court in <u>Register.com, Inc. v. Verio Inc.,</u> 356 F.3d 393, 435 n.53 (2d Cir. 2004).

### (iv)    **EXHIBIT SS (A2718, VOL. 12)**

This document created by Dr. Devarajan purportedly memorializing a meeting with Dr. Offor See A2718, Vol. 12. Unfortunately for Dr. Devarajan, Dr.

Glatt sent an email memorializing the said meeting immediately after the meeting

A5023 Vol. 22. Dr. Devarajan's characterization at great variance from the

contemporaneous characterization of Dr. Glatt is clearly fabricated and fraudulent.

MMC & Co never bothered to respond to Offor's allegations in their response to

either to Offor's Motion for Sanctions or their response to Offor's objections to

Magistrate Judge Locke's Report and Recommendation. According to the District

Court, "Dr. Glatt's and Dr. Devarajan's recollections are not irreconciliable".

However, a juxtaposition of the two documents shows that they are irreconciliable

and at great variance.

**(v)    EXHIBIT Z (A2766 Vol. 12)**

MMC & Co failed to respond to Offor's allegations concerning two

documents titled "RISK MANAGEMENT INVESTIGATION OF REPORTED

MIDAS INCIDENTS INVOLVING NEONATOLOGIST, DR. OFFOR, DATED

11/14/2012 AND 06/10/2013 A1778-1788 Vol. 8. MMC & Co (as is customary)

declines to comment on this document even though it was raised and discussed by

Offor at the District Court and in her opening Brief. MMC had with these

documents presented a long list of numerous Midas Incidents and other adverse

events arising from Offor's treatment of Patients' 1,2,3,4,8, and 9, See A1780-

1793, Vol. 8.MMC & Co Counsel had stated in Letters and in a Court hearing that

11

MMC & Co had no Midas or Adverse Event Reports arising from Offor's management of Patients' 1,2,3, 5, 11,12, and 13 See A4062, Vol. 18.

MMC & Co's Exhibit Z was allegedly raised on Patient No. 1, MMC & Co, realizing that their earlier refusal or failure to produce the alleged Midas Report was problematic, changed their narrative claiming that the Exhibit Z was allegedly raised on Patient No. 4. It would appear that the document might have been earlier fabricated to be used against Offor regarding her treatment of Patient # 4, however when MMC & Co through Dr. Reilly examined the Patient's Chart, they realized that Dr. Devarajan and Dr. Rayjada had numerous problems with the management of this Patient and Offor's management of Patient # 4 was never raised by MMC & Co again. MMC & Co did not flag Offor's treatment of Patient # 4 for either her placement on FPPE, The Termination of her employment, or the Revocation of her License. However, as the lawsuit progressed, the need for a Midas Report on at least one of the Patients whose treatment was "in issue" arose and MMC & Co decided to unearth "Exhibit Z" earlier forged for use regarding Patient # 4 and use same for Patient # 1. This resulted in a document containing medical information that seemed to have been gleaned off two different Patient Records. A slip shoddy and clumsy fabrication job.

Exhibit Z was produced and discussed by MMC & Co in their Rule 56 Statement at A2413, Vol. 11, paras 61-65. All the references in these paragraphs

12

refer to Patient #1. Patient # 1 was born on ████████ and transferred to LIJ Cohen Children's Hospital from Mercy NICU ON ████████. Patient # 4 was born on ████████ and transferred from the MMC on September ██. ████████. Patient # 4 was NEVER transferred to LIJ Cohen Children's Hospital.

Patient #1 was the only Patient managed by Offor and flagged by MMC & Co. that was treated with Indomethacin See A5094, Vol. 23. Patient # 1 was also the subject of MMC & Co's Exhibit X, A2756, Vol. 12, (note by Dr. Devarajan dated 08/15/2012) and Exhibit Y, A2761-2762. In addition, regarding Exhibit X, in its decision, the District Court noted that "Moreover Dr. Devarajan states that the incident did result in a Midas Report….one dated August 20, 2012 ie Exhibit Z (SPA-91). Patient No. 1 was of Caucasian parents, the Midas Report reflected Black parents for the Patient. Patient # 4 had black parents See Exhibit Z.

MMC & Co also allege that they had produced the document (Exhibit Z) two years earlier (Appellees' Brief pgs 53-54) This is patently false but in any event, If this were true, MMC & Co could have just pointed out that this document (Midas Report regarding Offor's management of Patient #1) had already been produced rather than state emphatically and repeatedly that the document (Midas Report) did not exist. More importantly, Offor had also requested for ANY MIDAS, ADVERSE EVENT, AND/OR INCIDENT REPORT ON ANY PATIENT MANAGED BY HER and MMC & Co had stated that there was none.

13

None of the alleged Midas Incident Reports and Adverse Event Reports cited in MMC Risk Management Document (discussed above) and dated 11/14/2012 AND 06/10/2013 A1778-1788 Vol. 8. were ever produced by MMC & Co. Offor requests this Court's decision on these Motions for Sanctions.

### B. THE TERMINATION OF OFFOR'S MOTION FOR SANCTIONS DATED 12/05/2019 (SPA-33) (A3481-3491, Vol. 15) (A3492-3679, Vol. 16) (A3680-3948, Vol. 17) (A3949-4051, Vol. 18)

MMC & Co purposely avoided discussing the forged documents that prompted Offor's filing of this Motion for Sanctions which was terminated (after the Motion was fully Briefed) by the District Court. Consequently, MMC & Co have waived any defense whatsoever to the allegations raised in the Motion. Unfortunately, in their Appellees Brief, MMC & Co and their Attorneys (Nixon Peabody & Co) have sought to trivialize the serious nature of the fraud they collectively perpetrated on the Court. Making light of the forgery of documents therefore highlights the need for severe Monetary Sanctions against MMC & Co to serve as a deterrent against such conduct in future.

### (i) RISK MANAGEMENT INVESTIGATION/TIMELINE OF REPORTED MIDAS INCIDENTS/COMPLAINTS INVOLVING NEONATOLOGIST, DR. OFFOR DATED 11/14/2012 AND 06/10/2013 A1778-1788 Vol. 8.

These documents lists several alleged MIDAS Incidents and other ADVERSE Events involving Offor's management of Patient Nos. 1,2,3,4,8 and 9.

14

In the said document for example, Ms. Povinelli falsely claimed that on 02/10/2007, ventilator management guidelines were established for the NICU department and all clinical staff educated on ventilator guidelines (A1779,1783, vol.8). February 10,2007 was a Saturday and the only clinical staff in the NICU were the nurses on duty and one doctor on weekend call. (A3554, Vol. 16). Ms. Povinelli also claimed that Dr. Devarajan and the Director of HR, met with Dr. Offor on Jan. 20, 2008 to discuss Dr. Offor's work performance. (A1779, 1783, Vol. 8 and A3538, Vol. 16). Ms. Povinelli also falsely claimed Dr. Offor was counseled on 04/06/2009 for frequent ventilator changes etc (A1779, a1783, Vol.8 A3539, Vol. 16). In truth, Offor was away from the hospital on that date. In another document, Dr. Devarajan claimed to have met and counseled Dr. Offor on 04/06/2009 (A3553, Vol. 16) Dr. Offor was away from the hospital. A473, Vol.2.

## (ii) JANUARY 20TH, 2008 LETTER

In another letter written by Dr. Devarajan in which she claimed to have met Dr. Offor with Denise Baston, Director of Human Resources on January 20th, 2008 (A Sunday), Dr. Offor and Dr. Devarajan do not come to the hospital on Sundays except they're on call and both cannot be on call at the same time. Moreover, Human Resources Personnel do not work on Sundays. Dr. Devarajan in her Opposition Affidavit (after being caught forging documents) concedes the falsity

of the documents, claiming it was all a "mistake". (A3573, Vol. 16, paras 7-9)

(A1418, para 8, A1420, para 14, A1422 para 20, Vol. 7).

### (iii)    LETTERS DATED DECEMBER 19TH & 20TH, 2013(A3598,3599, Vol. 16)

In two identical letters dated December 19th & 20th 2013, Dr. Devarajan

falsely claimed that she gave a letter to Dr. Offor on June 15th, 2013 regarding Dr.

Offor's alleged "unacceptable behavior" June 15th 2013 was a Saturday and as

previously stated, Offor and Devarajan are never in the hospital together on

Weekend days. Again, Dr. Devarajan under Oath claimed that the document was a

"mistake" (A3577, Vol. 16, paras 20). Interestingly, Dr. Devarajan would fail in

her opposition affidavit to provide any specific date when the said letter was given

to Offor.

### (iv)    PEER REVIEW COMMITTEE MINUTES (A3607-A3614, Vol. 16)

Another document titled Mercy Medical Center Neonatology Peer Review

Committee Minutes (A3607-3614, Vol. 16). The document stated that the Peer

Review Committee meeting was held in the Congregation of Infant Jesus

Conference room on Wednesday, June 17th, 2014. June 17th, 2014 was a Tuesday

(A3607, Vol. 16).

<u>THE DENIAL OF OFFOR'S MOTION FOR SANCTIONS DATED JULY 22ND, 2019</u>

MMC & Co had submitted the Medical Records of Patient # 5 who had been managed by Offor. However, certain significant parts of the Records had been deleted. MMC & Co had alleged that Offor mismanaged the treatment of this Patient by not administering Insulin and failing to obtain consult from an endocrinologist. However, Offor's notes and the Nurses notes which would have established that Offor did obtain a consult from an endocrinologist, Dr. Yolanda Saint Louis had been deleted from the Patient Records. Moreover, MMC & Co had contaminated the Patient's IV bag and the bag contained more than ten times the sugar level, the nurses noticed that the bag appeared cloudy and the IV was discontinued and an investigation was ordered. Offor knew that the Patient's sugar levels were artificially elevated as a result of the overdose of sugar contained in the discontinued IV bag, and after consultation with the Endocrinologist, she refused to Order Insulin (Offor told her Supervisor to order insulin if she felt that it was the right thing to do, but Dr. Devarajan declined to order insulin also). Dr. Devarajan forgot to delete a note which confirms investigations into the adulterated IV bag. So the chart contained the note: "the investigations of the IV bag, medications in the pump are ongoing, however, the results so far are negative and it does not appear to be iatrogenic" A4136 Vol. 18.

In addition, Dr. Devarajan forgot to delete parts of Offor's note showing her consult with the endocrinologist. MMC & Co would refuse to produce this investigative report. (This Patient was one of the Patients allegedly mismanaged by Offor, and for which her Medical License was revoked). Upon transfer of this Patient to Morgan Stanley Childrens. When Insulin was administered, the Patient's sugar level dropped significantly, and it was stopped. MMC & Co in response to this Motion created a fraudulent log attached to the Affidavit of Mohsen Quraishi (A929-932, Vol. 4) which showed an entry on 09/16/2013, at 9.40am – Plan of care was purportedly signed by Kim Jayna NP. Jayna Kim (previously known as Jayna Philips), was Jayna Philips in September, 2013 and was not an NP (Nurse Practitioner) in 2013. See A3345, Vol. 14 (In the Patient's Electronic Medical Chart, she was still Jayna Philips, RN, Registered Nurse not NP). The log missed many entries on th Chart it was supposed to mirror. On September 16, 2013, Jayna Philips (later Jayna Kim) worked the day shift, and Wofford Gwendolyn, RN worked the night shift, (7pm – 7am) Wofford's name was completely missing from the fabricated log. (A929-932, A809, A825, Vol. 4).

## 4. OFFOR'S MOTION TO COMPEL THIRD PARTY SUBPOENA

The Patient discussed above was later transferred from MMC to New York Presbyterian Hospital and all of the Patient Charts and Records were also copied and transferred. These Records would prove that MMC deleted the Patient Charts

18

and would also show that Offor managed this Patient exactly the way the Patient was managed by New York Presbyterian and insulin when it was commenced by New York Presbyterian was abruptly stopped as Patient's sugar levels dropped considerably. Upon the opposition of MMC & Co, the District Court denied the Motion, ruling that it was superfluous to the needs of the case. Even in the face of Offor's arguments that her management of this Patient formed the alleged basis for the Termination of her Employment and subsequent revocation of her license. (Earlier the District Court had ruled allowing Discovery of the tax and employment records of Offor's husband, yet would deny the production of documents that would prove forgery of Medical Records and that the allegations of mismanagement were a ruse and based on forged documents and contrived) New York Presbyterian were served and their Attorney wrote a letter to Offor's Counsel but failed to file any documents in opposition, thereby waiving any objections to the Subpoena. Though the Court in it's ruling claimed it did not rely on the arguments of MMC & Co, it did quote from their submissions.

### A.   <u>NEW YORK PRESBYTERIAN HAS NOT FILED ANY PAPERS BEFORE THIS COURT IN OPPOSITION</u>

Despite being served, New York Presbyterian Hospital has not filed any documents before this Court (See docket 21-2115 docket entry nos. 75,76 of 12/29/2021, affidavit of service) and like the failure of New York Presbyterian hospital to file any opposition documents constitute a waiver. The Federal Courts

have consistently ruled that the third Party's failure to respond within time

constitutes consent to grant the relief requested therein.

"A Third Party's failure to timely object to a Rule 45 Subpoena.... generally

requires the Court to find that any objections have been waived" Martinez v. City

of Avondale, 2013 WL 5705291 at 3(D. Ariz Oct 18, 2013) (citing Moon v SCP

Pool Corp., 232 F.R.D. 633, 636 (CD Cal 2005). See also "The failure to serve

written objections to a subpoena within the time specified by Rule 45 typically

constitutes a waiver of such objections" Cruz v Green Tree Mortg. Servicing, LLC,

3:15-CV-00714(AWT) (D. Conn. Feb. 17, 2017). Concord Boat Corp., 169 F.R.D.

44, 48 (SDNY 1996).

### B. MMC & CO HAVE NO STANDING TO OPPOSE THE MOTION TO COMPEL THIRD PARTY SUBPOENA AND THIS APPEAL

Why is MMC & Co so nervous about the third party subpoena? Are they

afraid that the truth of their fraud, deception, deletion of Medical Records and

Persecution of Offor will be unveiled? As Offor had argued before the District

Court, MMC & Co lacked standing to oppose the Motion to Compel third Party

Subpoena and presently lack standing to argue against this Appeal in their Brief.

Consequently, their arguments against Offor's appeal of the Order of the District

Court denying Offor's Motion to Compel should be discountenanced. "A party

generally lacks standing to challenge a subpoena issued to a third party absent a

claim of privilege or proprietary interest in the subpoenaed matter" <u>United States v.</u>
<u>Nachamie</u>, 91 F.Supp. 2d 552, 558

## 5.   MMC & CO'S FALSE STATEMENTS AND FLAILING ARGUMENTS

### A.   MMC & CO'S ALLEGED EXTERNAL REVIEWS

MMC & Co claimed in its Brief, that they engaged three independent Practitioners from institutions unaffiliated with MMC or CHSLI namely (i) Cohen Children's (ii) Stony Brook Long Island Children's Hospital and (iii) Morgan Stanley Children's Hospital. Though MMC & Co contend (acknowledging the irregularities in these documents) that these documents were NOT EXPERT REPORTS. They would however not disclose what the documents were. To be clear, by definition, Expert Report is a report written by a doctor or other health professional for legal proceedings and must comply with Rule 26 of FRCP. See also FRE 702)

### (i)   COHEN CHILDREN'S

This was the alleged review by Dr. Richard Schanler from Cohen Children's hospital which was discussed earlier in this Brief under the Motions for Sanctions header. Exhibit AA was the email allegedly sent by Dr. Schanler from the fake email address. See pages 34 – 35 of Offor's Brief and A1840, Vol. 8. Interestingly, according to MMC & Co, they had received an initial telephone call from Dr. Koppel at Cohen Children's Hospital. (See MMC & Co's Exhibit X, A2756 Vol.

12) MMC & Co had repeatedly requested a written report from him and he allegedly declined. (A4334, line 16-A4335, line 17, Vol. 19) However, MMC & Co now produced the forged email purportedly from Dr. Richard Schanler.

### (ii) STONY BROOK HOSPITAL EXPERT REVIEW A1867, Vol. 8

The Stony Brook Hospital Expert Review was on an unidentified Patient. Offor has no way of responding to the allegations in this review This Patient was not named among the Patients whose alleged mismanagement led to Offor's placement on FPPE, Termination of her employment, or Revocation of her Medical License.

### (iii) MORGAN STANLEY CHILDREN'S HOSPITAL

MMC & Co had claimed that they had a two hour telephonic report from Dr. Lorenz at Morgan Stanley Children's Hospital. See A2760, Vol. 12 (Exhibit Y). In truth however, MMC & Co wrote several letters requesting a written report from Dr. Lorenz See A4079-4082, Vol. 18.  Dr. Lorenz, unfortunately for MMC & Co wrote glowingly of Dr.   Offor's work and Patient management and MMC & Co refused to produce same, claiming that the Report never existed. See A4334, line 16-A4335, line 17, Vol.19.

### (iv) DR. MARJORIE SCHULMAN

Dr. Marjorie Schulman was also contacted by MMC & Co, who promised to remunerate her for her time. After reviewing the Patient's Charts, Dr. Schulman

declined to write a report informing MMC & Co that she could not help them, and she shredded the Charts. (See A4085, Vol. 18)

### (v) DR. YANG KIM'S EXPERT REPORT A2738-2748 Vol. 12

MMC & Co did not deny the fact that Dr. Kim was working for MMC & Co, when she wrote the Report, thereby conceding to Offor's assertion that Dr. Kim was employed by MMC & Co at the time. Dr. Kim was no longer the Director at Bellevue NICU and her Expert Report was purposely undated to hide this fact. Dr. Kim's alleged review was obtained months after the Termination of Dr. Offor's employment on August 21st, 2014, A2751 -2755, Vol. 12.

### B. OFFOR'S ALLEGED CONTINUED ISSUES AFTER BEING PLACED ON FPPE

As a justification for their actions, MMC & Co, with the support of their Attorneys, Nixon Peabody LLP, have continued to unfurl lies, misrepresentations, forged and fabricated documents.

### (i) OFFOR ALLEGED INCIDENT WITH RESPIRATORY THERAPIST MR. SAJAN PAUL

This alleged incident was highlighted by MMC & Co Exhibit HH A2574, Vol. 11. Offor had advocated for a critically ill Neonate with severe infection.

███████████████(D.O.B ████████ MRN# ███████, A3203, Vol. 14). The alleged conflict was as a result of Offor's insistent and passionate request that this Patient's ventilator be changed. The ventilator circuit was infected and had purulent

secretions which continued to re-infect the Patient. MMC & Co refused to accede to request and change the ventilator despite the fact that it would have cost them absolutely nothing. Consequently converting Offor's passionate Patient advocacy into a disciplinary issue and in order to further slight Offor, ruling that in the event of a disagreement between a Respiratory Therapist and a Doctor, that the decision of the Respiratory Therapist holds. (An absurdity in any Health Institution) -ARB at page 14, line 2.

Whilst MMC & Co were gratified with the humiliation of Offor, the Patient's condition deteriorated (just like Offor had warned it would), and he was emergently transferred to Morgan Stanley Children's Hospital of Columbia Presbyterian, where he needlessly died. See A4253, Vol. 19 (page 206 line 20-208 line 17).

### (ii)   JUNE 11, 2013/JULY 16, 2013 INCIDENTS.

These alleged events were fabricated by Dr. Devarajan. If these incidents had occurred, since Offor was on FPPE, Dr. Devarajan would have Counseled Offor and documented the Counseling session with MMC Counseling forms. A5244, Vol. 24.

### (iii) OFFOR'S ALLEGED VIOLATION OF MMC POLICY REGARDING DISCHARGE PLANNING

MMC & Co have cited (A-2423, Vol. 11) to prove Offor's alleged violation of MMC policy regarding discharge planning. See (Appellees Response Brief-ARB at pg 14, last para). The said document discusses MMC & Co Exhibit II. This is a clearly forged document and the subject of two of Offor's Sanction Motions. The document was dated October 28, 2013 and discussed events that allegedly occurred in November, 2013, one month after it was written. See pgs 29-31 of Offor's opening Brief and A2604, Vol. 11.

### (iv) DEVARAJAN'S ALLEGED COUNSELING ON "JUNK ORDERS' NOV. 5TH 2013

There was NEVER any Counseling session. MMC has Counseling forms which are routinely used for Counseling employees. After the termination of Offor's employment, MMC & Co realizing it had little or nothing to proffer a non-retaliatory reason for their adverse employment actions, started forging and fabricating documents.

On November 1st, 2013, Offor had sent an email to Dr. Rayjada and Dr. Devarajan requesting that they delete old orders in Patient's Electronic Charts to prevent confusion. See A4976, A4977 Vol. 22. In response to this email, Dr. Devarajan decided to forge and concoct an event that never happened. (Old Orders in the system were widely referred to by everyone as "Junk Orders".

### (v)    NEONATAL PERFORMANCE IMPROVEMENT MEETINGS

From the date of Offor's placement on FPPE, MMC & Co would always schedule the Neonatal Performance Meetings and other trainings like Neonatal Resuscitation Program Review on dates that Offor was on Service (meaning that she is working in the NICU). On November 20th, 2013, Offor was on Service in the NICU See schedule at A3213,Vol. 14. Surely, if Offor had left the NICU and attended the Performance Improvement Meetings, she would have also been disciplined. MMC & Co had set up a "Devil's Alternative" Offor would be disciplined no matter what.

### (vi)    MMC & CO CONTINUED OFFOR ON FPPE FOR TWENTY MONTHS

Offor was continued on this FPPE for twenty months (until the termination of her employment), and she was demoted from the position of Assistant Director of Neonatology See A2714, Vol.12). Offor wrote to MMC & Co on November 11th, 2013 requesting that she be taken off from the FPPE. Dr. Devarajan wrote on December 6th, 2013, continuing the FPPE. In her letter, she stated that the FPPE was continued because Dr. Offor demonstrated a lack of Professionalism and respect, as well as a failure to adhere to departmental guidelines for Patient management. See ARB at page 15, para 3. These were new issues raised by Dr. Devarajan, they were not the issues for which Offor was placed on FPPE. This

26

time, there was no mention of clinical incompetence or a lack of sufficient volume of cases to assess Dr. Offor.

### (vii) <u>OFFOR WAS DEMOTED BY MMC & CO</u>

Offor always had the NRP Instructor Certification even prior to her employment with MMC & Co. It was never a requirement for employment as a Neonatologist at MMC & Co. In fact, Dr. Rayjada was employed in 2011, and only got her NRP Instructor Certification from Dr. Devarajan in 2013. As soon as Dr. Rayjada got her NRP Instructor Certification and Dr. Devarajan realized Dr. Offor's Certification had expired, for the first time, NRP Instructor Certification became a requirement for continued employment. In order to make sure that Offor was the only Doctor impacted by this requirement, Dr. Devarajan did not extend this requirement to the Neonatal Physicians who moonlighted at MMC NICU. Despite the intentional misrepresentations of MMC & Co, Offor did obtain her NRP Instructor Status (See A3053, Vol. 13) Offor was thus demoted on December 27th, 2013, exactly one year after her placement on FPPE. (December 27th, 2012) It is worthy to note that Offor was reappointed to MMC & Co maximum term of two years with full privileges on December 21st, 2013. Dr. Aaron Glatt, Chief Administrative Officer at MMC at the time signed Offor's reappointment letter (six days before her demotion) See A3236-3240,Vol. 14.

27

**6. THE OPERATIVE PLEADING IN THIS CASE IS OFFOR'S SECOND AMENDED COMPLAINT**

MMC & Co continue in their ARB to cite Offor's First Amended Complaint as if it were the operative Complaint. (See page 24, para 2, ARB) To be clear, the Operative Complaint in this Suit is the Second Amended Complaint (See A3158, para 2, Vol. 13). Consequently, all references to First Amended Complaint and accompanying statements should be discountenanced and struck.

**7. MMC & CO'S ARGUMENT REGARDING TEMPORAL PROXIMITY OF ADVERSE EVENT**

MMC & Co, again have sought to relitigate an issue this Court has already ruled on, creating false timelines in a wild attempt to obfuscate issues before this Court. MMC & Co retaliation in this case continued with the Offor's demotion from her position as Assistant Director of Neonatology to the several continuations of the FPPE up till the Termination of her employment.

**8. MMC & CO MISREPRESENTS OFFOR'S ARGUMENT REGARDING THE AUTHORITY OF MAGISTRATE JUDGE LOCKE TO ISSUE A REPORT AND RECOMMENDATION**

MMC & Co absurdly misrepresent Offor's argument regarding the authority of Magistrate Judge Locke to issue a Report and Recommendation. Offor has not argued that the particular District Judge who gave the Order must ultimately receive the R&R, rather Offor has argued (and quite rightly so) that a Magistrate Judge must write and submit his R&R whilst there is an assigned District Court

Judge to the case. 28 U.S.C §636(b) does not provide for a situation where the

Magistrate Court Judge would write a R & R without an assigned District Court

Judge.

> "(b)
> 1.
> (C) the Magistrate Judge shall file his proposed findings and
> recommendations under subparagraph (B) with the Court and a copy
> shall forthwith be mailed to all parties.
>
> Within fourteen days after being served with a copy, any party may
> serve and file written objections to such proposed findings and
> recommendations as provided by rules of Court..."

The wording of the Statute then presupposes that there **MUST** be a District Judge

assigned to the case before the Magistrate Judge so assigned can issue a Report and

Recommendation.

### 9. THE DISTRICT COURT REFUSAL TO STRIKE CLEARLY INADMISSIBLE DOCUMENTS OR FORGED DOCUMENTS AND EVEN THE DOCUMENTS MMC & Co HAD ADMITTED WERE FALSE OR "MISTAKES"

The District Court refused to strike clearly inadmissible documents, forged

documents and even forged "mistakes", MMC & Co rather than try to justify these

conclusions, or connect them to evidence on the record, present them as

meritorious simply because the District Court announced them. The lower Court

assertions however do not constrain this Court.  Exhibits AA, AAA, BB, Y and

VV all purport to be Expert Reports. Most of them are unsigned, undated, and do

not provide sufficient information regarding the background of the author (CV or

Resume) including the basis of their knowledge or materials referred to in arriving at the scientific or clinical conclusions. A1840, A1847, A1867, vol. 8 and A2760, A2738, vol. 12. Exhibits HH, JJ, NN, X, and EE; These were fabricated "Counselling documents" (created solely for the purpose of the litigation and after the fact. A2573, A2627, vol. 11, A2693, A2756, vol. 12, A2460, vol. 11. MMC has Counselling forms which provide for the signatures of the Counselor and Counselee after the Counseling session. See sample MMC Counseling form, A3998, vol. 18. MMC rules dictate that Employee must sign completed Evaluation form. A4000-4001, Vol. 18, Handbook at A3188, vol. 14. Failure of MMC to comply with their own policies is a huge pointer to the fabrication of these documents. Additionally, the District Court refused to strike out MMC's Exhibit II, PP, AA, SS and Z, forged documents discussed on above, and relied extensively on these documents in its decision.

## 10. **SANCTIONS AGAINST OFFOR AND HER ATTORNEY, AWARD OF SANCTIONS AMOUNT AGAINST OFFOR'S ATTORNEY**

The facts here speak for themselves, MMC & Co misrepresented facts to the Court for the award and levy of Sanctions against Offor's Attorney in the amount $25,622.50. Offor's Attorney redacted the Complaint enough to ensure the confidentiality of Patient names and Medical Record numbers contained therein. See A3081-3093.

## CONCLUSION

Offor prays this Court to reverse all the decisions of the District Court and grant Offor's Summary Judgment with punitive and exemplary damages, grant all Offor's Motions for Sanctions levy appropriate amounts, grant her Motion for third Party Subpoena, and reverse the Order of Sanctions against Offor's Attorney, Ike Agwuegbo Esq. Offor has not worked for several years. Even after the decision annulling the revocation of her License, with the over bearing influence of MMC & Co on the OPMC, Offor's license has not been reinstated and a rehearing has not been ordered.

Dated this 23rd day of February, 2022.

/s/ Ike Agwuegbo_____
Ike Agwuegbo Esq
IKE AGWUEGBO & CO P.C
15 Ocean Avenue, Suite 2C
Brooklyn, NY 11225
(718) 355-0585

*Counsel for Appellant*

31

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*6,956*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), *or*

[     ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of  Fed. R. App. P. 32(a)(5), and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2016*] in [*14pt Times New Roman*]; or

[     ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: February 23, 2022_____                    /s/ Ike Agwuegbo_____
                                                                    *Counsel for Appellant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby Certify that on February 23, 2022 an electronic copy of the foregoing Appellant's Reply Brief was filed with the Clerk of Court using this Court's CM/ECF system.

I further Certify that the foregoing Brief was served electronically via this Court's CM/ECF system by Notice of Docket Activity, and Electronic Mail to:

Tara E. Daub
NIXON PEABODY LLP
50 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 832-7613

Aaron F. Nadich
NIXON PEABODY LLP
1 Citizens Plaza, Suite 500
Providence, R.I. 02903
(401) 454-1000

*Counsels for Appellees*

/s/ Ike Agwuegbo
*Counsel for Appellant*